FLORIO PERRUCCI STEINHARDT CAPPELLI & TIPTON LLC

91 Larry Holmes Dr., Suite 200
Easton, PA 18042

O 610.691.7900
F 610.691.0841

**Katharine A. Fina** | Partner

908.454.8300
kfina@floriolaw.com

***October 20, 2025***

Honorable Judge Leo A. Latella
William J. Nealon Federal Building & US Courthouse
235 Washington Avenue
Scranton, PA 18503

**Re: Forcine Concrete & Construction Company v.
MS Park Construction, LLC, et al
Civil No.: 3:23-CV-02024**

Dear Judge Latella:

This firm represents the Defendants, MS Park Construction, LLC f/k/a Research, LLC, PNK Holdings, LLC, Andrey Sharkov, and Mark Stiles (collectively, the "Defendants"), in the above-captioned matter. Kindly accept this letter in response to the Court's October 8, 2025 Order to Show Cause to dismiss MS Park's Counterclaim. Despite Plaintiff's contentions, Defendants complied with the Court's August 15, 2025 Order, producing responsive documents, as well as submitting the verification of George Muraviev on behalf of the Defendants. See Verification of George Muraviev dated September 17, 2025, attached as Exhibit B to the October 2, 2025 Letter of Attorney Sine. Now, Plaintiff seeks to continue its fishing expedition into the Defendants' financial and corporate records, framing its additional requests as deficiencies. Plaintiff's request for additional information and records, which go well beyond the Court's Order, does not warrant the dismissal of MS Park's counterclaim.

***A. Verification of George Muraviev***

Pursuant to the Court's August 15, 2025 Order, the Defendants were to produce documents relating to the distribution of proceeds from the sale of the Property, profits for the Project, and corporate formation. To the extent that Defendants did not have responsive documents, the Order provides:

> If Defendants do not have any of the above documents within their possession, they must affirmatively state so in a verified response . . . . If Defendants contend they already produced documents responsive to these requests, the Defendants must identify the documents that were produced that are responsive to these requests by September 15, 2025.

See August 15, 2025 Order. Plaintiff contends that Defendants failed to comply with this Order because, among other reasons, the Defendants produced the verification of George Muraviev on

behalf of all Defendants and failed to produce verifications from Defendant Sharkov and Defendant Stiles. Contrary to Plaintiff's argument, the August 15, 2025 Order is devoid of any language that each Defendant was required to submit separate verifications.

To clarify, Mr. Muraviev was authorized, on behalf of all Defendants, including Mr. Sharkov and Mr. Stiles, to review the records and systems for all of the Defendants to produce documents responsive to Plaintiff's discovery requests, which he did. See Certification of George Muraviev dated October 20, 2025, enclosed herewith as **Exhibit A** and Certification of Mark Stiles dated October 20, 2025, enclosed herewith as **Exhibit B**. Accordingly, there was no violation of the August 15, 2025 Order.

Additionally, Plaintiff alleges that Defendants failed to provide the following documents: (1) pro forma, as referenced in Mr. Stiles deposition; (2) Articles of Incorporation for PNK Holdings, LLC; and (3) Loan agreement or capital contribution records between PNK Holdings and MS Park. As provided in Mr. Muraviev's Verification, there is no pro forma and there is no loan agreements or records relating to capital contributions between PNK Holdings and MS Park. Further, Mr. Muraviev certified that the Articles of Incorporation were produced. This was a partial misstatement. The Certification of Formation for PNK Holdings, LLC was previously produced; Articles of Incorporation do not exist. Mr. Muraviev corrects this statement in his October 20, 2025 Verification. Regardless, Defendants cannot produce what does not exist. As Mr. Muraviev verified that such documents do not exist, the Defendants complied with the August 15, 2025 Order.

