# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

FORCINE CONCRETE AND
CONSTRUCTION COMPANY,

       Plaintiff,

    v.

MS PARK CONSTRUCTION
LLC, et al.,

       Defendants.

CIVIL NO. 3:23-CV-02024

(LATELLA, M.J.)

## MEMORANDUM

Currently before the Court are 9 filings totaling 81 pages (many single-spaced and in a smaller font than required by our Local Rules) plus 369 pages of exhibits relating to 3 separate discovery disputes. In reviewing these submissions, many adages come to mind, but perhaps none as germane as "what's good for the goose is good for the gander." Plaintiff Forcine Concrete and Construction Company ("Forcine") filed an Amended Complaint nearly a year-and-a-half after filing its initial Complaint, adding three additional defendants and two new claims of a totally different nature than those asserted in the initial Complaint.

1

Forcine now simultaneously complains that (1) Defendants' responses to its additional discovery requests are insufficient *and* that Forcine should not be required to respond to *any* of the additional discovery requests propounded by Defendants.  This position is untenable.  Rather, as set forth herein, in light of the new defendants and new claims raised by the Amended Complaint, we are constrained to again extend the discovery deadline to afford both parties with an opportunity to obtain the discovery necessary to prosecute and defend their claims.

## I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Forcine initiated this matter by filing a Complaint naming only one Defendant, MS Park Construction LLC f/k/a Research LLC ("MS Park") on December 6, 2023.  (Doc. 1).  The Complaint included four counts: breach of contract, violation of the Pennsylvania Contractor and Subcontractor Payment Act, quantum meruit, and unjust enrichment.  (*Id.*)  Forcine alleges that MS Park was the general contractor on a construction project for which Forcine, a subcontractor, provided concrete work.  (*Id.* 1 at ¶¶ 5-8).  Following Forcine's completion of the contracted work, Forcine alleges that MS Park refused to pay for part of the work performed.  (*Id.* at ¶¶ 12-24).

MS Park filed an Answer and Counterclaim on February 5, 2024. (Doc. 4).  Forcine filed an Answer to MS Park's Counterclaim on February 26, 2024.  (Doc. 8).  The parties consented to proceed before a magistrate judge on March 6, 2024.  (Doc. 10).  Magistrate Judge Susan Schwab issued a Case Management Order on March 21, 2024.  (Doc. 12).

On June 27, 2024, Forcine filed a Motion to Compel Written Discovery and Document Production and a corresponding motion to extend the discovery deadline.  (Docs. 13, 14).  Judge Schwab issued an Amended Case Management Order on June 28, 2024.  (Doc. 15).  She also issued an Order denying Forcine's Motion to Compel, reminding the parties of her procedures for discovery disputes and directing the parties to submit a joint letter, not more than three pages, outlining the nature of their discovery disputes and their respective positions.  (Doc. 16).  Judge Schwab scheduled a telephone conference for July 29, 2024, to address the dispute.  (*Id.*).

On September 18, 2024, Patton Hazelton, LLC, a non-party, requested a discovery conference after receiving a subpoena.  (Doc. 19). Judge Schwab conducted a telephone conference on that matter on

October 10, 2024. (Doc. 20). She issued a Second Amended Case Management Order on October 11, 2024. (Doc. 23).

Judge Schwab issued an Order on February 6, 2025, following a telephone conference with the parties directing them to exchange a settlement demand and offer and to report back to the Court at a later date regarding the status of settlement negotiations. (Doc. 26).

On February 24, 2024, Judge Schwab issued an Order indicating that Forcine submitted a letter raising discovery issues. (Doc. 27). She instructed the parties to meet and confer to try and resolve the issues, and if unsuccessful, for MS Park to submit a response by March 10, 2025. (Doc. 27). On February 26, 2025 MS Park filed a motion to extend the time to complete discovery. (Doc. 28). Forcine concurred in that motion. (*Id.*). Judge Schwab then issued a Third Amended Case Management Order on February 28, 2025. (Doc. 29).

On March 12, 2025, Judge Schwab issued an Order referencing the parties' submission of letters regarding discovery disputes, and directed the parties to confer in good faith and file a joint report on the status of any remaining disputes. (Doc. 30).

On April 24, 2025, Forcine filed a motion to extend the discovery deadline (Doc. 34), which Judge Schwab granted (Doc. 36). On April 30, 2025, Judge Schwab issued an Order following a conference with the parties discussing specific discovery issues and also permitting Forcine to file an amended complaint. (Doc. 38).

Forcine filed an Amended Complaint on May 5, 2025 – 17 months after it filed its original Complaint. (Doc. 39). The Amended Complaint added three additional defendants: PNK Holdings, LLC, Andrey Sharkov, and Mark Stiles. (*Id*.). In addition to the four claims set forth in the initial complaint, Forcine added a count to "pierce the viel [sic]/alter ego against PNK Holdings, Sharkov, and Stiles," and a count of fraud in the inducement against all Defendants. (*Id*. at 35, 40).

The case was reassigned to the undersigned magistrate judge on June 10, 2025.[1]  On July 14. 2025, Defendants filed a Motion to Dismiss and supporting brief. (Docs. 44, 45).

---

[1] On June 24, 2025, we issued a Notice to the Parties indicating that we intended to continue to exercise the jurisdiction previously consented to the parties unless any party raised an objection. (Doc. 42). No party filed any such objection.

On July 22, 2025, Forcine submitted a letter asking the Court to enforce Judge Schwab's April 30, 2025 Order as to an ongoing discovery dispute.  (Doc. 46).  On that same date, Defendants filed a motion to again extend the discovery deadline.  (Doc. 47).  Defendants indicated such extension was necessary because Plaintiff's Amended Complaint added three additional defendants and two new claims, necessitating additional discovery.  (*Id*.).  We scheduled a telephone conference for August 1, 2025.  (Doc. 48).

On July 28, 2025, Forcine filed a response in opposition to Defendants' Motion to Dismiss.  (Doc. 50).  Forcine also filed a brief in opposition to Defendants' Motion to Extend Deadlines.  (Doc. 51).  On August 5, 2025, we entered an Order granting the motion to extend case management deadlines.  (Doc. 55).  On August 6, 2025, Forcine filed a Second Amended Complaint.  (Doc. 56).  The Second Amended Complaint again included as defendants MS Park, PNK Holdings, Andrey Sharkov, and Mark Stiles and included the same claims raised in the Amended Complaint.  (*Id*.)[2].

---

[2] The Second Amended Complaint was filed to correct a scrivener's error in the original Amended Complaint.

6

Forcine filed a letter to the docket on August 8, 2025 indicating that the parties were working on a proposed order to compel document production.  (Doc. 57).  Forcine submitted a proposed order on August 13, 2025 (Doc. 58), which we entered on August 15, 2025 (Doc. 59).

On August 18, 2025, we entered an Order denying Defendants' Motion to Dismiss the Amended Complaint as moot due to Forcine's filing of the Second Amended Complaint.  (Doc. 60).  Defendants filed a Motion to Dismiss Counts of the Second Amended Complaint and supporting brief on August 19, 2025.  (Docs. 61, 62).  Forcine filed a Motion for an extension of time to respond to the Motion to Dismiss on September 3, 2025 (Doc. 63), which we granted on September 4, 2025 (Doc. 64).

