UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FORCINE CONCRETE AND CONSTRUCTION COMPANY, | CIVIL NO. 3:23-CV-02024 |
| Plaintiff, | |
| | (LATELLA, M.J.) |
| v. | |
| MS PARK CONSTRUCTION LLC, et al., | |
| Defendants. | |

**MEMORANDUM**

This matter began as a relatively straightforward contractual dispute between a general contractor and a subcontractor after the general contractor failed to pay the subcontractor in full for the installation of concrete due to alleged defects with respect to the installation.  Seventeen months after the litigation commenced, Plaintiff Forcine Concrete and Construction Company ("Forcine") filed an Amended Complaint adding three additional defendants and two new claims including a claim to pierce the corporate veil and a claim of fraud in the inducement.  Defendants filed a Motion to Dismiss the two new claims set forth in the amended pleading.  Because Pennsylvania

1

law does not permit standalone claims to pierce the corporate veil and because the misrepresentations forming the basis of Forcine's fraud in the inducement claim are barred by the parol evidence rule and the gist of the action doctrine and Forcine fails to satisfy the heightened pleading requirement for fraud claims, Defendants Motion to Dismiss Counts V and VI of the Second Amended Complaint (Doc. 61) will be granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Forcine initiated this matter by filing a Complaint naming only one Defendant, MS Park Construction LLC f/k/a Research LLC ("MS Park") on December 6, 2023.  (Doc. 1).  The Complaint included four counts: breach of contract, violation of the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. § 501, *et seq.*, quantum meruit, and unjust enrichment.  (*Id.*)  Forcine alleges that MS Park was the general contractor on a construction project for which Forcine, a subcontractor, provided concrete work.  (*Id.* at ¶¶ 5-8).  Following Forcine's completion of the contracted work, Forcine alleges that MS Park refused to pay for part of the work performed.  (*Id.* at ¶¶ 12-24).

MS Park filed an Answer and Counterclaim on February 5, 2024. (Doc. 4).  Forcine filed an Answer to MS Park's Counterclaim on February 26, 2024.  (Doc. 8).  The parties consented to proceed before a magistrate judge on March 6, 2024.  (Doc. 10).  Magistrate Judge Susan Schwab issued a Case Management Order on March 21, 2024.  (Doc. 12).

On June 27, 2024, Forcine filed a Motion to Compel Written Discovery and Document Production and a corresponding motion to extend the discovery deadline.  (Docs. 13, 14).  Judge Schwab issued an Amended Case Management Order on June 28, 2024.  (Doc. 15).  She also issued an Order denying Forcine's Motion to Compel, reminding the parties of her procedures for discovery disputes and directing the parties to submit a joint letter, not more than three pages, outlining the nature of their discovery disputes and their respective positions.  (Doc. 16).  Judge Schwab scheduled a telephone conference for July 29, 2024, to address the dispute.  (*Id.*).

On September 18, 2024, Patton Hazelton, LLC, a non-party, requested a discovery conference after receiving a subpoena.  (Doc. 19). Judge Schwab conducted a telephone conference on that matter on

October 10, 2024.  (Doc. 20).  She issued a Second Amended Case Management Order on October 11, 2024.  (Doc. 23).

Judge Schwab issued an Order on February 6, 2025, following a telephone conference with the parties, directing them to exchange a settlement demand and offer and to report back to the Court at a later date regarding the status of settlement negotiations.  (Doc. 26).

On February 24, 2024, Judge Schwab issued an Order indicating that Forcine submitted a letter raising discovery issues.  (Doc. 27).  She instructed the parties to meet and confer to try and resolve the issues, and if unsuccessful, for MS Park to submit a response by March 10, 2025.  (Doc. 27).  On February 26, 2025 MS Park filed a motion to extend the time to complete discovery.  (Doc. 28).  Forcine concurred in that motion.  (*Id.*).  Judge Schwab then issued a Third Amended Case Management Order on February 28, 2025.  (Doc. 29).

On March 12, 2025, Judge Schwab issued an Order referencing the parties' submission of letters regarding discovery disputes, and directed the parties to confer in good faith and file a joint report on the status of any remaining disputes.  (Doc. 30).

On April 24, 2025, Forcine filed a motion to extend the discovery deadline (Doc. 34), which Judge Schwab granted (Doc. 36). On April 30, 2025, Judge Schwab issued an Order following a conference with the parties discussing specific discovery issues and also permitting Forcine to file an amended complaint. (Doc. 38).

Forcine filed an Amended Complaint on May 5, 2025 – 17 months after it filed its original Complaint. (Doc. 39). The Amended Complaint added three additional defendants: PNK Holdings, LLC, Andrey Sharkov, and Mark Stiles. (*Id.*). In addition to the four claims set forth in the initial complaint, Forcine added a count to "pierce the viel [sic]/alter ego against PNK Holdings, Sharkov, and Stiles," and a count of fraud in the inducement against all Defendants. (*Id.* at 35, 40).

The case was reassigned to the undersigned magistrate judge on June 10, 2025.[1] On July 14. 2025, Defendants filed a Motion to Dismiss and supporting brief. (Docs. 44, 45).

---

[1] On June 24, 2025, we issued a Notice to the Parties indicating that we intended to continue to exercise the jurisdiction previously consented to unless any party raised an objection. (Doc. 42). No party filed any such objection.

On July 22, 2025, Forcine submitted a letter asking the Court to enforce Judge Schwab's April 30, 2025 Order as to an ongoing discovery dispute. (Doc. 46). On that same date, Defendants filed a motion to again extend the discovery deadline. (Doc. 47). Defendants indicated such extension was necessary because Plaintiff's Amended Complaint added three additional defendants and two new claims, necessitating additional discovery. (*Id.*). We scheduled a telephone conference for August 1, 2025. (Doc. 48).

On July 28, 2025, Forcine filed a response in opposition to Defendants' Motion to Dismiss. (Doc. 50). Forcine also filed a brief in opposition to Defendants' Motion to Extend Deadlines. (Doc. 51). On August 5, 2025, we entered an Order granting the motion to extend case management deadlines. (Doc. 55). On August 6, 2025, Forcine filed a Second Amended Complaint. (Doc. 56). The Second Amended Complaint again included as defendants MS Park, PNK Holdings, Andrey Sharkov, and Mark Stiles and included the same claims raised in the Amended Complaint. (*Id.*)[2].

---

[2] The Second Amended Complaint was filed to correct a scrivener's error in the original Amended Complaint.

Forcine filed a letter to the docket on August 8, 2025, indicating that the parties were working on a proposed order to compel document production.  (Doc. 57).  Forcine submitted a proposed order on August 13, 2025 (Doc. 58), which we entered on August 15, 2025 (Doc. 59).