### *B. Production of Banking Records*

The August 15, 2025 Order required the Defendants to produce banking records related to the distribution of the proceeds from the sale of the Property. Specifically, the August 15, 2025 Order states, in pertinent part:

> To the extent they exist and have not been produced before, **all documents related to the distribution of the proceeds from the sale of the propert**y, including but not limited to:
>
> i. Bank records (such as cancelled checks, wire transfers confirmations, or bank statements) showing the flow of funds from the purchaser to any individual or entity;
>
> ii. Bank records (such as cancelled checks, wire transfers confirmations, or bank statements) showing the flow of funds between any "PNK Group" entity (including but not limited to PNK Holdings, LLC, PNK P1, LLC, MS Park Construction, LLC, and Research, LLC)
>
> iii. Bank records (such as cancelled checks, wire transfers confirmations, or bank statements) showing the flow of funds between any PNK Group entity and any individuals, including but not limited to Andrey Sharkov, Mark Stiles, and Alex Rozengaus);
>
> iv. Bank records of all PNK Group entities and individuals, including PNK Holdings, LLC, PNK P1, LLC, MS Park Construction, LLC, Research, LLC, Andrey Sharkov, and Marks Stiles, that depict any

> transfer of funds related to the $212,000 settlement payment, including bank account statements for all entities and individuals for the months of October 2023 through March 2024;
>
> v. Bank statements, cancelled checks, and wire transfer records for MS Park Construction, LLC, PNK Holdings, LLC, PNK P1, LLC, and Research LLC from January 2021 to October 2023 that related to the purchase of the property, the construction of improvements at the Property or payment received from Patton Hazleton for purchase of the Property;
>
> vi. Bank records showing the initial capitalization of Research, LLC and MS Park Construction, LLC;
>
> . . . .

(emphasis added).

The intent of the Order was to provide the Plaintiff access to the financial records relating to the "distribution of the proceeds from the sale of the property." The intention was not to provide Plaintiff with open and free access to Defendants' financial records, most of which are wholly unrelated to the Project that is the subject of this case.

Notably, Plaintiff admits in its Letter to the Court that Defendants produced responsive documents, including a wire confirmation showing that the settlement payment was wired from MS Park Construction (account ending 3905) on October 13, 2023 and bank account statements for October 2023. See October 2, 2025 Letter from Attorney Sine at 3. However, Plaintiff is now seeking additional documentation and information relating to money transfers between the PNK entities, most of which are wholly unrelated to the settlement payment to Patton and this litigation as a whole. This request by Plaintiff goes well beyond the scope of the Court's August 15, 2025 Order.

Particularly, the August 15, 2025 Order does not entitle the Plaintiff to all of the bank account statements, records, and information of the Defendants. The September 15, 2025 Order is clear; Plaintiff may obtain bank records that "relate to the purchase of the property, the construction of improvements at the Property; or payment received from Patton Hazleton for purchase of the Property". Plaintiff's objection that Defendants' response was deficient as it produced redacted bank statements has no merit as Defendants were not required to produce whole bank statements unrelated to the Project. In fact, the production was limited to those documents relating to the purchase, improvements, and sale of the Property.[1]

Significantly, Plaintiff admits that it seeks documents well beyond that involving the Project and the Property. In its Letter to the Court, Plaintiff objects to certain redactions in MS Park Construction's bank records, stating that "It is incredible that millions of dollars of payments were made for 'due diligence' on three other properties." Moreover, even if these payments made during the course of the Project were for other things (such as due diligence

---

[1] Plaintiff also seeks documents relating to account ending 9578. Notably, this account belongs to PNK P2, LLC, an unrelated entity. Any documentation relating to PNK P2 LLC's financials are irrelevant and unrelated to subject Project.

studies or purchase of MS Park's corporate assets), those facts are relevant . . ." See October 2, 2025 Letter from Attorney Sine at 6. Defendants previously advised Plaintiffs that these redactions were for payments related to other projects as well as for the purchase of equipment and other fixed assets for MS Park. Documents relating to such other projects and costs fall well outside the scope of the August 15, 2025 Order and, as such, were appropriately redacted. Simply, Plaintiff is not entitled to this information under the August 15, 2025 Order.