Forcine filed its Brief in Opposition to Dismiss Counts of Plaintiff's Amended Complaint on September 5, 2025.  (Doc. 65). Defendants filed a Reply Brief on September 22, 2025.  (Doc. 66).

On October 6, 2025, Forcine filed a letter to the docket requesting leave to file a sur-reply to the Motion to Dismiss.  (Doc. 67).  By Order dated October 8, 2025, we permitted Forcine to file a short sur-reply. (Doc. 69).

On October 7, 2025,[3] Forcine filed a letter requesting that the Court enter a Show Cause Order as to why Defendants' counterclaim in this matter should not be dismissed with prejudice based upon Defendants' alleged failure to comply with the Court's August 13, 2025 Order ("Plaintiff's Show Cause Motion"). (Doc. 68). The Court Ordered Defendants to respond to Plaintiff's Show Cause Motion within 10 days. (Doc. 70). Forcine then filed a Motion for a Protective Order on October 17, 2025 ("Plaintiff's Motion for a Protective Order"). (Doc. 73).

Forcine filed its sur-reply in further opposition to the Motion to Dismiss on that same date. (Doc. 74). Defendants filed a response to Plaintiff's Show Cause Motion on October 20, 2025. (Doc. 75). Defendants also filed a Brief in Opposition to Plaintiff's Motion for a Protective Order and in Support of Defendants' Motion to Compel Discovery on October 31, 2025. (Doc. 77). On that same date, Defendants filed a Cross-Motion to Compel Written Discovery and Depositions from Plaintiff ("Defendant's Motion to Compel"). (Doc. 78).

---

[3] We note that the heading of this correspondence is dated October 2, 2025. (Doc. 68). However, it was not filed to the docket until October 7, 2025. (*Id.*).

Forcine filed a response to Defendants' October 20, 2025 Response to Plaintiff's Show Cause Motion on November 3, 2025 (Doc. 79). Forcine filed a Reply Brief in Further Support of its Motion for a Protective Order on November 14, 2025. (Doc. 80).

Defendants filed correspondence on November 18, 2025, responding to Forcine's Response to Defendants' Response to Plaintiff's Show Cause Motion. (Doc. 81). On November 25, 2025, Defendants filed a "Reply Brief in Support of Defendants' Cross-Motion to Compel Discovery." (Doc. 82).

On February 2, 2026, Defendants requested a conference with the Court to address case management deadlines in light of the pending discovery motions. (Doc. 83). Forcine responded to that correspondence on February 26, 2026. (Doc. 84).

While all of the above motions were pending, Forcine filed a Motion for Summary Judgment and supporting brief on March 2, 2025. (Docs. 85, 86).

The various discovery related motions and letters (Docs. 68, 73, 75, 77, 78, 79, 80, 81, and 82) are now ripe for review.

## II.    LEGAL STANDARD

### A. Scope of Discovery

The scope of discovery is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  As a consequence, courts often—and appropriately—apply liberal treatment to discovery rules.  *See, e.g.,* *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.,* 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citing *Great W. Life Assurance Co. v. Levithan,* 152 F.R.D. 494, 497 (E.D. Pa. 1994)).  Discovery is generally permitted of any items that are relevant or may lead to the discovery of relevant information.  *Hicks v. Big Brothers/Big Sisters of Am.,* 168 F.R.D. 528, 529 (E.D. Pa. 1996);

10

*Stabilus v. Haynsworth, Baldwin, Johnson, & Greaves, P.A.*, 144 F.R.D. 258, 265–66 (E.D. Pa. 1992) (when there is no doubt about relevance a court should tend toward permitting discovery).  Moreover, discovery need not be confined to items of admissible evidence but may encompass that which appears reasonably calculated to lead to the discovery of admissible evidence.  *Callahan v. A.E.V., Inc.*, 947 F. Supp. 175, 177 (W.D. Pa. 1996); *Momah v. Albert Einstein Medical Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996).  Although "the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits." *Stabilus*, 144 F.R.D. at 265.  The Court will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relating to confidential or privileged information.  *S.S. Fretz, Jr., Inc. v. White Consol. Indus., Inc.*, No. 90–1731, 1991 WL 21655, at *2 (E.D. Pa. Feb. 15, 1991).

It is well-established that rulings concerning the proper scope of discovery and the extent to which discovery may be compelled are within the Court's discretion.  *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987).  The court's decision regarding the

11

conduct of discovery, including whether to compel disclosure, will only be disturbed on a showing of an abuse of discretion. *See Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

## B. Standard for Motion to Compel

Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
>
> > (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery....

Fed. R. Civ. P. 37(a). A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosures or discovery of the materials sought. Fed. R. Civ. P. 37(a). "The moving party must demonstrate the relevance of the information sought to a particular claim or defense." *Montanez v. Tritt*, Civ. No. 14-1362, 2016 WL 3035310, at *2 (M.D. Pa. May 26, 2016). "The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Id.* (citing *Goodman v. Wagner*, 553

F. Supp. 255, 258 (E.D. Pa. 1982)). "Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." *Momah*, 164 F.R.D. at 417 (quoting *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir. 1982)). However, once the objection has been properly articulated, the burden rests with the party seeking discovery to show that a discovery request lies within the bounds of Rule 26. *Momah,* 164 F.R.D. at 417. Then, the party opposing discovery must convince the court why discovery should not be had. *Id.* (citing *Amcast Indus. Corp. v. Detrex Corp.,* 138 F.R.D. 115, 118–19 (N.D. Ind. 1991)).

## C. Standard for Motion for Protective Order

Rule 26 provides a framework by which a party may seek a protective order to limit the scope of discovery. Specifically, Rule 26(c)(1) provides as follows:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending..... The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment,

13

oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1).  In this Circuit, the party seeking the protective order bears the burden of showing that it is particularly needed to obviate a significant harm; broad allegations of harm will not suffice. *Trans Pacific Ins. Co. v. Trans–Pacific Ins. Co.,* 136 F.R.D. 385, 391 (E.D. Pa. 1991) (citing *Cipollone v. Ligget Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98

14

L.Ed.2d 485 (1987)); *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578,* 130 F.R.D. 348, 352–53 (D.N.J. 1990); *Frazier v. Se. Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 313 (E.D. Pa. 1995).  If a motion for a protective order is denied in whole or in part, "the court may, on just terms, order that any party or person provide or permit discovery."  Fed. R. Civ. P. 26(c)(2).

## D. Standards for Sanctions

Rule 37(b) provides for various sanctions based upon a party's failure to comply with a court order regarding discovery or failure to produce a witness.  Fed. R. Civ. P. 37(b).  The Rule provides:

**(b) Failure to Comply with a Court Order.**

**(1) *Sanctions Sought in the District Where the Deposition Is Taken.*** If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court. If a deposition-related motion is transferred to the court where the action is pending, and that court orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of either the court where the discovery is taken or the court where the action is pending.