On August 18, 2025, we entered an Order denying Defendants' Motion to Dismiss the Amended Complaint as moot due to Forcine's filing of the Second Amended Complaint.  (Doc. 60).  Defendants filed a Motion to Dismiss Counts of the Second Amended Complaint and supporting brief on August 19, 2025.  (Docs. 61, 62).  Forcine filed a Motion for an extension of time to respond to the Motion to Dismiss on September 3, 2025 (Doc. 63), which we granted on September 4, 2025 (Doc. 64).

Forcine filed its Brief in Opposition to Dismiss Counts of Plaintiff's Amended Complaint on September 5, 2025.  (Doc. 65). Defendants filed a Reply Brief on September 22, 2025.  (Doc. 66).

On October 6, 2025, Forcine filed a letter to the docket requesting leave to file a sur-reply to the Motion to Dismiss.  (Doc. 67).  By Order dated October 8, 2025, we permitted Forcine to file a short sur-reply. (Doc. 69).

7

On October 7, 2025,[3] Forcine filed a letter requesting that the Court enter a Show Cause Order as to why Defendants' counterclaim in this matter should not be dismissed with prejudice based upon Defendants' alleged failure to comply with the Court's August 13, 2025 Order ("Plaintiff's Show Cause Motion").  (Doc. 68).  The Court Ordered Defendants to respond to Plaintiff's Show Cause Motion within 10 days.  (Doc. 70).  Forcine then filed a Motion for a Protective Order on October 17, 2025 ("Plaintiff's Motion for a Protective Order").  (Doc. 73).

Forcine filed its sur-reply in further opposition to the Motion to Dismiss on that same date.  (Doc. 74).  Defendants filed a response to Plaintiff's Show Cause Motion on October 20, 2025.  (Doc. 75). Defendants also filed a Brief in Opposition to Plaintiff's Motion for a Protective Order and in Support of Defendants' Motion to Compel Discovery on October 31, 2025.  (Doc. 77).  On that same date, Defendants filed a Cross-Motion to Compel Written Discovery and Depositions from Plaintiff ("Defendant's Motion to Compel").  (Doc. 78).

---

[3] We note that the heading of this correspondence is dated October 2, 2025.  (Doc. 68).  However, it was not filed to the docket until October 7, 2025.  (*Id.*).

Forcine filed a response to Defendants' October 20, 2025 Response to Plaintiff's Show Cause Motion on November 3, 2025 (Doc. 79). Forcine filed a Reply Brief in Further Support of its Motion for a Protective Order on November 14, 2025.  (Doc. 80).

Defendants filed correspondence on November 18, 2025, responding to Forcine's Response to Defendants' Response to Plaintiff's Show Cause Motion.  (Doc. 81).  On November 25, 2025, Defendants filed a "Reply Brief in Support of Defendants' Cross-Motion to Compel Discovery."  (Doc. 82).

On February 2, 2026, Defendants requested a conference with the Court to address case management deadlines in light of the pending discovery motions.  (Doc. 83).  Forcine responded to that correspondence on February 26, 2026.  (Doc. 84).

While all of the above referenced motions were pending, Forcine filed a Motion for Summary Judgment and supporting brief on March 2, 2025.  (Docs. 85, 86).

On March 17, 2026, we entered a Memorandum and Order addressing all of the parties' pending discovery disputes.  (Docs. 93, 94).

Defendants' Motion to Dismiss Counts V and VI of the Second Amended Complaint is now ripe for review.

## II.    LEGAL STANDARD

### A. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This means that a complaint may be dismissed if it does not present sufficient facts to support a plausible claim: "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The court must accept both the plaintiff's allegations and any reasonable inferences that can be drawn as true and construe them in the light most favorable to the non-moving party.  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).  However, it need not accept "'unsupported

conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Reciting the elements that make up a cause of action and supporting them with "mere conclusory statements" is insufficient to give those statements the presumption of truth. *McNeilly v. City of Pittsburgh*, 40 F. Supp.3d 643, 650 (W.D. Pa. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When faced with a motion to dismiss pursuant to 12(b)(6), a court should conduct a two-part analysis: 1) separate the factual and legal elements of a claim; and 2) "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* (internal citation removed).  The court may consider facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  This analysis requires the court to look at the claims on a case-by-case basis and rely both "on its judicial experience and common sense." *McNeilly*, 40 F. Supp.3d at 650.  The court will not be

11

reaching legal conclusions, but instead is merely determining "whether the plaintiff should be permitted to offer evidence in support of the allegations." *Id.* (citing *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000)).

## III.  DISCUSSION

Defendants advance several arguments in support of their motion for dismissal of Counts V and VI of Plaintiff's Second Amended Complaint.  First, they argue that Plaintiff's claim of fraud in the inducement set forth in Count VI of the Second Amended Complaint should be dismissed because their allegations regarding misrepresentations are barred by the parol evidence rule.  (Doc. 62 at 4).  Next, they argue that Plaintiff's claim to pierce the corporate veil/alter ego set forth in Count V should be dismissed, as no standalone cause of action exists for such claims.  (*Id.* at 8).  Defendants then argue that Forcine failed to plead sufficient facts to support the elements of fraudulent inducement.  (*Id.* at 9).  Finally, Defendants argue that Forcine failed to plead facts entitling it to punitive damages.  (*Id.* at 12).

We will address each argument in turn, but will do so out of order. First, we will consider Defendants' argument regarding dismissal of

12

Count V.  We will then turn to Defendants' arguments regarding Count VI, and finally, punitive damages.  Before addressing any of Defendants' arguments, however, we must first determine what law applies.

### A. Choice of Law Analysis

As a threshold matter, because this is a matter predicated on diversity jurisdiction, we must decide whether Pennsylvania, Delaware, New York, or Georgia law applies to the claims subject to Defendants' Motion[4].  (*See* Doc. 56 at ¶¶ 1-5).  In resolving that issue, we look to the choice of law rules of Pennsylvania, the state in which this Court sits. *Coram Healthcare Corp. v. Aetna U.S. Healthcare*, 94 F. Supp. 2d 589, 592 (E.D. Pa. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Where there is no choice-of-law provision agreed to by the parties, "before a choice of law question arises, there must actually be a conflict between the potentially applicable bodies of law." *On Air Entm't Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000). Where the relevant laws of the jurisdictions are the same, "there is no

---

[4] We note that neither party has raised this issue and both parties are proceeding as if Pennsylvania law applies.  (*See, e.g.*. Doc. 62 at 2; Doc. 65 at 17).

conflict of law, and the court should avoid the conflict of law question."
*On air Entm't Corp.*, 210 F.3d at 149.  Our review of the Subcontract
does not identify a choice-of-law provision.  (*See* Doc. 56 at 46-67).