To the extent that there is any question or issue as to whether any redaction is appropriate, in accordance with the Court's Order, the Defendants' will submit such documents to the Court for an *in camera* review.

Regardless, in a show of good faith and cooperation, Defendants, in conjunction with this filing, are producing bank account statements to Plaintiff for the following accounts: MS Park Construction, LLC (accounts ending 3905, 2581); PNK P1, LLC (accounts ending 6955, 6963, 3260); PNK Holdings, LLC (accounts ending 5915, 5923, 0372); and PNK P2 (account ending 9578). This production should not act as a waiver of Defendants' position that it fully complied with the Court's August 15, 2025 Order.

***C. PNK Holdings, LLC Agreement***

Plaintiff next objects to the incomplete limited liability agreement of PNK Holdings, LLC. Specifically, Defendants produced the Operating Agreement for PNK Holdings, LLC. However, Exhibit B was missing from agreement. This was a minor oversight and is being provided to Plaintiff in conjunction with this filing.

***D. Payroll Detail Summary***

Plaintiff objects to allegedly incomplete payroll information. However, Defendants obtained these payroll summaries from their ADP system. The production was created through ADP, not by any of the Defendants. As such, Defendants provided the documentation as it is stored. There is no other documentation to obtain. Again, Defendants cannot produce what does not exist. As such, the Defendants complied with the August 15, 2025 Order.

***E. Dismissal Under Rule 37(b)(2) is a drastic sanction requiring a showing of willfulness, bad faith, or substantial fault, not of which is present***

Based upon the foregoing, the dismissal of Defendants' counterclaim is unjustified as Defendants complied with the August 15, 2025 Order. Moreso, even if there were deficiencies in Defendants' production of documents, such deficiencies certainly do not rise to the level of willfulness, bad faith, or substantial fault required to dismiss a party's counterclaim.

Pursuant to the United States Supreme Court, Rule 37 "should not be construed to authorize dismissal of [a] complaint because of a party's non-compliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad, faith, or any fault of" the party against whom sanctions are sought. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 640 (1976). Lower courts have considered National Hockey League to require a showing of bad faith, willfulness, or substantial fault in order to justify the imposition of a dismissal sanction. In re

Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-792 (3d Cir. 1994), cert. denied sub nom. General Elec. Co. v. Ingram, 513 U.S. 1190 (1995) (excluding evidence is an extreme sanction requiring willfulness on the part of the non-complying party). The dismissal of an action for violation of a discovery order is considered appropriate only as a last resort when alternative, less drastic sanctions are not likely to achieve compliance. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). This attitude results in part from the strong judicial preference for resolving cases on their merits and giving plaintiff his day in court. *See, e.g.,* Donnelly v. Johns-Manville Sales Corporation, 677 F.2d 339 (3d Cir. 1982).

In Poulix, the Third Circuit set forth factors for district courts to consider and weigh when deciding whether sanctions precluding a party of their right to proceed with or defend against a claim are warranted. To consider whether sanctions are appropriate, the Cout must weigh: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary; (3) whether there has been a history of dilatoriness; (4) whether the conduct of the party or attorney was willful or in bad faith; (5) the effectiveness of alternative sanctions; and (6) the meritoriousness of the claim or defense." 747 F.2d at 868.

As stated above, Defendants vehemently oppose Plaintiff's contention that it violated the August 15, 2025 Order. As admitted by the Plaintiff, Defendants submitted documents, including bank records and wire transfer, regarding the sale of the Settlement Amount. Plaintiff's additional requests for information and documents are not deficiencies that warrant sanctions. Accordingly, Defendants cannot be held to have acted willfully or in bad faith.