**(2) *Sanctions Sought in the District Where the Action Is Pending.***

15

**(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

**(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

**(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

**(iii)** striking pleadings in whole or in part;

**(iv)** staying further proceedings until the order is obeyed;

**(v)** dismissing the action or proceeding in whole or in part;

**(vi)** rendering a default judgment against the disobedient party; or

**(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

**(B)** *For Not Producing a Person for Examination.* If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), unless the disobedient party shows that it cannot produce the other person.

16

> **(C)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b).

Additionally, Federal Rule of Civil Procedure 11 provides, in relevant part, that every "pleading, written motion, and other paper must be signed by at least one attorney of record," and by "presenting to the court a pleading, written motion, or other paper," the attorney signing it certifies that it is "not being presented for any improper purpose," and that the "claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11(a)-(b). Rule 11 also provides the court with authority to impose sanctions, if, "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated." Fed. R. Civ. P. 11(c)(1). The Rule provides that "a motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Finally, and pertinent here, Rule 11 specifically provides: "This rule does not apply to

17

disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d).

## III. DISCUSSION

Before addressing the parties' various motions, we are compelled to note that in contravention of the Middle District of Pennsylvania Local Rules of Civil Procedure, neither party attached the certifications required pursuant to Local Rules 7.1 and 26.3. Our Local Rules provide that all motions "shall contain a certification by counsel for the movant that he or she has sought concurrence in the motion from each party, and that it has been either given or denied." M.D. Pa. LR 7.1. Additionally, Local Rule 26.3 relates directly to discovery motions and provides additional obligations upon parties filing discovery related motions. That Rule states:

> Counsel for movant in a discovery motion shall file as part of the motion a statement certifying that counsel has conferred with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the court, together with a detailed explanation why such agreement could not be reached. If part of the issues raised by the motion have been resolved by agreement, the statement shall specify the issues so resolved and the issues remaining unresolved.

M.D. Pa. LR 26.  Rule 7.1 references Rule 26.3, noting: "A certificate of nonconcurrence does not eliminate the need for counsel to comply with Local Rule 26.3 relating to conferences between counsel in all discovery motions directed toward a resolution of the motion."  M.D. Pa. LR 7.1.  Chief Judge Brann has stated that "a party's failure to provide [the Rule 26.3] certification before bringing a discovery motion provides the court with a freestanding reason to deny the motion." *Bolus v. Carnicella*, No. 4:15-CV-01062, 2020 WL 930329, at *3 (M.D. Pa. Feb. 26, 2020) (citing *Han Tak Lee v. Tennis*, No. 4:CV-08-1972, 2012 WL 2905384, at *3 (M.D. Pa. July 16, 2012)).  He noted that this rule is "designed to encourage professionalism and collegiality among litigators and avoid unnecessary court intervention, protracted legal proceedings and needless expense and fees.  Zealous advocacy does not excuse a belligerent and uncompromising approach to the discovery process." *Id.* (internal quotation omitted).

   In this case, we must express our dissatisfaction with the parties' failure to comply with these Rules.  Neither Forcine nor Defendants attached the certifications required pursuant to Local Rules 7.1 or 26.3 to any of their filings seeking affirmative relief relating to discovery

19

disputes. (*See* Docs. 68, 73, 78). As demonstrated by Defendants' response to Forcine's Show Cause Motion, (Doc. 75), it appears as though at least some of the parties' disputes could have been addressed by counsel simply picking up the telephone and calling opposing counsel.[4] Nevertheless, while non-compliance with Rule 26.3 is "certainly disfavored by this District," the District "has shown some leniency with litigants' non-compliance on these and related measures." *Bolus*, 2020 WL 930329, at *4. Accordingly, we will not deny the parties' various motions based upon their collective failure to adhere to our Local Rules.

---

[4] By way of example, Plaintiff complains that an exhibit to the PNK Holdings LLC Operating Agreement was not produced. (Doc. 68 at 6-7). In response, Defendants indicated that the failure to provide the exhibit was an oversight and represented that they provided the exhibit to Forcine in conjunction with the filing of their response. (Doc. 75 at 4). Rather than aggressive litigation, a simple collegial, professional phone call could have avoided the necessity to turn to the Court for intervention. Which compels another observation, the over-the-top and unnecessarily accusatory language found in many of these filings is counterproductive and serves as an obstacle to resolving even simple disputes – which at times are not even disputes but rather misunderstandings. Rather than attempting to show the Court whose ax is bloodier, the parties would do better to demonstrate the capacity for professionalism and collegiality and the capability of exercising restraint in the choice of words.

20

We turn first to Forcine's Show Cause Motion.

## A. Forcine's Show Cause Motion

Forcine's Show Cause Motion raises several alleged deficiencies with respect to Defendants' production of documents in response to our Order dated August 13, 2025. (Doc. 68). Forcine first argues that the submitted verification is deficient, arguing that our August 13, 2025 Order compelled each Defendant to submit a separate verification. (*Id.* at 21). Second, Forcine argues that Defendants' production is deficient because it contains inadequate information regarding the "settlement payment." (*Id.* at 3). Third, Forcine claims that some additional bank records are missing and those that were provided include improper redactions. (*Id.* at 4-5). Fourth, Forcine asserts that the copy of the Limited Liability Operating Agreement that Defendants produced was missing the exhibits. (*Id.* at 7-8). Finally, Forcine claims that the payroll records generated by a third-party data processing provider includes missing data and pages that are in the incorrect order. (*Id.* at 7-8). We will consider each issue in turn.

### 1.   Sufficiency of Defendants' Verification

Forcine asserts that the "clear language of the [August 15, 2025] Order" required each Defendant to submit a separate verification. (Doc. 68 at 3; Doc. 79 at 2) ("The Court required all of the Defendants to verify that they did not have any of the requested documents in their possession."). However, Forcine claims Defendants submitted only a single verification from George Muraviev on behalf of PNK Holdings, LLC, MS Park Construction, and PNK P1, LLC. (Doc. 68 at 2). Language in the Muraviev affidavit provides that the corporate defendants do not have any documents relating to the anticipated profits for the project at issue, including pro forma documents. (*Id*.). Forcine states, however, that Mark Stiles testified that he prepares his own internal documents, including a pro forma. (*Id*.). Forcine argues that because the verification "on its face" is "violative of the Court's Order," the Court should "enter an Order to Show Cause and ultimately dismiss MS Park's counterclaim." (*Id*. at 3).

Defendants respond by asserting that there is no language in the Order requiring each Defendant to submit a separate verification. (Doc. 75 at 2). Accordingly, they maintain that they did not violate the

August 15, 2025 Order.  (*Id.*).  Defendants also submitted as an Exhibit an additional verification from Muraviev.  (Doc. 75 at 7-8).  In that Verification, Muraviev confirmed that he was authorized by PNK Holdings, LLC, MS Park Construction, LLC f/k/a Research, LLC, and PNK P1, LLC to provide documents in response to the Court's August 15, 2025 Order.  (*Id.* at 7).  He further stated that he also conducted a diligent search of documents on behalf of Defendant Sharkov and Defendant Stiles.  (*Id.*).  He then verified that none of the Defendants were in possession of certain documents, including pro formas.  (*Id.*). Defendants also attached a Verification of Mark Stiles.  (Doc. 75 at 9). Defendant Stiles stated that he reviewed the Court's August 15, 2025 Order and authorized Muraviev to review, locate, and produce any and all documents responsive to that Order.  (*Id.*).  He further stated that, "in an attempt to cooperate, [he is] producing directly to Plaintiff, a reward calculation sheet."  (*Id.*).