Here, a conflict exists.  Defendants have raised the parol evidence
rule as a basis for dismissal of Forcine's fraud in the inducement claim.
Delaware and Georgia courts admits parol evidence to prove fraud,
whereas Pennsylvania and New York courts may prohibit extrinsic
evidence to establish fraud in the inducement.  *Coram Healthcare
Corp.*, 94 F. Supp. 2d at 592 (parol evidence admissible in Delaware
fraud in the inducement claims but not in Pennsylvania); *del Mazo v.
Sanchez*, 366 S.E.2d 333, 338 (Ga. Ct. App. 1988) (parol evidence
admissible to establish fraud in the inducement); *Rosenblum v. Glogoff*,
946 N.Y.S. 2d 167, 168-69 (App. Div. 1st Dep't 2012) (parol evidence
barred to show fraud in the inducement where parties expressly
disclaim reliance on particular misrepresentations).

This court, therefore, must employ Pennsylvania's general choice
of law rules in deciding what substantive law governs these two claims.
*Coram*, 94 F. Supp. 2d at 594.  Pennsylvania has adopted a "flexible
rule which permits analysis of the policies and interests underlying the

14

particular issue before the court." *Griffith v. United Air Lines, Inc.,* 203 A.2d 796, 805 (Pa. 1964). This analysis consists of two steps. First, we "look to see whether a false conflict exists" between the competing policies and interests of the relevant states. *LeJeune v. Bliss–Salem, Inc.,* 85 F.3d 1069, 1071 (3d Cir.1996). A false conflict exists when "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir. 1991). If a false conflict exists, we apply the law of the state whose interests are truly implicated by the particular cause of action. *See id.* A true conflict, on the other hand, exists when the interests of each state would be impaired if the law of the other is given effect. *See id.* at 187 n. 15.

We find, as in *Coram,* that "[b]y admitting parol evidence to prove all fraud claims, Delaware [and Georgia have] manifested an interest in protecting its citizens from the harmful consequences of an ill-gotten agreement." *See Coram*, 94 F. Supp. 2d at 594. By contrast, Pennsylvania and New York have adopted a "defendant-protecting rule" which prohibits extrinsic evidence to show fraud in the inducement where the parties have entered into an integrated contract with fraud-

insulating language.  *See id.*  The application of one jurisdiction's law will clearly frustrate the intent of the other state's law, creating a true conflict which requires "a deeper analysis."  *Cipolla v. Shaposka,* 267 A.2d 854, 856 (Pa. 1970).  Consequently, we must take the second step under the Pennsylvania choice of law analysis and decide "which state has the greater interest in the application of its law."  *Id.; see LeJeune,* 85 F.3d at 1072.

We must therefore review "what contacts each state has with the [events giving rise to the claim], the contacts being relevant only if they relate" to the policies and interests identified in the first step.  *Cipolla,* 267 A.2d at 856.  Pennsylvania courts have often looked to the Restatement to identify what contacts to consider.  *See Lacey,* 932 F.2d at 187; *see, e.g., Laconis v. Burlington County Bridge Comm'n,* 583 A.2d 1218, 1222–23 (Pa. Super. 1990); *Miller v. Gay,* 470 A.2d 1353, 1355–56 (Pa. Super. 1983).  The contacts, which are to be measured qualitatively rather than quantitatively, include: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, place of business, and place of incorporation of the parties; and the place where the relationship between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2); *see, e.g., Cipolla,* 267 A.2d at 856.  In fraud cases, the Restatement places particular importance on the "state where the false representations were made and received" if the "plaintiff's action in reliance took place" in the same state.  Restatement (Second) of Conflict of Laws § 148(1).

Here, we find Pennsylvania has the greatest contacts with this litigation.  Plaintiff, Forcine, is a "corporation organized and existing under the laws of the Commonwealth of Pennsylvania" with a principal place of business in Pennsylvania.  (Doc. 56 at ¶ 1).  Pennsylvania is also the place where the conduct causing the alleged injury occurred.  While Forcine fails to allege exactly where the alleged misrepresentations were made, the effects of the purported misrepresentation would be felt in Pennsylvania.  Additionally, the construction Project which is the subject of the Subcontract that Forcine was allegedly fraudulently induced into entering is in Pennsylvania.  (*Id.* at ¶ 9).  By contrast, Delaware's only contact is as the state where MS Park and PNK Holdings are organized under and where they maintain registered addresses.  (*Id.* at ¶¶ 2,3).  Similarly, New York's only contact is as the state where Defendant Sharkov resides and

Georgia's only contact is as the state where Defendant Stiles resides. (*Id.* at ¶¶ 4, 5).  Accordingly, Pennsylvania law governs Forcine's claim for fraud in the inducement.  *See Coram*, 94 F. Supp. 2d at 594.

By contrast, there is no standalone claim for piercing the corporate veil in Delaware, Georgia, New York or Pennsylvania. *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1211 (Del. Ch. 2010); *Mariner Health Care Mngmt. Co. v. Sovereign Healthcare Holdings, LLC*, 917 S.E.2d 787, 793 (Ga. App. Ct. 2025); *245 E. 19 Realty LLC v. 245 E. 19th Street Parking, LLC*, 205 N.Y.S.3d 323, 327 (App. Div. 1st Dep't 2024); *Commonwealth by Shapiro v. Golden Gate National Senior Care LLC*, 194 A.3d 1010 (Pa. 2018).  Accordingly, no conflict exists with respect to this analysis.  Where no conflict exists, the law of the forum state governs and the court may end its choice of law analysis. *Rose v. Dowd*, 265 F. Supp. 3d 525, 530 (E.D. Pa. 2017).  Accordingly, we will apply Pennsylvania law to Defendants' argument as to Count V as well.

## B. Dismissal of Count V

Defendants first argue that Pennsylvania and Third Circuit courts have consistently held that "veil-piercing is a theory of liability rather than a separate claim." (Doc. 62 at 8)[5]. Because Pennsylvania law governs and Pennsylvania does not recognize a cause of action for veil-piercing, Defendants argue that Count V should be dismissed with prejudice. (*Id.* at 9).

Forcine responds by claiming that "Pennsylvania courts have allowed independent causes of action for corporate veil piercing/alter ego liability as a means to assess liability for the acts of a corporation against equity holders in the corporation under equitable principles. (Doc. 65 at 22-23) (citing *Lomas v. Kravitz*, 130 A.3d 107, 112 (Pa. Super. 2015); *Patroski v. Ridge*, 2:11-CV-1065, 2011 WL 4955274, at *3 (E.D. Pa. Oct. 18, 2011); *In re Dravo*, 307 A.3d 146, 154 (Pa. Super. 2023)).

---

[5] For the sake of clarity, to the extent there is a discrepancy between the page number of a brief and the ECF pagination in the top right corner, we cite in all instances to the ECF pagination.