Additionally, under the Poulix factors, there is no prejudice to the adversary. Plaintiff's requests for financial records of all PNK Holdings companies are either unrelated or only tangentially related to this litigation. In contrast, there is significant merit to Defendants' counterclaim. Despite the spectacle being made by the Plaintiff, this case involves a simple breach of contract case in which Defendant MS Park Construction subcontracted with Plaintiff to install a concrete slab in a warehouse. The heart of the dispute is whether Plaintiff's work was defective, thereby breaching the contract. Although Plaintiff's position is that it performed all work and was entitled to full payment, Defendants' counterclaim is that MS Park Construction was damaged due to Plaintiff's failure to perform in accordance with the Subcontract. The dismissal of the counterclaim would contravene our judicial policy that cases should be resolved on their merits.

## CONCLUSION

Based on the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Request to dismiss Defendants' Counterclaim.

/s/KatharineFina____________
Katharine A. Fina, Esq.
FLORIO PERRUCCI STEINHARDT
CAPPELLI & TIPTON, LLC
91 Larry Holmes Drive, Suite 200

Easton, PA 18042
KFina@floriolaw.com
(610) 691-7900

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FORCINE CONCRETE & CONSTRUCTION COMPANY** Plaintiff, v. | : | NO. 3:23-cv-02024 (Judge Leo A. Latella) |
| **MS PARK CONSTRUCTION LLC f/k/a RESEARCH LLC, PNK HOLDINGS, LLC, ANDREY SHARKOV,** and **MARK STILES** Defendants | : | |

**VERIFICATION**

I, George Muraviev, have been authorized by PNK Holdings, LLC, MS Park Construction, LLC f/k/a Research, LLC, and PNK P1, LLC to provide documents in response to the Court's August 15, 2025 Order. I also conducted a diligent search of documents and records on behalf of Defendant Sharkov and Defendant Stiles. I hereby verify that PNK Holdings, LLC, MS Park Construction, LLC f/k/a Research, LLC, PNK P1, LLC, Defendant Sharkov, and Defendant Stiles are not in possession of the following documents:

1. Profit and loss statements and internal/external financial statements for MS Park Construction LLC, PNK Holdings, LLC, PNK P1, LLC.
2. Documents reflecting the anticipated profits for the Project, including:
   a. Pro formas;
   b. Investment proposals;
   c. Internal Rates of Return;
   d. Rent Rolls;

e. Return on Investment (ROI) analyses;

f. Project budgets;

g. Financial models; or

h. Cash flow projects.

3. Docketing statements and undated beneficial ownership information reports.

4. Corporate disclosures or filings under the Corporate Transparency Act.

5. Corporate governance documents not previously produced.

6. Payroll records other than what is being produced on September 15, 2025.

7. Loan Agreement(s) or Capital Contribution record(s) between PNK Holdings and MS Park Construction, LLC

Additionally, I hereby make a correction to my Verification dated September 17, 2025. I hereby verify that I did not produce the Articles of Incorporation for PNK Holdings, LLC. In fact, such document does not exist. However, I previously produced the Certificate of Formation for PNK Holdings, LLC.

Dated: 10/20/2025_ _

/s/ George Muraviev
George Muraviev

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**FORCINE CONCRETE &** :
**CONSTRUCTION COMPANY** :
: NO. 3:23-cv-02024
Plaintiff, : (Judge Leo A. Latella)
v. :
:
**MS PARK CONSTRUCTION LLC** :
**f/k/a RESEARCH LLC,** :
**PNK HOLDINGS, LLC,** :
**ANDREY SHARKOV, and** :
**MARK STILES** :
:
Defendants :
:

**VERIFICATION**

-

I, Mark Stiles, a defendant in the above-captioned litigation. I have reviewed the Court's August 15, 2025 Order and hereby verify that I authorized George Muraviev to review, locate, and produce any and all documents responsive to the Order. Additionally, in an attempt to cooperate, I am producing, directly to Plaintiff, a reward calculation sheet.

Dated: ___________

_________________________________
Mark Stiles