Forcine argues that Defendants' belated "attempt to cure" their "defiance of the Court's Order" is insufficient and that it has questions regarding the "reward calculation sheet."  (Doc. 79 at 2).  Forcine notes that none of the documents produced by Defendants is entitled "reward

calculation sheet." (*Id.*). One document is entitled "Calculation Sheet," but was not produced in its native format and has a total that does not exactly match the Patton Contract price. (*Id.*).

First, Forcine's assertion that we required each Defendant to submit a separate verification is not supported by the text of our Order. The Order states: "If Defendants do not have any of the above documents within their possession, they must affirmatively state so in $a$ verified response." (Doc. 59 at 5). The use of "a" in that sentence indicates that a single verification was contemplated. We cannot, therefore, accept Forcine's interpretation of our Order which is contrary to its plain language, that the submission of a singular verification violated our Order or warrants dismissal of MS Park's counterclaim.

### 2. Sufficiency of Settlement Payment Related Information and Banking Records and Propriety of Redactions

Forcine next argues that the bank records produced by Defendants regarding the settlement payment from MS Park to the purchaser of the property, Patton Hazleton, LLC, were insufficient. (Doc. 68 at 3). Forcine states that the bank statements for the account ending in 3905 do not identify "the names of the account holders and the final four digits of the account." (*Id.*). Forcine also alleges that MS

24

Park failed to include a privilege log. (*Id.*). Additionally, Forcine indicates that no bank statements were produced for accounts ending in 0372, 2581, 5932, and 6963. (*Id.* at 4). Further, it claims Defendants only produced two bank statements for account ending in 6963. (*Id.*) As to account ending in 6955, Defendants produced only 2 bank statements and the statements are not legible in certain areas and Defendants produced only two months of statements for account ending in 3260. (*Id.* at 5). Finally, Forcine claims that Defendants' explanation as to the redactions of the bank statements is insufficient. (*Id.* at 5-6). Forcine argues that Defendants failed to provide a privilege log or verify under oath that the redactions were related to other projects. (*Id.*).

In response, Defendants assert that they complied with the August 15, 2025 Order by producing records that "related to the distribution of the proceeds from the sale of the property." (Doc. 75 at 2-3). Defendants claim that Forcine is now seeking "additional documentation and information relating to money transfers between the PNK entities, most of which are wholly unrelated to the settlement payment to Patton and this litigation as a while." (*Id.*). Defendants

argue that the August 15, 2025 Order "does not entitle the Plaintiff to all of the bank account statements, records and information of the Defendants." (*Id.* at 3). Nevertheless, in a "show of good faith and cooperation," Defendants produced bank statements for 9 additional accounts, without waiving its position that it previously fully complied with the Court's August 15, 2025 Order. (*Id.*).

Notwithstanding Defendants' specific statement that they complied with the August 15, 2025 Order, Forcine asserts that "Defendants admit that they failed to produce all documents responsive to the Court's Order." (Doc. 79 at 4). Forcine also states that Defendants' characterization of the "intent" of the Order to apply to only financial records related to the distribution of the proceeds of the sale of the property was incorrect as the Order "expressly compelled Defendants to produce more than that." (Doc. 79 at 4).

First, we note that Forcine's claim that "the bank statements for AE 3905 for the month of October 2023 do not identify 'the name of the account holders and final four digits of the account…" is contradicted by Forcine's own statement. The sentence begins with reference to "AE 3905," and so, it is clear Defendants did provide the last four digits of

26

the account.  In their Response, Defendants indicate that MS Park is

the owner of the account ending in 3905.  (Doc. 75 at 3).  Thus, we deem

the first issue to be resolved.

As to the sufficiency of the production, we find that Defendants'

interpretation of the "intent" of the Order is correct.  With respect to

bank records, the Order provides as follows:

> To the extent they exist and have not been
> produced before, all documents *related to the*
> *distribution of the proceeds from the sale of the*
> *property*, including but not limited to the
> following:
>
> i.  Bank records . . . showing the flow of funds
>     from the purchaser to any individual or
>     entity;
> ii. Bank records . . . showing the flow of funds
>     between any "PNK Group" entity;
> iii. Bank records . . . showing the flow of funds
>      between any PNK Group entity and any
>      individuals . . .
> iv. Bank records for all PNK Group entities
>     and individuals . . . that depict any transfer
>     of funds related to the $212,000 settlement
>     payment, including bank account
>     statements for all entities and individuals
>     for the months of October 2023 through
>     March 2024;
> v.  Bank statements, cancelled checks, and
>     wire transfer records . . . that relate to the
>     purchase of the property, the construction
>     of improvements at the Property or

> payment received from Patton Hazleton for purchase of the Property;
>
> vi. Bank records showing the initial capitalization of Research LLC and MS Park Construction, LLC;
>
> vii. Documents reflecting the profit realized on the sale of the Property . . .

(Doc. 59 at 2-3) (emphasis added).  It is clear from language of the Order that we never contemplated Defendant producing bank records beyond those specified.  That Order should not be construed as permitting Forcine to have unfettered access to all of Defendants' bank records.  In fact, we remind Forcine that our August 15, 2025 Order followed Judge Schwab's April 30, 2025 Order (Doc. 38), which specifically contemplated that entries related to other projects would be redacted.

In response to Forcine's Motion for Show Cause Order, Defendants produced additional bank records for nine accounts.  (Doc. 75 at 4). Defendants assert that they produced records for each of the accounts identified in Forcine's Motion for Show Cause Order, specifically, accounts ending in 0372, 2581, 5923, 5915, 6963, 6955, and 3260.  (Doc. 75 at 4).

Our Order required Defendants to produce "documents that are sufficiently legible to see the accounts that sent/received the funds." (Doc. 59 at 2 n.1).  To the extent Defendants have not provided a legible copy of the statement for account ending in 6955 referenced on page 5 of Forcine's Motion for Show Cause Order, they are directed to do so.

Finally, we deem Defendants' explanation as to the redactions to be sufficient.  Nowhere in our Order did we require Defendants to verify under oath that redactions were related to other projects.  Judge Schwab previously instructed: "defense counsel shall provide a log of the redactions of the banking records setting forth the reason/reasons for the redactions, and if a reason is that the redacted entry is unrelated to the project at issue in this case but related to another project, the defendant shall provide the name of the other project."  (Doc. 38 at ¶ 2).

The explanation of redactions provided by counsel for Defendants is sufficient.  Defendants identify the other projects that the entries relate to as well as the other bases for redactions including payments for equipment purchases and that are part of MS Park's fixed assets. Counsel represents that "[A]ll banking entries related to the Humboldt project are produced without redaction [and] . . . none of the redacted

29

payments went to PNK affiliated entities." (Doc. 68 at 6). We fail to see how discovery of Defendants' banking records beyond those Ordered and produced are "tailored to the issues involved in [this] particular case." *See Fassett v. Sears Holding Corp.*, 319 F.R.D. 143, 149 (M.D. Pa. 2017).