Defendants reply by arguing that piercing the corporate veil is a means to assess liability and can only be utilized after an actual cause of action has been proven.  (Doc. 66 at 6).  Defendants then distinguish the authority relied upon by Forcine.  Defendants point out that in *Lomas*, the parties submitted to arbitration.  (*Id*.) (citing 130 A.3d at 112).  Following the entry of an award, the defendant developer moved assets to other related entities within the developers' ownership and control.  *Id*.  After the actual cause of action was proven, the Plaintiff filed an action to pierce the corporate veil alleging fraud and fraudulent transfers.  *Id*.

Defendants note that in *In re Dravo*, the Court acknowledged that the case "provided unique and distinguishable facts as the underlying responsible party had dissolved."  (Doc. 66 at 7) (citing 307 A.3d at 153).  In that matter, the Court noted that the parent company dissolved the entity against which a lawsuit would be filed, and so, permitted the plaintiff to pursue a claim against the parent.  (*Id*.).  Defendants argue that no such facts exist here.  (*Id*.).

Finally, Defendants point out that the unpublished opinion in *Patroski* predated the Pennsylvania Supreme Court's decision in *Golden*

20

*Gate Nat'l Senior Care, LLC*, 194 A.3d 1010, which expressly held that Pennsylvania law does not recognize a cause of action for corporate veil piercing.  (Doc. 66 at 8, n.2).

In its sur-reply, Forcine argues that Defendants' argument that its equitable claim to pierce the corporate veil should be dismissed because Forcine has not proven its underlying breach of action claim fails because Forcine is not required to "prove" anything at the pleading stage.  (Doc. 74 at 7-8).

As the Court explained in *Mitchell v. CJKant Resource Group, LLC*, No. 5-21-cv-2465, 2021 WL 5980049, at *3-4 (E.D. Pa. Dec. 17, 2021), prior to 2018, case law existed supporting both sides of this debate.  2021 WL 5980049, at *3-4 (citing *Motorola, Inc. v. Airdesk, Inc.*, No. CIV. A. 04-4940, 2005 WL 894807, at *2 (E.D. Pa. Apr. 15, 2005) (corporate veil piercing is a valid independent cause of action where supported by factual averments); *Krause v. Great Lakes Holdings, Inc.*, 563 A.2d 1182, 1191 (Pa. Super. Ct. 1989) (same); *Patroski*, 2011 WL 4955274, at *3 (same)); *SieMatic Mobelwerke GmbH & Co. KG v. SieMatic Corp.*, 643 F. Supp. 2d 675, 683 (E.D. Pa. 2009) ("it is well established that veil-piercing is not an independent cause of action");

21

*ITP, Inc. v. OCI Co.*, 865 F. Supp. 2d 672, 684 (E.D. Pa. 2012) (same);

*Est. of Quigley v. E. Bay Mgmt., Inc.*, No. CIV. A. 13-5547, 2014 WL

2765135, at \*2 (E.D. Pa. June 18, 2014) (same); *Accurso v. Infra-Red*

*Services*, 23 F. Supp. 3d 494, 510 (E.D. Pa. 2014) ("veil-piercing is not a

separate cause of action").

However, in 2018, the Pennsylvania Supreme Court resolved the

issue.  In *Golden Gate National Senior Care LLC*, the Pennsylvania

Supreme Court unequivocally stated, "[a] request to pierce the

corporate veil is not an independent cause of action, but rather is a

means of imposing liability established in an underlying cause of action,

such as tort or breach of contract, against another."  194 A.3d at 1035.

The authority cited by Forcine to suggest a standalone claim for

piercing the corporate veil is permissible is not persuasive in light of

*Golden Gate National Senior Care LLC*.  The Pennsylvania Superior

Court decision in *Lomas* and the Western District of Pennsylvania's

decision in *Patroski* both predated the Pennsylvania Supreme Court's

opinion in *Golden Gate National Senior Care LLC*.  And the

Pennsylvania Superior Court dealt with a very narrow, unique set of

22

facts in *In re Dravo* that are not present here.[6]  There is no allegation

that the party that Forcine contracted with dissolved.

"Since this Court must apply Pennsylvania law in this case

because it is a diversity case . . . and since Pennsylvania's highest court

has determined that alter ego and veil-piercing claims are not

---

[6] We also note that the Pennsylvania Supreme Court granted a Petition for Allowance of Appeal in *In re Dravo* to consider, *inter alia*, whether it was "an error of law to find that tort claims based on the alleged conduct of a lawfully dissolved LLC, which are expressly barred by Pennsylvania's LLC dissolution statute, can be revived and asserted against the LLC's parent through piercing the LLC's corporate veil" 330 A.3d 391 (Pa. 2024).  Federal Rule of Evidence 201, allows the court to take judicial notice at any stage of the proceeding.  Fed. R. Evid. 201(d).  Courts in the Third Circuit have held that a court may take judicial notice of dockets or other court opinions at the motion to dismiss stage.  *In re Congoleum Corp.*, 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant."); *see, e.g.*, *In re Trichilo*, 540 B.R. 547, 549 (Bankr. M.D. Pa. 2015) (taking judicial notice of the docket in an underlying case); *Mollett v. Leith*, No. CIV.A. 09-1192, 2011 WL 5407359, at *2 (W.D. Pa. Nov. 8, 2011) *aff'd sub nom. Mollett v. Leicth*, 511 Fed. Appx. 172 (3d Cir. 2013) ("A court may also take judicial notice of the docket in Plaintiff's underlying criminal trial."); *Carroll v. Prothonotary*, No. 08-1683, 2008 WL 5429622, at *2 (W.D. Pa. Dec.31, 2008) (taking judicial notice of court records and dockets of the Federal District Courts). Accordingly, we take judicial notice of the fact that the appeal in *In re Dravo* remains pending before the Pennsylvania Supreme Court.  *See https://ujsportal.pacourts.us/CaseSearch*, select "search by docket number," enter "34 WAP 2024."

independent causes of action," we will dismiss Count V of Forcine's Second Amended Complaint with prejudice.[7]  *Mitchell*, 2021 WL 5980049, at *4.

### C. Dismissal of Count VI

### a. **Application of the Parol Evidence Rule**

Defendants assert that the Subcontract between MS Park and Forcine contains an integration clause.  (Doc. 62 at 4).  Accordingly, they argue the parol evidence rule bars the introduction of prior or contemporaneous oral representations that contradict the terms of the fully integrated written agreement.  (*Id.* at 6).

Forcine responds by claiming that "[t]he parol evidence rule prevents a party from introducing evidence to *alter or vary the terms of a contract*, but does not prevent a party from introducing extrinsic evidence to prove a precontractual misrepresentation or concealment." (Doc. 65 at 18-19) (emphasis in original) (citing *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 213 (3d Cir. 2022).  Forcine thus argues that

---

[7] Dismissal of Forcine's alter ego/veil piercing claim does not preclude it from pursuing this theory of liability in connection with respect to its surviving claims. *See Mitchell*, 2021 WL 5980049, at *4 n.3 (citing *ITP, Inc. v. OCI Co.*, 865 F. Supp. 2d 672, 684 (E.D. Pa. 2012)).

fraudulent inducement claims are not barred by an integration clause or the parol evidence rule. (*Id.* at 19). Forcine argues that it is not seeking to rewrite specific terms of the Subcontract; rather, it is claiming that "the *entire agreement was entered into under false pretenses*, specifically, that Research misrepresented that it was actually a general contractor, had assets, funds, staff, equipment and experience necessary to serve in the general role for a sophisticated project." (Doc. 65 at 19) (citing Second Am. Compl., Doc. 56, at Count VI).