### 3.    Sufficiency of the Produced Operating Agreement

Next, Forcine claims that Defendants produced an incomplete LLC Operating Agreement for PNK Holdings, LLC. (Doc. 66 at 6). Specifically, Forcine asserts that the exhibits to the Operating Agreement were not produced. (*Id.*). Forcine also indicates that Muraviev's Verification states that Defendants produced the Articles of Incorporation for PNK Holdings, LLC, but no document entitled Articles of Incorporation was produced.[5] (Doc. 68 at 7).

In response, Defendants noted that the failure to include Exhibit B to the Operating Agreement was a "minor oversight" and that they produced Exhibit B in conjunction with the filing of their Response.

---

[5] Forcine acknowledges that PNK Holdings is an LLC, and so, questioned why Articles of Incorporation would have been filed. (Doc. 68 at 7).

(Doc. 75 at 4).  Defendants also clarified that Mr. Muraviev's statement that Articles of Incorporation were being produced was a "partial misstatement" as Articles of Incorporation do not exist, but the Certificate of Formation for PNK Holdings, LLC was produced.  (Doc. 75 at 2).

As Defendants have now produced Exhibit B, this issue is resolved.

    4.    Sufficiency of the Payroll Data

Finally, Forcine complains they produced pages that "could not be 'generated' from their accounting system." (Doc. 68 at 7).  It includes an example of the message that appears on several pages of the production:

> We're sorry, **Payroll Detail Summary** could not be generated.
>
> Possible reasons:
> · The report or tax form doesn't apply for this client
> · The date range you gave isn't valid
> · Processes that provide information for the request may not have happened yet

(Doc. 68 at 7)[6].  Forcine also takes issue with the order in which Defendants produced the payroll records.  (*Id*.).

In response, Defendants assert that they obtained the payroll summaries from their ADP system.  (Doc. 75 at 4-5).  Because the "production was created through ADP, not by any of the Defendants," they claim they produced the documents as they were stored.  (*Id*.). They assert that there is no other documentation to obtain and that they cannot produce what does not exist.  (*Id*.).  Further, Defendants indicate that the production is "entirely sufficient for any conceivable purpose in this litigation" as the "summaries provided clearly show the number of employees at MS Park Construction, their identities, their respective positions, and the wages they were paid."  (Doc. 81 at 3).

Defendants are correct that we cannot compel a party to produce documents that do not exist.  *Wells v. JPC Equestrian, Inc.*, No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014) ("It is an

---

[6] Following Defendants' Response to this Motion, Forcine filed an additional letter and argued that this error message violates Defendants' obligation to produce documents in a "legible manner." (Doc. 79 at 5).  We disagree with Forcine's characterization of this message as rendering the production illegible.

obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist.").  Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. *See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); *Knauss v. Shannon*, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009); *Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).  Accordingly, given Defendants' representations that no further documentation exists as to the payroll data, we are unable to compel any further production.  And in any event, again, based upon the representation of Defendants, the information produced appears to be sufficient.

> 5.  Forcine's Request that Defendants' Counterclaim be Dismissed

Forcine argues that dismissal of Defendants' Counterclaim pursuant to Fed. R. Civ. P. 37(b)(2) is appropriate based upon

Defendants' "failure to comply with this Court's August 13, 2025 Order compelling the production of documents."[7]

Defendants argue that dismissal is a "drastic sanction" requiring a showing of willfulness, bad faith, or substantial fault, which are not present here.  (Doc. 75 at 4).  Further, Defendants assert that application of the *Poulis* factors demonstrates that dismissal is not appropriate.  (*Id.*) (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (discussing factors for courts to consider in deciding whether to dismiss complaint or claim as sanctions including (1) the extent of the party 's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense).

---

[7] We understand Forcine to be referencing our August 15, 2025 Order. (Doc. 59).

Defendants claim that they "vehemently oppose the contention that [they] violated the August 15, 2025 Order." (*Id*.). They argue that there is no prejudice to Forcine, as the discovery sought is either unrelated or only tangentially relate to this litigation. (*Id*.). They argue there is substantial merit to their counterclaim, which is that MS Park was damaged due to Plaintiff's failure to perform in accordance with the subcontract. (*Id*). Defendants assert that dismissal of the counterclaim would contravene judicial policy that cases should be resolved on the merits. (*Id*.).

Forcine replies that dismissal is warranted based upon Defendants' bad faith. (Doc. 79 at 5). It asserts such sanctions are necessary to "put an end to Defendants' attempts to unnecessarily increase the cost of this litigation." (*Id*, at 5). It also claims that dismissal is necessary to deter future misconduct and uphold the integrity of the federal court system. (*Id*. at 6-7). Forcine then applies the *Poulis* factors. Forcine argues that Defendants bear personal responsibility for the failure to comply with Court orders. (*Id*. at 8). It asserts prejudice as it proceeded with depositions of Defendant witnesses without the requested discovery and now, must seek to either

extend discovery again in order to re-depose them or proceed without deposition discovery on critical issues.  (*Id*).  Additionally, Forcine claims Defendants' conduct has greatly increased the cost of litigation. (*Id*.).  Forcine also argues that Defendants have a repeated history of dilatory conduct in this case.  (*Id*.).  Forcine claims that Defendants engaged in bad faith conduct, citing an affidavit of Andrey Sharkov where he admitted that he "deliberately changed his mobile phone number and did not retain data from his messaging applications."  (*Id*. at 9).  Forcine argues that no other sanction will be effective and that Defendants claim is unmeritorious.  (*Id*.).

Forcine's request to dismiss Defendants' counterclaim will be denied.  The parties' submissions reveal that Defendants made a substantial effort to comply with our August 15, 2025 Order.  The deficiencies identified by Forcine were not the type that warrant the severe sanction of dismissal and further, many of the purported deficiencies have been remedied.

While we acknowledge that Defendants' production was imperfect and that Defendants bear personal responsibility for some of the deficiencies identified by Forcine, we do not construe any of those

36

violations as demonstrating a willful violation of our August 15, 2025 Order. Further, we do not believe Forcine sustained any significant prejudice based upon Defendants' conduct. Indeed, Forcine decided to file an Amended Complaint on May 5, 2025, one year and five months after filing its initial Complaint, adding three additional defendants and two entirely new claims. (*See* Doc. 56). The discovery at issue in Forcine's Motion for Show Cause Order relates to those new claims. Forcine cannot credibly be heard to complain of a delay created by its own making. And further, had Forcine complied with our Local Rules regarding the requirement to confer meaningfully with the opposing party prior to filing a discovery motion, it likely would have obtained the additional documents produced by Defendants more quickly and avoided many of the costs incurred in the filings associated with this Motion.

While Defendants may have a history of dilatory conduct in this litigation, as set forth below, we find Forcine's conduct more egregious and decline, therefore, to find that this factor weighs in favor of dismissal here. As discussed *supra*, we do not believe Defendants acted in bad faith. To the contrary, they made a meaningful effort at

compliance that included some minor deficiencies, which have been rectified.  While other sanctions may be available, we do not deem any sanctions necessary.  Finally, at this juncture, we are unable to say that Defendants' counterclaim is unmeritorious.  *See Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) ("Generally, in determining whether a plaintiff's claim is meritorious, we use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim.").  Based upon this assessment of the *Poulis* factors, we will deny Forcine's request to dismiss Defendants' counterclaim.