Forcine further claims that under Pennsylvania law, a contract must have a "fraud-insulating term" to bar a fraud in the inducement claim under the parol evidence rule. (*Id.* at 30) (citing *SodexoMAGIC*, 24 F.4th at 214). Forcine asserts that the Subcontract includes no such provision.

Defendants respond by distinguishing *SodexoMagic, LLC*. (Doc. 66 at 5). They note that in *SodexoMAGIC, LLC*, the agreement included an "express reliance" clause, noting that the parties relied upon certain prior assumptions and representations. (*Id.*) (citing *SodexoMAGIC, LLC*, 24 F.4th at 215). Further, the agreement in that

25

case did not include a "fraud-insulating provision" disclaiming prior representations. (*Id.*).

In its sur-reply brief, Forcine states: "[t]he general integration clause in the Subcontract is not the type of 'fraud insulating' term that courts have enforced to bar fraudulent inducement claims." (Doc. 74 at 6-7). Further, Forcine argues that Defendants made the same misrepresentations in the Subcontract. (*Id.*). Forcine cites Article 3, 14 of the Subcontract, attached to the Second Amended Complaint as Exhibit A, claiming that in that Section, Defendants represented that Research would serve as the general contractor and that Rozengaus was Research's representative for the Project. (*Id.* at 7). Thus, Forcine claims that even if the parol evidence rule applied, it would not bar Forcine's fraud in the inducement claim as the same representations were made in the Subcontract.

Pennsylvania courts have described the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations,

26

> conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (2004) (citing *Gianni v. Russell & Co.,* 126 A. 791, 792 (1924) (citations omitted); *Scott v. Bryn Mawr Arms, Inc.,* 312 A.2d 592, 594 (1973)). Thus, "for the parol evidence rule to apply, there must be a writing that represents the entire contract between the parties." *Yocca*, 854 A.2d at 436. An integration clause stating the parties intend the writing to represent their entire agreement is a "clear sign" the writing "expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 204 (2007).

For such contracts, the parol evidence rule prohibits the use of extrinsic evidence to add or modify the contract's terms. *Schuylkill Open MRI, Inc. v. Mammography Educators, LLC*, No. 3:23cv1497, 2025 WL 1726306 (M.D. Pa. June 20, 2025); *see also Rose Food Fair Stores, Inc.*, 262 A.2d 851, 854 (1970) ("the parol evidence rule is a substantive

rule of contract law that prevents the use of extrinsic evidence to nullify, modify, or augment the terms of a contract.").

For fraudulent inducement claims, however, the purpose of extrinsic evidence is to prove a precontractual misrepresentation or concealment, not to alter or vary the terms of the contract. *SodexoMAGIC, LLC*, 24 F.4th at 213. The parol evidence rule alone does not prevent fraudulent inducement claims with respect to integrated contracts. *Id.* Such claims are, however, prohibited where the contract includes a fraud-insulating clause. *Id.* As the Third Circuit explained, "[t]hose provisions *take many forms*, but they often have a common objective: to prevent a party from satisfying the justifiable-reliance element of a fraudulent inducement claim." *Id.* (emphasis added). One such form of a fraud-insulating clause is language that states that the representations in the contract supersede all prior representations. *Id.* at 214 (citing, 854 A.2d at 431).

Based upon this language in *SodexoMAGIC, LLC*, Forcine is incorrect in its assertion that the Subcontract lacks a fraud insulating clause. The Subcontract includes the following language:

> The Subcontract Documents form the Subcontract for
> Construction.  The Subcontract represents the entire
> and integrated agreement between the parties hereto
> *and supersedes prior negotiations, representations, or*
> *agreements, either written or oral. . .*

(Second Am. Compl., Ex. A., § 1.2, Doc. 56 at 48).  The language in

Section 1.2 is the type of language cited by the Third Circuit as an

example of a type of fraud insulating clause.  Thus, to the extent

Forcine seeks to rely on any extrinsic evidence to maintain a claim of

fraud in the inducement, it is prohibited from doing so by the parol

evidence rule.[8]  Any evidence of prior or contemporaneous

---

[8] We observe that there appears to be a disconnect in Forcine's
arguments.  In its Sur-Reply, it argues that it sufficiently pleaded a
misrepresentation by alleging that (1) Defendants advertised
Rozengaus as a Partner in PNK Group; (2) Research designated
Rozengaus as its representative for the Project and provided Research's
address; and (3) Rozengaus negotiated the Subcontract between Forcine
and Research, which identified Research as the general contractor,
when he knew that his separate company, Builderdome, was actually
going to serve as the contractor for the Project.  (Doc. 74 at 6).  The first
and third alleged misrepresentations include matters outside of the
contract.  Separately, however, Forcine argues that the parol evidence
does not bar its fraud in the inducement claim because it does not need
to rely upon any "representations made outside the Subcontract" as the
same misrepresentations were made in the Subcontract."  (*Id.* at 7).
Accordingly, to put a finer point on it, the parol evidence bars Forcine's
claim as to any misrepresentations based upon advertisements
regarding Rozengaus as well as any statements made during
negotiations.

representations made outside of the Subcontract may not be relied upon to support Forcine's fraudulent inducement claim.

However, Forcine asserts that its fraud in the inducement claim should not be dismissed based upon the parol evidence rule, as it is not relying upon extrinsic evidence to establish its claim by altering or varying the terms of the Subcontract. (Doc. 74 at 7). Rather, Forcine alleges that the alleged misrepresentations are set forth in the Subcontract. In such circumstances, Forcine is correct that the parol evidence does not bar a fraud in the inducement claim. *See, e.g. Chartwell Staffing Services, Inc. v. Santoro*, No. 19-5907, 2020 WL 12630643, (E.D. Pa. Aug. 3, 2020) at *1 n.1 (parol evidence did not bar fraudulent inducement claim where plaintiff cited a specific section of an agreement as the alleged misrepresentation). We thus consider Defendants' argument that Forcine failed to plead facts supporting the elements of fraudulent inducement.

### b. **Failure to Plead Facts Supporting Elements of Fraudulent Inducement**

Defendants argue that Forcine fails to satisfy the heightened pleading standard applicable to fraud claims. (Doc. 62 at 10).