## B. Forcine's Motion for a Protective Order and Defendants' Cross-Motion to Compel Written Discovery and Depositions

In an additional letter to the docket, titled "Motion for a Protective Order," Forcine seeks a protective order "preventing Defendants . . . from using discovery for gamesmanship purposes; namely adding a new law firm to represent the Defendants to justify resending written discovery after the parties had completed that stage of litigation." (Doc. 73 at 1).  Forcine also "requests that the Court sanction Defendants and their attorneys pursuant to Federal Rule of Civil Procedure 11(c) as a result of their conduct."  (*Id.*).

38

In response to Forcine's Motion for a Protective Order, Defendants filed a separate "Cross-Motion to Compel Written Discovery and Depositions from Plaintiff" (Doc. 78) and filed a single brief both in opposition to Plaintiff's Motion for a Protective Order and in Support of its Motion to Compel Discovery (Doc. 77).[8]

Because of the significant overlap in these two motions, we will address them together.

### 1.   Defendants' Written Discovery

Forcine asserts that Defendants served an additional set of Interrogatories and Requests for Production of Documents on September 18, 2025.  (*Id.* at 2).  Forcine claims the discovery requests

---

[8] Forcine correctly points out that our Local Rules provide that a brief may address only one motion.  (*See* Doc. 80 at 1 n.1).  We note, however, that Forcine is likewise guilty of failing to comply with various Local Rules.  *See, e.g.,* M.D. Pa. LR 5.1 (typeface shall not be smaller than 14 point word processing font and text must be double spaced); M.D. Pa. LR 7.1 (all motions must be written, include a certificate of concurrence, and be accompanied by a form order); M.D. Pa. LR 7.5 (within fourteen days of filing a motion, the party filing the motion shall file a brief in support thereof); M.D. Pa. LR 7.8 (regarding content of briefs); LR 26.3 (requiring good faith conference regarding discovery disputes prior to filing discovery motions).  We do not condone either party's disregard of our Local Rules and expect compliance with all Local Rules going forward.

were "largely duplicative" of requests served by MS Park over a year and a half ago, unnecessary, overly broad, and not proportional to the needs of the case. (*Id.*). Forcine asserts that "the fact that Defendants waited years to serve this substantial amount of discovery requests, and only after obtaining *five discovery extensions* supports that Defendants' requests for this broad scope of discovery is merely an effort to harass Forcine and not necessary to address the claims and defenses at issue between the parties." (Doc. 73 at 6) (emphasis in original).

Forcine asserts that "in a good faith effort to avoid motion practice," it "wrote to Defendants and requested that they withdraw the requests."[9] (Doc. 73 at 6). In response, Forcine claims that Defendants "doubled-down on their harassing behavior by sending 23 additional document requests" on October 3, 2025. (*Id.*). Without identifying any

---

[9] Forcine's assertion that it engaged in a good faith effort is belied by its attached correspondence where it simply demands that Defendants completely withdraw all served discovery. (Doc. 73 at 10; 73-1 at 22) ("I am writing . . . to demand that Defendant . . . withdraw its excessive and unnecessary discovery requests served on September 18, 2025."). This can hardly be construed as satisfying the "good faith effort" contemplated by Rule 26.3 to "resolve by agreement the issues raised by the motion without intervention of the court." M.D. Pa. LR 26.3.

specific requests, Forcine claims that the additional document requests are "largely duplicative," and "not relevant or proportional to the needs of the case." (*Id.*).  In support of its Motion for a Protective Order, Forcine cites *Fouad v. Milton Hershey School and Trust*, 1:19-CV-253, 2020 WL 3265245, at \*7 (M.D. Pa. June 17, 2020), stating that this Court has granted protective orders under similar situations where a party propounds excessive discovery requests.  (Doc. 73 at 8).  Forcine also cites *Nesselrotte v. Allegheny Energy, Inc.*, CIVA 06-01390, 2008 WL 1925107, at \*2 (W.D. Pa. Apr. 30, 2008), in support, claiming that courts within this Circuit have prevented parties from obtaining additional discovery when it fails to offer good cause for delaying the issuance of written discovery.  (*Id.*).

With respect to their written discovery requests, Defendants note that Plaintiff amended its Complaint on May 5, 2025, to add additional defendants as well as additional claims and included 159 paragraphs of allegations in support of its new causes of action.  (Doc. 77 at 11).  Defendants assert that Defendant PNK propounded discovery on September 18, 2025, in furtherance of its effort to provide a defense to these new allegations and causes of action and that Defendant Sharkov

41

propounded his own request for document production on October 3, 2025.  (Doc. 77 at 11).  Defendants claim that these discovery requests related directly to Plaintiff's claims, including documents relating to Plaintiff's work on the project; Plaintiff's qualifications; Plaintiff's experience pouring concrete; Plaintiff's claims for damages; and Plaintiff's allegations as to fraud.  (*Id*.).  In response, Plaintiff "blanketly objected to the requests, stating in . . . correspondence that Plaintiff believed the requests were unnecessary, cumulative, and duplicative and demanding that Defendant withdraw the requests." (*Id*.).  Defendants distinguish *Nesselrotte*, noting that in that case, the deadline for the party to respond to discovery was after the discovery period and the court had previously warned that there would be no additional discovery extensions.  (Doc. 77 at 11-12) (citing 2008 WL 1825107, at *1).[10]

---

[10] Of note, Defendants argue, in a footnote, that "the ruling in *Fouad v. Milton Hershey Sch. & Tr.*," 1:19-CV-253, 2020 WL 3265245, at *1 (M.D. Pa. June 17, 2020), "is also inapplicable to this action."  (Doc. 77 at 12 n.2).  We could not disagree more.  In *Fouad*, Magistrate Judge Carlson considered 15 docket entries relating to discovery disputes and stated:

> The parties have conducted this litigation in a
> bitter and acrimonious fashion, taking every

Defendants acknowledge that "some subject areas may overlap naturally with prior discovery," but argue that "this overlap is the result of Plaintiff having repleaded existing issues under new legal theories, not because of Defendants duplicating work." (Doc. 77 at 12). Defendants assert that the new requests are "'more specific, seeking certain documents, communications, and information." (*Id.*). They further state: "[A]s Defendants' counsel previously advised, if Plaintiff has already produced such documents and information, there is no harm to Plaintiff simply responding that Plaintiff has already provided all responsive documents. In fact, making a simple statement to that effect is relatively easy and would fully satisfy its obligations." (*Id.*).

We note that the two sets of additional discovery requests Forcine complains of were served by Defendants PNK Holdings, LLC (Doc. 73-1 at 2-20) and Andry Sharkov (Doc. 73-1 at 31-37) by attorneys who

---

> opportunity to engage in a mutually caustic dialogue resulting in dysfunction and strife which is antithetical to the goals of our legal system – 'the just, speedy, and inexpensive determination of every action and proceeding.'