Defendants assert that Forcine fails to allege "the timing of when specific misrepresentations or material omissions were made to them" and that it is unclear who made the misrepresentations and to whom they were conveyed. (*Id.* at 10-11). Further, Defendants claim that "[u]nder Pennsylvania law, a fraud claim cannot stand if the damages sought are identical to those sought for breach of contract." (*Id.* at 12). "Fraud claims must involve damages that are distinct from the contractual damages; otherwise, the fraud claim is subsumed by the breach of contract claim." (*Id.*).

We will first address Defendants' latter argument, which we construe to be an argument that the gist of the action doctrine bars Forcine's fraud in the inducement claim. We then consider whether Forcine has sufficiently pleaded such a claim.

### i.    Gist of the Action Doctrine

Defendants argue that "[u]nder Pennsylvania law, a fraud claim cannot stand if the damages sought are identical to those sought for breach of contract." (Doc. 62 at 11). They go on to say, "[f]raud claims must involve damages that are distinct from the contractual damages; otherwise, the fraud claim is subsumed by the breach of contract claim."

(*Id.*) (citing *Heritage Handoff Holdings, LLC v. Fontanella*, No. 1:16-cv-00691-RGA, 2019 WL 1056270 (D. Del. Mar. 6, 2019); *Winfield v. Eloxx Pharms., Inc.*, No. 19-447-RGA, 2020 WL 1333008 (D. Del. Mar. 23, 2019)).

Forcine responds to this argument by pointing out that *Heritage Handoff Holdings, LLC* and *Winfield* are inapplicable as they applied Delaware, not Pennsylvania law. (Doc. 65 at 17). Further, Forcine argues that *Winfield* noted that *Heritage Handoff Holdings, LLC* was a post-trial decision, and that common law fraud claims should not be dismissed at the pleading stage because the plaintiff may be entitled to other common law damages. (*Id.*). Forcine argues that by contrast, in Pennsylvania, "when an agreement has been obtained by fraud, the plaintiff may recover as damages 'the loss of his bargain,' i.e. expectation damages – which are the same damages available for a breach of contract claim." (*Id.* at 18) (citing *Mirizio v. Joseph*, 4 A.3d 1073, 1088 (Pa. Super. Ct. 2010)).

Forcine correctly points out that the authority relied upon by Defendants in support of this argument is inapplicable, as it pertains to

Delaware, not Pennsylvania law.[9]  As noted *supra*, Pennsylvania law

applies here.  *See, e.g.*, *RRF Building, LLC v. Excel Development Group*,

No. 1:23-CV-341, 2024 WL 3794664, at *4 (M.D. Pa. Aug. 12, 2024).  We

note, however, that the legal concept asserted by Defendants has an

analogous counterpart in Pennsylvania law: the gist of the action

doctrine.[10]  The gist of the action doctrine prevents a plaintiff from

recasting a breach of contract claim into a tort claim.  *DeFebo v.*

*Anderson Windows, Inc.*, 654 F. Supp. 2d 285, 290 (E.D. Pa. 2009)

(quoting *Penn City Inv. v. Soltech, Inc.*, No. Civ.A.01-5542, 2003 WL

22844210, at *2 (E.D. Pa. Nov. 25, 2003)).  To determine whether a

claim sounds in contract or tort, Pennsylvania courts consider "the

---

[9] Forcine also points out that Defendants omitted the portion of both citations identifying the court of jurisdiction.  We hope such omissions were inadvertent.

[10] While Defendants failed to identify this doctrine by name they raised the legal concept.  In any event, courts have recognized that it is appropriate to consider the gist of the action doctrine *sua sponte* where, as here, it is apparent from the complaint that tort claims are re-casted breach of contract claims.  *See Reginella Const. Co., Ltd. v. Travelers Cas. And Sur. Co. of America*, 971 F. Supp. 2d 470, 474 (W.D. Pa. 2013), *aff'd sub nom. Reginella Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 568 F. App'x 174 (3d Cir. 2014); *Jacoby Donner, P.C. v. Aristone Realty Capital, LLC*, No. 17-2206, 2018 WL 1609341, at *5 (E.D. Pa. Apr. 2, 2018); *see also Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002) (*sua sponte* dismissal appropriate when apparent from face of complaint).

33

*nature* of the duty breached." *Cauley v. Geisinger Clinic*, No. 4:21-CV-00045, 2022 WL 265947, at *4 (M.D. Pa. Jan. 27, 2022) (citing *Bruno v. Erie Insurance Co.*, 106 A.3d 48, 63 (Pa. 2014)).

Where the contract between the parties creates the duties that the defendant allegedly breached, the action sounds in contract and tort claims are barred. *Williams v. Hilton Group PLC*, 93 F. App'x 384, 387 (3d Cir. 2004) (citing *Flynn Co. v. Peerless Door & Glass, Inc.*, No. 0830 NOV.TERM 2001, CONTROL 121202, 2002 WL 1018937, at *3 (Pa. Com. Pl. May 15, 2002); *see also DeFebo*, 654 F. Supp. 2d at 290 ("[t]he doctrine specifically bars claims on extra-contractual statements regarding duties or obligations of a party that are later outlined in the contract.").

However, "the issue of 'whether (and when) the gist of the action doctrine applies to bar fraudulent inducement claims; remains unresolved." *Cauley*, 2022 WL 265947, at *4 (citing *Vives v. Rodriguez*, 849 F. Supp. 2d 507, 517 (E.D. Pa. 2012)). When considering Pennsylvania law, decisions of the Pennsylvania Supreme Court are the authoritative source, *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010), and the Supreme Court of Pennsylvania has yet to decide

34

this issue.  *RRF Building, LLC*, 2024 WL 3794664 at \*4.  Accordingly, Pennsylvania intermediate courts and federal district courts are tasked with predicting how the Pennsylvania Supreme Court would decide. *Cauley*, 2022 WL 265947, at \*4.  While results have varied, following a thoughtful and well-reasoned opinion out of the Eastern District of Pennsylvania in 2012, courts within this Circuit generally employ a fact-intensive analysis to determine wither the tort and contract claims are "interwoven," thus precluding the tort claim, or whether the fraud claim is "collateral" to the contract.  *Id.* (citing (citing *Vives*, 849 F. Supp. 2d 507).

Federal district courts have predicted that the Pennsylvania Supreme Court would apply the gist of the action doctrine to bar fraud in the inducement where the alleged misrepresentations relate to whether the party intended to perform under the contract at all.  *RRF Building, LLC*, 2024 WL 3794664, at \*4 (citing *Vives*, 849 F. Supp. 2d 507).