*Fouad*, 2020 WL 3265245, at \*1 (citing Fed. R. Civ. P. 1). That passage could apply here with equal force where we are considering 9 filings relating to contentious and acrimonious discovery disputes.

entered their appearances *after* the filing of the Amended Complaint. (Docs. 43, 52, 53).  Defendants PNK Holdings, LLC and Andry Sharkov were not named in Plaintiff's original Complaint.  (*See* Doc. 1).  Thus, they were not parties to the matter when Defendant MS Park's previous discovery was served.  The assertion that individuals and entities named as defendants in a lawsuit are not entitled to serve their own discovery to develop their own defenses and are instead bound by the discovery served by a different defendant regarding an earlier iteration of a complaint, when they were not parties to the litigation is offensive to notions of fair play and justice.

Forcine made the decision to file an Amended Complaint 17 months into this litigation, adding three additional defendants, two new claims of an entirely different nature than those included in its original Complaint, and 159 additional paragraphs of allegations.  Defendants are entitled to serve relevant discovery as they see fit in order to develop defenses in this litigation.  They are likewise entitled to retain counsel of their choosing.  While Forcine is entitled to develop and control its strategy in this matter, Defendants are entitled to do the same.  Defendants – and not Forcine – will determine what discovery is

44

necessary to inform their defenses and will retain counsel as they see fit.

We are thus troubled by Forcine's conduct in unilaterally refusing to respond to *any* of the Defendants' September 18, 2025 or October 3, 2025 discovery requests.  To the extent Forcine already produced all documents in its possession responsive to certain requests, it could have simply said so in its responses to those requests.  And Defense counsel pointed this out in response to Forcine's unreasonable demand that Defendants withdraw ***all*** discovery.  (Doc. 73-1 at 29).  Accordingly, Forcine's Motion for a Protective Order as to duplicative requests is denied.

And to the extent Forcine believed certain requests were irrelevant, it could have objected to those requests on that ground.  Seeking a protective order providing that they do not have to answer *any* of the discovery requests by only citing a few examples of allegedly problematic requests is not appropriate.  Further, we note that – given the broad scope of discovery – of the specific requests that Forcine identified, almost all appear to be relevant to the claims and defenses at issue here.  We will address each specifically:

- A description of all the projects that Forcine produced over the past ten years that used Ductilcrete technology

Forcine's experience with Ductilcrete is relevant to the claims and defenses at issue in this litigation.   (*See e.g.*, Doc. 56 at ¶ 14 ; Doc. 4 at ¶¶ 84-104).  Further, we decline to find that this request is overly broad in scope in light of the fact that Forcine previously requested that MS Park "identify and describe every construction project that MS Park has managed or constructed that involved the installation of a Ductilcrete slab" without *any* limitation as to time.  (*See* Doc. 13 at 29, Request No. 7).

- All documents and communications relating to any warranty claims or repairs on all such projects in the last ten years

Forcine's communications relating to warranty claims or repairs on projects involving Ductilcrete over the past ten years are clearly relevant here, where the dispute relates to the quality of the work involving Ductilcrete.  (*See* Doc. 4 at ¶¶ 84-104; Doc. 56 at ¶14).  We do not deem the scope of time to be unreasonable.

- All project files related to any other project where Forcine placed concrete during the month of November for the last five years;

46

Defendants maintain that Forcine's concrete work on the Project began in November, and so, Forcine demanded that MS Park pay additional for "winder concrete." (Doc. 4 at 10, ¶ 88). Forcine claims that "[p]er industry standards, "cold weather" concrete procedures were required. (Doc. 8 at 5, ¶ 89). It is therefore clear that the use of concrete during November and Forcine's experience with the same is relevant to the parties positions' and claims.

- A description of how, and documents related to, the funds received from MS Park for the Project were allocated, such as the distribution of dividends to any owner;

It is not clear from the pleadings that this request is relevant to the claims or defenses in this matter.

- Forcine's internal analysis of the root cause of failures on the past ten (10) other projects where Forcine used Ductilcrete and 'defects' occurred.

Again, this request regarding Forcine's past experiences with projects involving Ductilcrete and any associated defects is relevant to the claims and defenses at issue here. (*See* Doc. 4 at ¶¶ 84-104; Doc. 56 at ¶14). We do not deem the scope to be unreasonable.

- A description of the method Forcine used to assess the percentage of project completion in connection with Payment Application No. 8;

47

Forcine alleges that MS Park failed to pay it for the work it performed on the Project, and identifies certain payment applications that MS Park has not paid. (*See* Doc. 56 at ¶29). This includes payment application number 8. (*Id.*). Accordingly, the basis for Payment Application Number 8 is relevant to Forcine's claim for damages. It bears noting that Forcine served a nearly identical request on Defendants. (*See* Doc. 13 at 29, Request No. 10) ("Provide a complete itemization of all damages that MS Park claims in this Action, setting forth all the amounts of all claimed damages and *the basis for the calculation of said amounts*) (emphasis added).

- All pleadings and other documents related to all other unrelated legal proceedings in which Forcine is a party;

This request does not appear relevant to the claims or defenses at issue in this litigation.

- Documents related to Forcine's 'warranty claim rate' for Ductilcrete projects over the past ten years;

This request regarding Forcine's past experiences with projects involving Ductilcrete and any claims made under warranties relating to the same is relevant to the claims and defenses at issue here. (*See* Doc.

4 at ¶¶ 84-104; Doc. 56 at ¶14). We do not deem the scope to be unreasonable.

- Internal analysis documents related to the past five projects where defects occurred on other projects using Ductilcrete.

Again, this is clearly relevant to the issues in this litigation and the scope is not unreasonable.

The requests set forth above are the only specific requests identified by Forcine as irrelevant or overbroad. We decline to comb through the various requests to determine relevance on a request-by-request basis. Forcine's Motion for a Protective Order on this basis is denied. To the extent it deems a specific request irrelevant, it should object accordingly. In doing so, however, we remind Forcine of the "broad" scope of discovery and instruct that it be guided accordingly in responding to Defendants' discovery requests.

Defendants' Motion to Compel Forcine to provide responses to Defendants' written discovery requests dated September 18, 2025 and October 3, 2025 are granted.

2. Depositions of Plaintiff Witnesses

Forcine seeks a protective order providing that it does not have to present its witnesses "at the 11th hour for depositions due to Defendants' dilatory conduct." (Doc. 73 at 8). Forcine asserts that Defendants have already taken the depositions of Forcine's Vice-President, Forcine's Project Manager, and Forcine's Superintendent for the Project. It argues that Forcine should not also have to produce its President, which would be duplicative of the information already obtained from previous depositions. (*Id.*). Further, Forcine claims that Defendants scheduled and unilaterally cancelled third-party witness Derek Cressman of Durable Surfaces' deposition multiple times without any legitimate justification. (*Id.* at 9). Similarly, Forcine states that Defendants also cancelled the deposition of their expert, Chris Wright, at the last minute and without any legitimate justification. (*Id.*).