Additionally, the Court in *Vives* stated: "Courts of this Circuit, including our Court of Appeals, have predicted that the Pennsylvania Supreme Court would apply the gist of the action doctrine to bar

fraudulent inducement claims where the misrepresentations in question concern duties later incorporated into a contract." *Id.* at 521. Other courts within this Circuit have reached the same conclusion. *See RRF Bldg., LLC,* 2024 WL 3794664, at \*5; *Agrotors, Inc. v. Ace Glob. Mkts.,* No. 1:13cv1604, 2014 WL 690623 (M.D. Pa. Feb. 24, 2014); *Oldcastle Precast, Inc. v. VPMC, LTD.,* Civ. NO. 12-6270, 2013 WL 1952090 at \*10 (E.D. Pa. May 13, 2013) (agreeing "with the authority in our Circuit, and predict that the Pennsylvania Supreme Court would find fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract to be barred by the gist of the action doctrine."); *Cauley*, 2022 WL 265947.

Here, Forcine argues that it alleged that "Rozengaus negotiated the Subcontract between Forcine and Research, which identified Research as the general contractor for the Project, when, in fact, he knew that his separate company, Builderdome, was going to serve as the contractor for the Project." [11] (Doc. 74 at 6). In other words, Forcine

---

[11] We note that the Court in *SodexoMAGIC LLC* allowed a fraud in the inducement claim to proceed despite a challenge based upon the gist of the action doctrine. 24 F.4th at 213. However, the representation in that matter was a statement in the negotiations leading up to the formation of the contract which did not contain a fraud-insulating

alleges that Defendants entered into the Subcontract with no intention for Research to actually perform under the Subcontract. This type of fraudulent inducement claim is barred by the gist of the action doctrine. *See RRF Bldg., LLC,* 2024 WL 3794664, at *5.

Further, as Forcine argues that the misrepresentations were not extra-contractual, but rather, were incorporated into the Subcontract, courts have likewise held such claims are barred by the gist of the action doctrine. *See Williams*, 93 F. App'x at 387; *DeFebo*, 654 F. Supp. 2d at 290; *see also Corle Building Systems, Inc. v. Ogden Welding Systems, Inc.*, 684 F. Supp. 3d 390, 403 (W.D. Pa. 2023) (where alleged misrepresentation was incorporated into contract, the representation did not support fraud in the inducement claim based upon gist of the action doctrine as the representation was subsumed by the contract and sounded in contract law).

Accordingly, to the extent Forcine alleges that the misrepresentation that induced it to enter the Subcontract was

---

provision. *Id.* at 217. By contrast, Forcine disavowed extra-contractual statements as the basis for its fraud in the inducement claim, arguing that the misrepresentations were set forth within the Contract and no extrinsic evidence was necessary to prove the claim. (Doc. 74 at 7).

Defendants' representation that it intended to perform under the contract when it never intended to so perform, the claim is barred by the gist of the action doctrine.  Further, any misrepresentations that form the basis of Forcine's fraudulent inducement claim that are set forth within the Subcontract or incorporated therein are plainly "interwoven" with the Subcontract and therefore barred by the gist of the action doctrine.

### ii.    Failure to State a Claim for Fraudulent Inducement

Defendants argue that Forcine failed to satisfy the heightened pleading standard for fraud pursuant to Fed. R. Civ. P. 9(b).  (Doc. 62 at 9).  They claim that Forcine failed to sufficiently plead the required details of the "who, what, when, where, and how" of the allegedly fraudulent conduct.  (*Id.*) (citing *Kaul v. Christie*, 372 F. Supp. 3d 206 (D.N.J. 2019)).

In response, Forcine claims that it adequately pleaded all of the factors necessary to support a fraud in the inducement claim.  (Doc. 65 at 12).  Forcine claims that it alleges that "Defendants represented that Research employed people who would perform general contracting services or construction work, however, this representation was false."

(*Id.* citing Second Am. Compl., Doc. 56 at ¶¶ 206, 207).  Forcine claims that Defendants intentionally misrepresented Research's role and failed to disclose that it had engaged a third party to perform the general contractor services.  (*Id.*) (citing Doc. 56 at ¶¶ 209, 214).  Forcine also argues that it alleged that "Sharkov had an individual role in the fraud, because he was directly involved in the negotiation of the Subcontract." (*Id.*).  Forcine does not cite to any specific paragraphs of the Second Amended Complaint to support that assertion.  Forcine also claims that Stiles was personally involved in the drafting and negotiating of the contracts relating to the Project.  (Doc. 65 at 13, citing Doc. 56 at ¶91).

Forcine further argues that the level of specificity demanded by Defendants is not required by Rule 9(b) as plaintiffs may use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  (*Id.*) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007); *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004)).

In any event, with respect to the "who," Forcine claims that it "alleges that the fraudulent conduct was committed by Sharkov and Stiles, through their 'companies' – PNK Holdings, Research, and MS Park – and their minions, Rozengaus and Muraviev." (Doc. 65 at 13-14) (citing Doc. 56 at ¶¶ 30-139). Forcine then claims that "over the course of 109 paragraphs, it details the series of fraudulent misrepresentations that Defendants made in an effort to deceive the public and Forcine into thinking that their companies were legitimate, satisfying the "what, when, where and how." (*Id.* at 14).

Forcine then offers two "examples." (*Id*). First, it notes that Rozengaus is identified as Research's representative for the Project in the Subcontract, but was not employed by Research, nor was he a "Partner" of "PNK Group," as misrepresented on PNK Group's website and in his email signature that was directed to Forcine in numerous pre-contract emails. (*Id.* at 14).

Second, Forcine claims that "Defendants misrepresented at the time that the parties entered into the Subcontract that Research was a 'Contractor' capable of, among other things, scheduling and performing the Contractor's Work and preparing construction schedules and

40

submittal schedules, when in fact, it knew that Research was a shell company with no capabilities whatsoever that was being 'operated' by a straw man electronic salesman out of Korea who makes less than $30,000 per year USD and who knew nothing about the Project or construction in general." (*Id.* at 15) (citing Doc. 56 at ¶¶82-103, 197-208).

In their reply, Defendants claim that "Forcine's argument that it sufficiently pled a claim for fraud in the inducement is nothing more than a broad sweeping statement that it did, indeed, plead all factors." (Doc. 66 at 1). They note that while a plaintiff may satisfy the heightened pleading standard by "alternative means of injection precision ….." Forcine has not done so here. (*Id.* at 2). Defendants assert that while Forcine claims that Defendants misrepresented Rozengaus' employment with Research, they fail to plead or identify any statement, conversation, or communication in which any Defendant represented or stated that Rozengaus was an employee of Research. (Doc. 66 at 3).

Additionally, Defendants note that Forcine fails to plead or identify any statement, conversation, or communication in which any

Defendant represented Research's capabilities. (*Id.* at 4). Rather, Defendants allege that these are nothing more than assumptions made by Forcine regarding Defendants' business structure. (*Id.*). Defendants assert that "[a]lleging a mismatch between Forcine's expectations and Defendants' business operations is not the same as pleading an actual misrepresentation." (*Id.*).