In response, Defendants assert that the prior rescheduling of the depositions was "due to Defendants' expert conducting testing on the floors at the warehouse and providing analysis that would assist their counsel in preparing for the depositions of the individuals who were involved in repairing the defective floors." (Doc. 9 at 16). Defendants

claim that "orders completely prohibiting depositions represent extraordinary relief that courts grant only in exceptional circumstances." (Doc. 77 at 10) (citing *United States v. Mariani*, 187 F.R.D. 447 (M.D. Pa. 1998)).

Forcine replied to Defendants' response, claiming that Defendants "cancelled depositions five times, of Brian Forcine and non-party Durable Surface's witnesses Chris Wright and Darren Cressman, for no reason other than their refusal to timely prepare for the depositions." (Doc. 80 at 2). Forcine includes a timeline for each witness at issue. It claims that the parties scheduled Brian Forcine's deposition for February 13, 2025, but Defendants unilaterally cancelled it on February 11, 2025. (*Id.* at 4-5). Forcine claims to have offered several additional dates, but the parties never ultimately agreed. (*Id.*). The parties scheduled Derek Cressman's deposition for July 10, 2025, but Defendants unilaterally cancelled the deposition on July 9, 2025. (*Id.* at 5). On July 23, 2025, Defendants scheduled Cressman's deposition for July 25, 2025. (*Id.*). Forcine objected to the untimely notice. The parties agreed on September 22, 2025, but Defendants unilaterally cancelled the deposition on September 17, 2025. (*Id.*). Finally, the

parties agreed that Chris Wright's deposition would occur on September 24, 2025, but Defendants cancelled the deposition on September 17, 2026.  (*Id.*).  Further, Forcine claims that the amendment of their Complaint does not justify these depositions, because "Defendants have all of the facts and evidence relating to their duplicitous scheme in their own possession, custody, and control."  (*Id.* at 3).

Defendants replied further, arguing that Forcine exaggerated the number of rescheduled depositions.  (Doc. 82 at 2).  They do not, however, provide any specific response to the timeline provided by Forcine.  Defendants argue that the Durable Surfaces witnesses, Chris Wright and Derek Cressman, are key witnesses as to the crux of the case: "whether Forcine performed its obligation under the Subcontract by providing a defect-free cement slab."  (*Id.* at 3).  Further, Defendants claim that Brian Forcine has relevant information as to performance under the Subcontract, adding that he should have relevant knowledge of the Project, the contract, the work performed, the remedial actions taken, and knowledge relevant to the change orders and payment disputes.  (*Id.* at 3-4).  Further, Defendants claim that Brian Forcine is "likely the only witness who has knowledge of the new facts contained

in Plaintiff's Second Amended Complaint." (*Id.* at 4). Defendants assert that Forcine has, in its Second Amended Complaint, alleged fraud in the inducement. (*Id.* at 4). Accordingly, Brian Forcine will have relevant information as to the alleged misrepresentations and Forcine's alleged reliance upon those misrepresentations.

As Defendants have observed, "it is rare for a court to issue a protective order that prohibits a deposition." *Brockway v. McCreary*, No. 4:18-CV-01258, 2019 WL 13551037, at *1 (M.D. Pa. June 12, 2019) (quoting *Mariani*, 178 F.R.D. at 448); *see also, Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D. N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."). A party moving for such relief bears a heavy burden of demonstrating that subjecting the witness to a deposition "will work a clearly defined and serious injury." *Brockaway*, 2019 WL 13551037, at *1 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

We cannot say that Forcine has satisfied that burden here. We find that Defendants have stated with particularity why the depositions of Derek Cressman, Christopher Wright, and Brian Forcine are

53

necessary.  Defendants have not satisfied the "heavy burden" of establishing that producing these witnesses "will work a clearly defined and serious injury." *Brockway*, No. 2019 WL 13551037, at \*1. However, we do not condone Defendants' conduct in cancelling multiple depositions at the last minute.  Cancelling a deposition at the last minute is a waste of the opposing party's time and resources.  While we appreciate that Defendants desired to have that results of the expert testing for use at the most recently scheduled depositions, we also note that the witnesses' depositions had been previously scheduled and cancelled and no rationale was proffered for the earlier cancellations. We will deny Forcine's Motion for a Protective Order as to these three depositions.  However, Defendants are instructed that they should work cooperatively with Forcine to schedule these depositions on a mutually agreeable date(s).  If Defendants proceed to cancel these depositions for any reason once a date has been agreed upon, they will not be permitted to reschedule.

### 3. The Parties' Requests for Attorneys' Fees

In its Motion for a Protective Order, Forcine argues that it should be awarded attorneys' fees pursuant to Fed. R. Civ. P. 11.  (Doc. 73 at 9-

10).  Forcine contends that the "voluminous, duplicative, and last-minute discovery requests were served solely for the purpose of harassing Forcine, delaying this matter, and needlessly increasing the cost of litigation."  (Doc. 73 at 10).

Foricne's request will be denied.  First, we do not find that Defendants conduct violated Fed. R. Civ. P. 11(b).  In any event, as noted *supra*, Rule 11(c)(2) requires that any motion for sanctions be made *"separately* from any other motion," which was not done here. Fed. R. Civ. P. 11(c)(2).  Further, and more importantly, Rule 11 explicitly provides that it does not apply to "discovery requests, responses, objections, and motions under Rules 26 through 37."  Fed. R. Civ. P. 11(d).  Forcine's request for attorneys' fees pursuant to Rule 11 is therefore denied.

Similarly, Defendants request an Order pursuant to Fed. R. Civ. P. 37(d) based upon Forcine's failure to produce Brian Forcine for a deposition and refusal to failure to respond to its interrogatories and requests for production of documents.  (Doc. 77 at 15).  While we have already expressed our disapproval of Forcine's refusal to answer *any* of Defendant PNK Holdings, LLC's September 18, 2025 discovery requests

55

or Defendant Sharkov's October 3, 2025 discovery requests, we decline to impose sanctions at this time given both parties' conduct.

While we continue to remain available to assist the parties to the extent they reach an impasse in discovery, we expect both parties to follow all Local Rules and this Court's procedures going forward. We will not entertain any further discovery motions where the procedure contemplated by Local Rule 26.3 is not followed. As Chief Judge Brann observed, the Rule was designed to "encourage professionalism and collegiality among litigators and avoid unnecessary court intervention, protracted legal proceedings and needless expense and fees." *Bolus*, 2020 WL 930329, at *3. Compliance is not optional.

## IV.    CONCLUSION

For the reasons set forth herein, Forcine's Motion Show Cause Motion (Doc. 68) will be granted in part and denied in part. The Motion will be granted only to the extent that Defendants have failed to produce legible statements for account ending in 6955. The motion will be denied in all other respects. Forcine's Motion for a Protective Order (Doc. 73) will be denied. Defendants Cross-Motion to Compel Written Discovery and Depositions from Plaintiff (Doc. 78) will be granted in

part and denied in part.  We will compel Forcine to produce responses to

Defendants' written discovery requests and produce witnesses Brian

Forcine, Derek Cressman and Christopher Wright for depositions.  We

will deny Defendants' request for attorneys' fees and costs.  An Order

follows.

BY THE COURT:

Date: March 17, 2026                    **/s/ Leo A. Latella**
                                        LEO A. LATELLA
                                        United States Magistrate Judge