In its sur-reply, Forcine again argues that it sufficiently pleaded facts to establish a fraud in the inducement claim. (Doc. 74 at 6). Forcine claims that it alleges that (1) "Defendants advertised Rozengaus as a "Partner" of PNK Group (of which Research is a part)," (citing Second Am. Compl., Doc. 56 at ¶76); (2) that Research designated Rozengaus as its representative for the Project, and provided Research's address as his address (citing Second Am. Compl., Doc. 56 at Ex. A, §§ 3.1.1, 14.2); and (3) that "Rozengaus negotiated the Subcontract between Forcine and Research, which identified Research as the general contractor for the Project when, in fact, he knew that his separate company, Builderdome, was going to serve as the contractor for the Project." (*Id.*) (citing Doc. 56 at ¶¶ 77-78, 131, 214-215).

To state a claim for fraud in the inducement under Pennsylvania law, a party must allege a "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 257 (3d Cir. 2013). Such claims do not involve terms omitted from an agreement, but rather allegations of oral representations on which the other party relied in entering into the agreement but which are contrary to the express terms of the agreement." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996).

A plaintiff alleging fraud must support its allegations "with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.,* 311 F.3d 198, 217 (3d Cir. 2002)). A plaintiff may satisfy Rule 9(b)'s particularity

requirement by pleading the "precise allegations of date, place, or time" of the alleged fraud or by other means of "injecting precision and ... substantiation into their allegations of fraud." *Bd. of Trs. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n.10 (3d Cir. 2002); *see also Shuker v. Smith & Nephew, PLC,* 885 F.3d 760, 778 (3d Cir. 2018).

We therefore consider the sufficiency of the misrepresentations alleged by Forcine. Forcine claims that it alleges that (1) Defendants represented that Research employed people who would perform general contracting services or construction work, but that representation is false; (2) Defendants misrepresented Research's role as the general contractor, when in fact, a third party provided that service; and (3) Defendants misrepresented Rozengaus's role. Forcine cites to Paragraphs 30-139, 197-208, 209, 210, 214, 217, 218 of the Second Amended Complaint as the source of the allegations regarding the misrepresentations. (Doc. 65 at 13-15); *see also* (Doc. 74 at 6) (citing ¶¶ 76-78, 131, 214-215). A close inspection of those specific paragraphs reveals that Forcine's allegations are insufficient to satisfy the heightened pleading standard applicable to fraud in the inducement

44

claims.  The bulk of the approximately 126 paragraphs of the Second

Amended Complaint cited by Forcine detail their account of *how* the

alleged representations were false.  Only six of those allegations

arguably go to the communication of the misrepresentations, including

the precise substance of the misrepresentation, who communicated the

representation and to whom it was communicated, or how and when it

was communicated.  Those paragraphs are as follows:

> 76.  Mr. Rozengaus is identified on PNK Group's website as a "Partner" of PNK Group.
>
> 198.  By signing the Subcontract, MS Park represented to Forcine that MS Park employed various people to perform construction management work and that Forcine was contracting with MS Park.
>
> 201.  At the time the Subcontract was signed, Defendants intentionally misrepresented the identity and role of MS Park as a general contractor.
>
> 202.  At the time of the execution of the Subcontract, PNK Holdings, Sharkov, and Stiles, through MS Park, made the representation that MS Park was a legitimate general contractor.
>
> 206.  Defendants made intentional omissions and failed to disclose that substantial parts of the general contractor role would be performed by third parties, and that Park had no actual authority and experience.

> 207.  Defendants further misrepresented that MS Park, by virtue of being 'managed' by MS Park, was a competent and knowledgeable general contractor capable of managing a sophisticated construction project.  This created the illusion that MS Park had staff with the requisite experience to understand and manage the complexities of commercial construction, including the physical properties of specialty slab systems and the administration of warranty obligations.

These allegations are not sufficiently specific.  In these allegations, either the identity of the individual or entity communicating the representation is insufficiently specific or the actual representation is too general to satisfy the particularity requirement of Rule 9(b).  These allegations do not specifically identify who, what, when or date, place, and time regarding the misrepresentations nor do they otherwise inject precision and substantiation into the allegations. *See Bd. of Trs. of Teamsters Loc. 863 Pension Fund,* 296 F.3d at 172 n.10; *see also Riachi v. Prometheus Grp.*, 822 F. App'x 138, 142 (3d Cir. 2020) ("Rule 9(b) is not satisfied where Rule 9(b) is not satisfied where a plaintiff . . . merely lumps the who, what, when, and where together" or where "the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Vacation Charters, Ltd. v. Textron Financial; Corp.*, No. 3:14-CV-2082, 2016 WL 354094, at *16 (M.D. Pa.

Jan. 28, 2016) (plaintiff failed to state claim for fraud in the inducement where it failed to provide factual detail regarding who made representations, to whom they were made, and when they were made). Accordingly, Forcine has not stated a claim for fraud in the inducement upon which relief can be granted.

In any event, even if the allegations were sufficient, as discussed *supra*, to the extent the representations were extracontractual (Doc. 56 at ¶¶ 76, 201, 202, 206, 207), they are barred by the parol evidence rule and to the extent the misrepresentations are in the Subcontract (*id.* at ¶ 198), they are barred by the gist of the action doctrine. Thus, under no circumstance can Forcine state a claim for fraud in the inducement and so, Count VI will be dismissed with prejudice.

### D. Defendants' Request to Strike Requests for Punitive Damages

Finally, Defendants request that we strike Forcine's requests for punitive damages. (Doc. 65 at 27-28). Because we are dismissing Forcine's claims to pierce the corporate veil and for fraud in the inducement and because it is well-established that punitive damages are not available for Forcine's other claims, we will grant this request. *See Dehart v. HomEq Servicing Corp.*, 679 F. App'x 184, 189 (3d Cir.

2017) ("under Pennsylvania law, punitive damages are not recoverable in a breach of contract claim."); *Williamsburg Commons Cond. Ass'n v. State Farm Fire and Cas. Co.*, 907 F. Supp. 2d 673, 680 n. 7 (E.D. Pa. 2012) ("Unjust enrichment . . . is a 'qausi-contract' remedy for which punitive damages are not available under the unjust enrichment rubric."); *Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 249-54 (E.D. Pa. 2022) (punitive damages not recoverable for breach of contract or unjust enrichment claims); 73 P.S. § 512 (penalties and relief available for failure to comply with the Pennsylvania Contractor and Subcontractor Act do not include punitive damages).

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss Counts V and VI of Forcine's Second Amended Complaint (Doc. 61) will

be granted.  Counts V and VI will be dismissed with prejudice.

Additionally, Forcine's requests for punitive damages will be stricken.

An order follows.

BY THE COURT:

Date: March 31, 2026                    **/s/ Leo A. Latella**
                                        LEO A. LATELLA
                                        United States Magistrate Judge

49