**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FORCINE CONCRETE & CONSTRUCTION COMPANY | : | |
| | : | NO. 3:23-cv-02024 |
| Plaintiff, | : | (Judge Leo A. Latella) |
| v. | : | |
| MS PARK CONSTRUCTION LLC f/k/a RESEARCH LLC, ET. AL | : | |
| Defendants. | : | |

**ORDER**

**AND NOW**, this ________ day of ______________________, 2026, upon consideration of Defendants, MS Park Construction LLC f/ka Research LLC, PNK P1, LLC, Andrey Sharkov, and Mark Stiles's (collectively, "Defendants") Motion for Partial Summary Judgment (the "Motion"), and any response thereto, it is hereby **ORDERED** that the Motion is **DENIED**.

BY THE COURT

___________________________
LEO A. LATELLA, J.

# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FORCINE CONCRETE & CONSTRUCTION COMPANY<br><br>Plaintiff,<br>v.<br><br>MS PARK CONSTRUCTION LLC f/k/a RESEARCH LLC,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | NO. 3:23-cv-02024<br>(Judge Leo A. Latella) |

**PLAINTIFF, FORCINE CONCRETE & CONSTRUCTION COMPANY'S, BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**


Shawn R. Farrell, Esquire
I.D. No. 76738
sfarrell@cohenseglias.com
Joseph L. Sine, Esquire
I.D. No. 318473
jsine@cohenseglias.com
1600 Market Street, 32nd Floor
Philadelphia, Pennsylvania 19103
Tel.: (215) 564-1700

*Attorneys for Plaintiff,*
*Forcine Concrete & Construction Company*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................2

STATEMENT OF FACTS ....................................................................................4

STATEMENT OF QUESTIONS INVOLVED....................................................................................4

STANDARD FOR PARTIAL SUMMARY JUDGMENT....................................................................................6

LEGAL ARGUMENT....................................................................................7

I. THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR SUMMARY JUDGMENT ON FORCINE'S CASPA CLAIMS BECAUSE PAYMENT WAS WRONGFULLY WITHHELD AND MS PARK WAIVED ITS DEFENSES BY FAILING TO TIMELY ISSUE A STATEMENT OF THE REASONS FOR WITHHOLDING. ....................................................................................7

A. Because the Subcontract Expressly Requires Payment for Change Orders and Retainage, MS Park Cannot Avoid CASPA by Unilaterally Refusing to Pay Those Contractual Obligations. ....................................................................................7

B. MS Park Cannot Avoid a CASPA Claim for Forcine's Winter Concrete Change Orders Simply Because it Wrongfully Rejected Forcine's Change Order Requests. ..............................9

C. MS Park is Not Entitled to Summary Judgment on Forcine's CASPA Claim Related to Payment Application No. 8.............11

1. MS Park Waived Any Right to Withhold Payment by Failing to Timely State Its Basis for Withholding. ........11

2. The Owner's Final Acceptance and Payment Required Release of the Retainage..............................................12

3. The Subcontract Required Release of the Retainage Reduction Upon Fifty Percent Completion. ...................13

D. MS Park Is Not Entitled to Summary Judgment on Forcine's Final Payment Application No. 10 for Retainage Under Count II. ....................................................................................14

E. At a Minimum, Whether MS Park Possessed a Good-Faith Basis to Withhold Payment Presents a Genuine Issue of Material Fact. ....................................................................................16

II. THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR SUMMARY JUDGMENT ON COUNT II OF PLAINTIFF'S SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND PIERCE THE CORPORATE VEIL AGAINST PNK HOLDINGS, SHARKOV, AND STILES ................................18

III. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORCINE'S CLAIMS FOR QUANTUM MERUIT AND UNJUST ENRICHMENT BECAUSE FORCINE IS ENTITLED TO PURSUE THAT RELIEF IN THE ALTERNATIVE TO ITS BREACH OF CONTRACT CLAIMS. ....20

CONCLUSION.........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC*,
846 A.2d 1264 (Pa. Super. Ct. 2004) .......... 20

*Allegheny Constr. Group Inc. v. Walsh Heery Joint Venture*,
2019 WL 7373717 (E.D. Pa. Dec. 31, 2019) .......... 15

*Allegheny Ludlum, LLC v. Liberty Mut. Ins. Co.*,
487 F. Supp. 3d 350 (W.D. Pa. 2020) .......... 6, 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 7

*Apalucci v. Agora Syndicate, Inc.*,
145 F.3d 630 (3d Cir. 1998) .......... 15

*Bailey v. B.S. Quarries, Inc.*,
2016 WL 1271381 (M.D. Pa. Mar. 31, 2016) .......... 6

*Connelly Constr. Corp. v. Travelers Cas. & Sur. Co. of Am.*,
2018 WL 3549281 (E.D. Pa. July 24, 2018) .......... 15

*Constructural Dynamics, Inc. v. Thomas P. Carney, Inc.*,
283 A.3d 338 (Pa. Super. Ct. 2022) .......... 17

*First Gen. Constr. Corp. v. Kasco Constr. Co.*,
No. 10-2655, 2011 WL 2038542 (E.D. Pa. May 24, 2011) .......... 21

*G.A. West & Co. v. Transcontinental Gas Pipeline Co.*,
2020 WL 4034920 (Pa. Com. Pl. Feb. 5, 2020) .......... 12

*Howley v. Scranton Life Ins. Co.*,
53 A.2d 613 (Pa. 1947) .......... 15

*In re Slaw Constr. Corp.*,
29 B.R. 975 (Bankr. E.D. Pa. 1983) .......... 13

*Limbach Co., LLC v. City of Philadelphia*,
905 A.2d 567 (Pa. Commw. Ct. 2006)....................21

*Lumax Indus., Inc. v. Aultman*,
669 A.2d 893 (Pa. 1995)....................19

*Merrill Iron & Steel, Inc. v. Blaine Constr. Corp.*,
No. 14-221, 2016 WL 861116 (W.D. Pa. Mar. 7, 2016)....................12

*Mortimer v. McCool*,
255 A.3d 261 (Pa. 2021)....................19

*Ragan v. Tri-County Excavating, Inc.*,
62 F.3d 501 (3d Cir. 1995)....................20

*Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*,
742 F. Supp. 2d 709 (W.D. Pa. 2010)....................16, 18

*Sciarretti Site Development & Paving Co., Inc. v. Moon Toyota Partners, LP*,
317 A.3d 616 (Pa. Super. 2024)....................9, 10

*Scungio Borst & Associates v. 410 Shurs Lane Developers, LLC*,
106 A.3d 103 (Pa. Super. Ct. 2014)....................15

*Scungio Borst & Assocs. v. 410 Shurs Lane Devs., LLC*,
146 A.3d 232 (Pa. 2016)....................8, 10

*Universal Builders, Inc. v. Moon Motor Lodge, Inc.*,
430 Pa. 550, 244 A.2d 10 (1968)....................21

*Zimmerman v. Harrisburg Fudd I, L.P.*,
984 A.2d 497 (Pa. Super. Ct. 2009)....................9

**Statutes**

73 P.S. § 509....................12
73 P.S. § 511(b)....................3, 5
73 P.S. § 512....................9
73 P.S. §§ 506(b), 511(b)....................11

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FORCINE CONCRETE & CONSTRUCTION COMPANY | : | |
| | : | NO. 3:23-cv-02024 |
| Plaintiff, | : | (Judge Leo A. Latella) |
| v. | : | |
| | : | |
| MS PARK CONSTRUCTION LLC f/k/a RESEARCH LLC, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF, FORCINE CONCRETE & CONSTRUCTION COMPANY'S, BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Forcine Concrete & Construction Company ("Plaintiff" or "Forcine"), by and through its undersigned counsel, Cohen Seglias Pallas Greenhall & Furman, P.C., hereby files this Brief in Opposition to Defendants' Motion for Partial Summary Judgment pursuant to this Court's Order (Doc 104).

## INTRODUCTION

This dispute arises from Defendants' refusal to pay Forcine Concrete & Construction Company ("Forcine") for completed contract work, earned retainage, and owner-directed extra work performed in connection with the construction of a large industrial warehouse. After obtaining the benefit of Forcine's work and ultimately selling the completed property for approximately $38.5 million, Defendants now seek to avoid paying the remaining contract balance and compensation for directed change-order work through technical contractual arguments and the corporate form.

First, Defendants' Motion should be denied because it ignores both the Subcontract and the undisputed factual record. First, the Subcontract expressly governs payment for change-order work and retainage, bringing both claims within CASPA. The winter concrete constituted owner-directed extra work under the Subcontract's change-order provisions, and the disputes concerning Payment Application No. 8, final retainage, and the timing of payment turn on disputed issues of contract interpretation, waiver, substantial performance, and the Prevention Doctrine that cannot be resolved on summary judgment.

Second, Defendants cannot invoke CASPA safe harbor while disregarding its prerequisites. CASPA permits withholding payment to a subcontractor after receipt of an invoice only if the contractor timely provides a written statement identifying

the contractual basis for withholding. Defendants did not do so. Instead, they rely on litigation-driven interpretations and incorrectly argue that 73 P.S. § 511(b)'s notice period was triggered by post-completion warranty work rather than Forcine's payment applications. At a minimum, whether Defendants possessed a timely, good-faith basis to withhold payment presents a genuine issue of material fact.

Third, Defendants seek dismissal of PNK Holdings, Sharkov, and Stiles by disregarding the substantial evidence supporting alter-ego and veil-piercing liability. The Second Amended Complaint pleads the factual prerequisites for veil piercing by expressly citing Sharkov’s deposition testimony. That testimony is particularly significant because Sharkov (a Russian oligarch at the center of this interconnected web of companies) described facts supporting the conclusion that he and the other Defendants dominated and controlled MS Park, that MS Park was inadequately capitalized and dependent upon him for funding, and that the corporate structure was used to insulate those who controlled and benefited from the Project from MS Park’s contractual obligations. At a minimum, those allegations and the supporting discovery create genuine issues of material fact that preclude dismissal.

Finally, Defendants seek dismissal of Forcine's alternative quantum meruit and unjust enrichment claims. Those claims are properly pleaded in the alternative should the Court determine that any portion of the work falls outside the Subcontract. Defendants' position is internally inconsistent. They contend MS Park did not breach

the Subcontract, yet do not dispute that work such as the winter concrete measures was necessary, performed, accepted, and benefited the Project. Under their theory, Forcine performed work that everyone agrees was required, but no one must pay for it. If that work is not recoverable under the Subcontract, it is precisely the type of benefit for which quantum meruit and unjust enrichment provide relief. At a minimum, these facts preclude summary judgment on the quasi-contract claims

## STATEMENT OF FACTS

Forcine incorporates be reference its Opposition to Defendants' Statement of Undisputed Material Facts ("Opposing SOMF") submitted herewith.

## STATEMENT OF QUESTIONS INVOLVED

1. Should the Court deny Defendants' Motion for Summary Judgment on Count II (CASPA) as to Forcine's $95,848.03 because MS Park rejected the change orders without a good-faith basis and in breach of the Subcontract?

*Suggested Answer: Yes.*

2. Should the Court deny Defendants' Motion for Summary Judgment on Count II (CASPA) as to Payment Application No. 8 ($43,146.14) because (a) MS Park waived its withholding defense by failing to timely provide a written statement of its reasons for withholding; (b) the Project was completed and the Owner paid MS Park in full; (c) the Subcontract required retainage to be reduced from 5% to

2.5% upon 50% completion; and (d) the remaining issues concern only CASPA damages, not Forcine's entitlement to payment?

*Suggested Answer: Yes.*

3. Should the Court deny Defendants' Motion for Summary Judgment on Count II (CASPA) as to Payment Application No. 10 ($55,031.16) because (a) MS Park waived its withholding defense; (b) the Project was completed and the Owner paid MS Park in full; (c) the conditions for final payment were satisfied or excused; and (d) MS Park cannot withhold payment based on contractually barred consequential damages?

*Suggested Answer: Yes.*

4. Should the Court deny Defendants' Motion for Summary Judgment on Count II (CASPA) because 73 P.S. § 511(b) requires a contractor to timely pay or timely notify with the reasons for withholding payment, and MS Park cannot retroactively justify its noncompliance with subsequently alleged warranty issues?

*Suggested Answer: Yes.*

5. Should the Court deny Defendants' Motion for Summary Judgment dismissing Sharkov, Stiles, and PNK Holdings because the record, including Sharkov's deposition testimony, creates genuine issues of material fact regarding alter ego and veil-piercing liability?

*Suggested Answer: Yes.*

6. Should the Court deny Defendants' Motion for Summary Judgment on Counts III (Quantum Meruit) and IV (Unjust Enrichment) because Pennsylvania law permits those claims to be pleaded in the alternative, and because Defendants who were not parties to the Subcontract received and retained the benefit of Forcine's work under circumstances that would make it inequitable to deny recovery??

*Suggested Answer: Yes.*

## STANDARD FOR PARTIAL SUMMARY JUDGMENT

A motion for partial summary judgment is reviewed under the same standard as a motion for complete summary judgment. *Allegheny Ludlum, LLC v. Liberty Mut. Ins. Co.*, 487 F. Supp. 3d 350, 355 (W.D. Pa. 2020), aff'd, 858 F. App'x 49 (3d Cir. 2021). Summary judgment is granted if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." *Id.*

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bailey v. B.S. Quarries, Inc.*, 2016 WL 1271381, at *3 (M.D. Pa. Mar. 31, 2016). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.” *Allegheny Ludlum, LLC*, at 355 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## LEGAL ARGUMENT

### I. THE COURT SHOULD DENY DEFENDANTS’ REQUEST FOR SUMMARY JUDGMENT ON FORCINE’S CASPA CLAIMS BECAUSE PAYMENT WAS WRONGFULLY WITHHELD AND MS PARK WAIVED ITS DEFENSES BY FAILING TO TIMELY ISSUE A STATEMENT OF THE REASONS FOR WITHHOLDING.

CASPA prohibits a contractor from justifying its failure to timely pay with reasons first asserted after payment became due. The CASPA requires timely written notice and was enacted to prevent precisely what occurred here. MS Park does not dispute that Forcine performed the work, submitted its invoices, and was entitled to payment absent timely notice. Instead, it relies on later-arising warranty claims, even though the Subcontract provides a two-year warranty to address those issues. Accepting MS Park's position would allow contractors to withhold payment indefinitely while searching for post-hoc excuses, defeating CASPA's purpose. At a minimum, MS Park's failure to comply with CASPA's notice requirements and the disputed facts preclude summary judgment.

#### A. Because the Subcontract Expressly Requires Payment for Change Orders and Retainage, MS Park Cannot Avoid CASPA by Unilaterally Refusing to Pay Those Contractual Obligations.

MS Park's argument rests on a circular premise. It contends that because it refused to approve and pay Forcine's change orders and retainage, those amounts

were never "due under the contract" and therefore fall outside CASPA. If accepted, that interpretation would allow any contractor to avoid CASPA simply by refusing to pay the very contractual obligations that give rise to the statute's protections. Neither the language nor the purpose of CASPA permits such a result.

MS Park fundamentally misreads *Scungio Borst*. The issue before the Pennsylvania Supreme Court was not the scope of CASPA's payment protections or the circumstances under which payment is "due" under a construction contract. Rather, the Court addressed the narrow question of **who** may be held liable under CASPA, holding only that the statute does not impose liability on a property owner's non-contracting agent. In explaining that "the construction contract is the starting point of any CASPA analysis," the Court did not limit CASPA's application. To the contrary, the same passage emphasizes that CASPA "makes additional remedies available to contractors and subcontractors when they are not promptly paid by the party with whom they contracted." *Scungio Borst & Assocs. v. 410 Shurs Lane Devs., LLC*, 146 A.3d 232 (Pa. 2016). Thus, *Scungio* provides no support for MS Park's novel contention that a contractor can avoid CASPA simply by refusing to approve or pay contractual obligations for change orders or retainage.

CASPA is a broad remedial statute designed to cure abuses within the building industry involving payments due from owners to contractors and contractors to subcontractors, and to encourage fair dealing in the construction industry.

*Zimmerman v. Harrisburg Fudd I, L.P.*, 984 A.2d 497, 500 (Pa. Super. Ct. 2009). The statute establishes firm rules and deadlines to ensure prompt payments, and to prevent the unreasonable withholding of payments. *Id.* Critically, many of CASPA's protections apply in the absence of contractual terms, including its penalty and fee provisions, which apply "[n]otwithstanding any agreement to the contrary" and are owed "in addition to all other damages due." 73 P.S. § 512. Thus, the statute does more than mirror the contract.

### B. MS Park Cannot Avoid a CASPA Claim for Forcine's Winter Concrete Change Orders Simply Because it Wrongfully Rejected Forcine's Change Order Requests.

Similarly, Forcine is entitled to CASPA remedies for its winter concrete costs because a party cannot use its own wrongful rejection of change orders to evade statutory liability for directed work.

Consistent with the broad remedial nature of the statute, unpaid change order claims unilaterally denied by an owner or general contractor without basis are properly cognizable as CASPA claims. *Sciarretti Site Development & Paving Co., Inc. v. Moon Toyota Partners, LP*, 317 A.3d 616 (Pa. Super. 2024). In *Sciarretti*, the contractor incurred extra costs for the installation of an outside drop for the sanitary sewer system that was not contemplated by the original contract documents, and the trial court found CASPA liability despite the owner's explicit denial of the change orders. *Id.* at 3, 19. The Superior Court affirmed, finding that the owner's rejection

was invalid and that non-approval and nonpayment of the change orders was a violation of CASPA. *Id.* at 23.

Forcine's entitlement to compensation is even stronger than the plaintiff's in *Sciarretti*. The Subcontract was not silent on whether winter concrete work was included; rather, it expressly provided "any and all winter concrete for slabs" was specifically and expressly excluded from Forcine's scope of work. DSOMF, Ex. B (Subcontract) at Ex. A, 2. Through no fault of Forcine, the project was substantially delayed, pushing the slab pour from the summer into November and December 2022. Despite the express contractual exclusion, MS Park directed Forcine to proceed with the winter pours to advance its own project schedule. DSMOF, Ex. B at Exhibit A.

Because the expressly excluded winter work was directed, the subsequent rejection of Forcine's change orders constitutes a wrongful withholding under CASPA. Defendants again mistakenly rely on *Scungio Borst & Associates v. 410 Shurs Lane Developers, LLC,* 146 A.3d 232 (Pa. 2016) to argue otherwise. *Scungio Borst & Associates* is entirely distinguishable from the facts at issue in this case, as *Scungio* primarily addressed whether a non-signatory agent could be held personally liable for CASPA violations, not whether a contractor could use its refusal to sign a change order as an absolute shield against statutory liability. *Id.* at 105. Because, at a minimum, there is a genuine dispute over whether MS Park's rejection of the

winter concrete change orders was improper, the Court should deny Defendants' motion for summary judgment.

### C. MS Park is Not Entitled to Summary Judgment on Forcine's CASPA Claim Related to Payment Application No. 8.

#### *1. MS Park Waived Any Right to Withhold Payment by Failing to Timely State Its Basis for Withholding.*

MS Park waived its right to withhold Payment Application No. 8 because it failed to comply with CASPA's mandatory notice requirements. CASPA requires a contractor withholding payment to provide a written statement identifying the deficiency item and the good-faith reason for withholding within fourteen days after receiving the invoice. 73 P.S. §§ 506(b), 511(b). The statute further provides that failure to provide timely notice "shall constitute a waiver of the basis to withhold payment." Id.

MS Park argues that the fourteen-day period began when Forcine completed post-completion warranty work rather than when it submitted its payment applications. The statute says otherwise. CASPA measures the notice period from receipt of the invoice and not subsequent warranty activity.

Forcine submitted Payment Application No. 8 on November 17, 2022, making any written notice due by December 1, 2022. It later submitted Payment Application No. 10 on May 15, 2023, making notice due by May 29, 2023. MS Park's June 7, 2023 rejection letter was untimely as to both invoices. DSMOF ¶¶ 17, 38-39.

Pennsylvania courts strictly enforce CASPA's notice requirement regardless of the merits of the underlying dispute. *See G.A. West & Co. v. Transcontinental Gas Pipeline Co.*, 2020 WL 4034920 (Pa. Com. Pl. Feb. 5, 2020). Because MS Park failed to timely identify its basis for withholding, it waived its statutory defense.

*2. The Owner's Final Acceptance and Payment Required Release of the Retainage.*

Summary judgment is independently improper because the record establishes that the Project was completed, accepted, and paid for.

CASPA requires retainage to be released following final acceptance of the work and payment by the owner. 73 P.S. § 509. Whether final acceptance occurred is ordinarily a factual question. *Merrill Iron & Steel, Inc. v. Blaine Constr. Corp.*, No. 14-221, 2016 WL 861116, at *7 (W.D. Pa. Mar. 7, 2016).

Here, however, the undisputed record demonstrates that MS Park certified Forcine's work complete on December 8, 2022, the Owner paid MS Park for that work, and the property was thereafter sold to a third party. Opposing SOMF ¶¶ 44, 74-75. Indeed, MS Park's own claim that it later paid $212,000 to the purchaser confirms that it had already received payment from the Owner. Otherwise, MS Park would have voluntarily doubled its alleged loss by making that payment after receiving no corresponding payment under the prime contract. Opposing SOMF ¶ 99.

Accordingly, at a minimum, the evidence creates a genuine issue of material fact regarding final acceptance and the resulting obligation to release retainage.

*3. The Subcontract Required Release of the Retainage Reduction Upon Fifty Percent Completion.*

Forcine is also entitled to pursue its CASPA claim for the $43,146.14 retainage reduction included in Payment Application No. 8 because Section 11.1.8.2 of the Subcontract expressly provides that retainage "shall be reduced to 2.5%" upon fifty-percent completion.

Pennsylvania courts enforce the parties' contractual retainage provisions as written and will not imply additional conditions that do not appear in the agreement. *In re Slaw Constr. Corp.*, 29 B.R. 975, 977 (Bankr. E.D. Pa. 1983).

The parties agreed to a **reduction** in retainage and not merely a limitation on retainage withheld from future payment applications. Once the Project reached the contractual milestone, the total retainage held on previously completed work was required to be reduced from five percent to 2.5 percent, entitling Forcine to release of the excess retainage.

MS Park's reliance on the Pennsylvania Procurement Code is misplaced. The Procurement Code has no application here. It reflects legislative rules governing public procurement, not private commercial contracts. Because the parties expressly

allocated their rights and obligations in the Subcontract, the Procurement Code provides no basis to alter those contractual terms.

### D. MS Park Is Not Entitled to Summary Judgment on Forcine's Final Payment Application No. 10 for Retainage Under Count II.

As discussed above, MS Park waived its CASPA withholding defense by failing to provide a timely written statement of its reasons for withholding. Forcine submitted Payment Application No. 10 on May 15, 2023, making any notice due by May 29, 2023. MS Park's June 7, 2023 rejection letter was untimely and therefore waived any statutory basis for withholding. DSMOF ¶¶ 38-39. Likewise, because the Owner accepted Forcine's work and paid MS Park in full, the outstanding retainage is due.

MS Park nevertheless argues that final payment is barred because Forcine failed to satisfy certain contractual conditions precedent. That argument conflates the timing of payment with Forcine's entitlement to payment. The Subcontract expressly requires payment of the final retainage, and Payment Applications Nos. 1 through 7 approved the work giving rise to those retained funds. The Project has long since been completed, the Owner accepted the work, MS Park was paid under the prime contract, and the property has been sold. Accordingly, there is no genuine dispute that the retainage is owed. At most, the parties dispute when payment became

due and, therefore, when CASPA interest and statutory remedies began to accrue. That issue does not warrant dismissal of Count II.

MS Park's reliance on *Scungio Borst & Associates v. 410 Shurs Lane Developers, LLC,* 106 A.3d 103 (Pa. Super. Ct. 2014), is again misplaced. To the contrary, *Scungio Borst* recognizes that CASPA provides statutory remedies when payment required under the parties' contract is wrongfully withheld. Here, the contract requires payment of the retainage, and the only remaining dispute concerns the timing of that payment.

Moreover, MS Park cannot rely on contractual conditions precedent that its own conduct prevented from occurring. Under Pennsylvania's Prevention Doctrine, a party may not avoid liability by relying on the nonoccurrence of conditions precedent that it caused or hindered. *Howley v. Scranton Life Ins. Co.*, 53 A.2d 613 (Pa. 1947); *Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630 (3d Cir. 1998); *Connelly Constr. Corp. v. Travelers Cas. & Sur. Co. of Am.*, 2018 WL 3549281 (E.D. Pa. July 24, 2018); *Allegheny Constr. Group Inc. v. Walsh Heery Joint Venture*, 2019 WL 7373717 (E.D. Pa. Dec. 31, 2019).

Viewing the evidence in the light most favorable to Forcine, a reasonable jury could conclude that MS Park frustrated the very conditions on which it now relies. Forcine withheld its final lien waivers only because MS Park refused to pay outstanding contract balances, forcing Forcine to file a mechanics' lien. Opposing

SOMF ¶ 44. Likewise, the Architect never issued Certificates of Payment or punch lists, MS Park identifies no engineer or third-party approval that remained outstanding, and the Project received a permanent Certificate of Occupancy and was occupied in May 2023. Id. Having controlled the close-out process, MS Park cannot invoke those unfulfilled conditions to avoid payment. At a minimum, whether MS Park prevented satisfaction of the alleged conditions precedent presents a genuine issue of material fact precluding summary judgment. *See Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*, 742 F. Supp. 2d 709, 722 (W.D. Pa. 2010).

Accordingly, MS Park's motion as to Payment Application No. 10 should be denied.

**E. At a Minimum, Whether MS Park Possessed a Good-Faith Basis to Withhold Payment Presents a Genuine Issue of Material Fact.**

Even if MS Park did not waive its withholding defenses (it did), and even if the contractual conditions precedent were not excused (they were), summary judgment still must be denied because whether MS Park possessed a good-faith basis to withhold payment under CASPA presents a classic question of fact.

CASPA protects only those amounts withheld that "bear[] a reasonable relation to the value of any claim held in good faith." 73 P.S. § 512(a). Whether a withholding satisfies that standard is an inherently fact-specific inquiry that turns on the nature of the alleged deficiencies, the cost of remediation, and whether the

withholding was reasonable or merely arbitrary or pretextual. *Constructural Dynamics, Inc. v. Thomas P. Carney, Inc.*, 283 A.3d 338 (Pa. Super. Ct. 2022).

Viewing the evidence in the light most favorable to Forcine, a reasonable jury could conclude that MS Park's withholding was not based on a good-faith dispute over defective work, but on an effort to offset contractually barred consequential damages. It is undisputed that neither MS Park nor the purchaser, Patton Hazleton, performed repairs to Forcine's work, that the Project was completed, occupied, and sold, and that the alleged $212,000 "loss" consisted of a voluntary sales-price concession—not remediation costs. Opposing SOMF ¶¶ 106-107.

That distinction is critical because Article 6.4 of the Subcontract expressly waives consequential damages, except for actual remediation and repair expenses. By withholding $194,025.33 to recover a voluntary downstream sales concession, MS Park seeks to recover damages the Subcontract itself prohibits. A reasonable jury could therefore conclude that the withholding did not bear a reasonable relation to a claim held in good faith.

Moreover, unlike *Constructural Dynamics*, where payment was withheld because defective concrete potentially required removal and replacement, MS Park identifies no comparable remediation costs. Instead, it relies on a post-sale business concession made after the Project had been completed, accepted, occupied, and sold. At a minimum, whether MS Park's withholding was reasonable or merely a pretext

to avoid payment presents a genuine issue of material fact precluding summary judgment. *See Sauer Inc. v. Honeywell Bldg. Solutions SES Corp.*, 742 F. Supp. 2d 709, 721-22 (W.D. Pa. 2010).

## II. THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR SUMMARY JUDGMENT ON COUNT II OF PLAINTIFF'S SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND PIERCE THE CORPORATE VEIL AGAINST PNK HOLDINGS, SHARKOV, AND STILES

Sharkov, Stiles, and PNK Holdings seek dismissal of Forcine's breach of contract claim solely because they are not signatories to the Subcontract. That argument ignores this Court's prior ruling that Forcine may pursue alter ego and veil-piercing theories against these Defendants with respect to its surviving claims, including breach of contract. (Doc. 95 at 22 n.7). The relevant question, therefore, is not whether these Defendants signed the Subcontract, but whether genuine disputes of material fact exist as to whether MS Park's corporate form should be disregarded. They plainly do.

Under Pennsylvania law, courts consider whether the corporation was undercapitalized, failed to observe corporate formalities, substantially intermingled its affairs with related entities, or was used to perpetrate an injustice. *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). The record contains evidence supporting each factor, including that:

- MS Park was undercapitalized and lacked employees, offices, independent financial records, and corporate formalities. Opposing SOMF ¶¶ 162-164.
- PNK Holdings wholly owned MS Park, Sharkov wholly owned PNK Holdings, and Sharkov exercised complete control over both entities and the Project. Opposing SOMF ¶¶ 134, 150, 154-161.
- The entities operated as a single enterprise, sharing branding, email domains, administrative functions, and centralized financial control. Opposing SOMF ¶¶ 109-131, 154-161.
- Funds were routinely transferred from funds in Russia to affiliated entities at Sharkov's direction, including payments to subcontractors and the $300,000 transfer used to fund the payment now asserted as an offset against Forcine's claim. Opposing SOMF ¶¶ 96, 160.

The same evidence likewise supports enterprise liability under *Mortimer v. McCool*, 255 A.3d 261 (Pa. 2021), because the affiliated entities shared common ownership, unified control, complementary business functions, and centralized finances, while MS Park lacked sufficient assets to satisfy its obligations independently.

Rather than addressing this evidence, Defendants rely principally on the general presumption against veil piercing and argue that Forcine cannot prove fraud. Neither argument warrants summary judgment. Pennsylvania law does not require

proof of actual fraud to pierce the corporate veil, and courts disregard the corporate form whenever it is used to defeat equity or promote injustice. See *Ragan v. Tri-County Excavating, Inc.*, 62 F.3d 501, 508-09 (3d Cir. 1995); *Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC*, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004).

At a minimum, the evidence creates genuine disputes of material fact as to whether MS Park functioned as the alter ego of Sharkov, Stiles, and PNK Holdings. Accordingly, summary judgment dismissing these Defendants from the breach of contract claim must be denied.

## III. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORCINE'S CLAIMS FOR *QUANTUM MERUIT* AND UNJUST ENRICHMENT BECAUSE FORCINE IS ENTITLED TO PURSUE THAT RELIEF IN THE ALTERNATIVE TO ITS BREACH OF CONTRACT CLAIMS.

Defendants concede that Forcine may plead quantum meruit and unjust enrichment in the alternative but argue those claims cannot survive summary judgment because the Subcontract governs the parties' relationship. Defs.' Br. at 27. That is incorrect.

Pennsylvania law permits equitable claims to proceed where a factfinder could conclude that work falls outside the contract or that a non-party to the contract received and retained the benefit of that work under circumstances making retention unjust. *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 244 A.2d

10 (1968); *First Gen. Constr. Corp. v. Kasco Constr. Co.*, No. 10-2655, 2011 WL 2038542 (E.D. Pa. May 24, 2011). Likewise, where non-contracting parties direct extra work, benefit from it, and mislead the contractor, quantum meruit and unjust enrichment present fact-sensitive issues that preclude summary judgment. *Limbach Co., LLC v. City of Philadelphia*, 905 A.2d 567, 577-78 (Pa. Commw. Ct. 2006).

The same is true here. Viewing the evidence in the light most favorable to Forcine, a reasonable jury could conclude that the winter concrete work fell outside the Subcontract and was directed by PNK Holdings, Sharkov, and Stiles, through Rozengaus and Muraviev. Defendants deny MS Park breached the Subcontract, but not that the work was necessary, performed, accepted, and benefited those who completed and sold the Project for approximately $38.5 million. If the work is not compensable under the Subcontract, Defendants' position is that no one must pay for work everyone agrees was required. That is precisely the circumstance in which quantum meruit and unjust enrichment apply. Accordingly, summary judgment on Counts III and IV should be denied.

## CONCLUSION

For all of the foregoing reasons, Forcine respectfully requests that this Court deny Defendants' Motion.

Respectfully submitted,

**COHEN SEGLIAS PALLAS GREENHALL & FURMAN, P.C.**

**Date:** July 24, 2026 **BY:** ______________________________

**SHAWN R. FARRELL, ESQUIRE**
**JOSEPH L. SINE, ESQUIRE**
PA Identification Nos. 76738/318473
1600 Market Street, 32nd Floor
Philadelphia, Pennsylvania 19103
Tel.: (215) 564-1700
Emails: sfarrell@cohenseglias.com
jsine@cohenseglias.com
*Attorneys for Plaintiff,*
*Forcine Concrete & Construction Company*

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FORCINE CONCRETE & CONSTRUCTION COMPANY<br><br>Plaintiff,<br>v.<br><br>MS PARK CONSTRUCTION LLC f/k/a RESEARCH LLC,<br><br>Defendant. | : | NO. 3:23-cv-02024<br>(Judge Leo A. Latella) |

**CERTIFICATE OF SERVICE**

I, Joseph L. Sine, hereby certify that on this 24th day of July 2026, I caused to be served a true and correct copy of the foregoing document titled *Plaintiff, Forcine Concrete & Construction Company's, Brief in Opposition to Defendants' Motion for Partial Summary Judgment* upon all counsel of record via the Court's electronic case filing system.

**BY:** ______________________________


**SHAWN R. FARRELL, ESQUIRE**
**JOSEPH L. SINE, ESQUIRE**
PA Identification Nos. 76738/318473
1600 Market Street, 32nd Floor
Philadelphia, Pennsylvania 19103
Tel.: (215) 564-1700
Emails: sfarrell@cohenseglias.com
jsine@cohenseglias.com
*Attorneys for Plaintiff,*
*Forcine Concrete & Construction Company*

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FORCINE CONCRETE & CONSTRUCTION COMPANY | : | |
| Plaintiff, | : | NO. 3:23-cv-02024 (Judge Leo A. Latella) |
| v. | : | |
| MS PARK CONSTRUCTION LLC f/k/a RESEARCH LLC, | : | |
| Defendant. | : | |

**<u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.8</u>**

I, Shawn R. Farrell, hereby certify that the foregoing document titled *Plaintiff, Forcine Concrete & Construction Company's, Brief in Opposition to Defendants' Motion for Partial Summary Judgment* complies with Local Rule 7.8. The number of words in the Brief, as calculated by the Word count feature of the Microsoft Word, exclusive of the cover sheet, Table of Contents, Table of Citations, Certificate of Service, and this Certificate, is 4,461.

**BY:** ______________________________
**SHAWN R. FARRELL, ESQUIRE**
**JOSEPH L. SINE, ESQUIRE**
*Attorneys for Plaintiff, Forcine Concrete & Construction Company*

# EXHIBIT A

2016 WL 1271382
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Pauline M. BAILEY, Administrator of the Estate of Wesley Sherwood, Jr., Plaintiff
v.
B.S. QUARRIES, INC.; Damascus 535 Quarry and Stone Products, LLC.; TNT One Limited Partnership; TNT Services Corp.; Lippmann Milwaukee, Inc.; Lippmann Quality Used Equipment; Vira Corporation Timothy Smith; and/or Thomas Bolles, Defendants.

No. 3:13cv3006
|
Filed 03/31/2016

**Attorneys and Law Firms**

Michael J. Pisanchyn, Jr., Daniel J. D'Antonio, Pisanchyn Law Firm, Scranton, PA, for Plaintiff.

John J. Aponick, Jr., Marshall Dennehy Warner Coleman & Goggin, Gerald A. Connor, Zygmunt R. Bialkowski, Jr., Margolis Edelstein, Scranton, PA, Michael Joseph Connolly, Moosic, PA, for Defendants.

**ORDER**

JUDGE JAMES M. MUNLEY, United States District Court

***1 AND NOW**, to wit, this 31st day of March 2016, upon consideration of the parties' cross-motions for summary judgment (Docs. 105, 107, 109, 111, 116, 118), it is hereby **ORDERED**:

1. Plaintiff's motion is **GRANTED** to the extent that we will pierce the corporate veil and hold that B.S. Quarries and Damascus 535 are alter egos for Thomas Bolles and Timothy Smith. Defendants Bolles and Smith will remain as defendants in their individual capacities.

2. Plaintiff's motion is **GRANTED** to the extent that the B.S. Quarries Defendants are estopped from invoking employer immunity under

Pennsylvania workers' compensation law;

3. Defendant TNT Services Corp.'s motion is **GRANTED.** TNT Services is dismissed from this case; and

4. All remaining aspects of the parties' motions are **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 1271382

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**2020 WL 4034920 (Pa.Com.Pl.) (Trial Order)**
Court of Common Pleas of Pennsylvania.
Luzerne County

G.A. WEST & COMPANY, INC., Plaintiff,

v.

TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC; Eric Wanner and James L. Smith, Defendants.

No. 2016-08148.
February 5, 2020.

***1** CIVIL ACTION-LAW
JURY TRIAL DEMANDED
Copies Mailed 02/05/2020

**Opinion and Order**

Andrew D. Bigda, Esquire, 340 Market Street, Kingston, PA 18704.

Mark T. Steele, Esquire, Scott F. Lehman, Esquire, Bobby Latham, Esquire, James L. Colvin, Esquire, Latham, Wagner, Steele and Lehman, P.C., 10441 S. Regal Blvd., Suite 2200, Tulsa, OK 74133.

C. William Daniels, Jr., Esquire, Matthew R. Griffith, Esquire, Burr & Forman, LLP, PO Box 2287, Mobile, AL 36652-2287.

James G. Dean, Esquire, Elliott Greenleaf & Dean, PNC Bank Adm. Building, 201 Penn Avenue, Suite 202, Scranton, PA 18503.

William H. Amesbury, Judge.

AND NOW this 5th day of February, 2020, consistent with the attached OPINION, this Court finds in favor of Plaintiff, G.A. West and Company, Inc. on Count V in the amount of $6,063,549.69.

The Offices of Judicial Records and Services of Luzerne County, Pennsylvania shall give notice of this Order to all parties pursuant to Pa. R.C. P. 236.

BY THE COURT:

<<signature>>

WILLIAM H. AMESBURY

Andrew D. Bigda, Esquire

340 Market Street

Kingston, PA 18704

Mark T. Steele, Esquire, Scott F. Lehman, Esquire

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Bobby Latham, Esquire, James L. Colvin, Esquire

Latham, Wagner, Steele and Lehman, P.C.

10441 S. Regal Blvd., Suite 2200

Tulsa, OK 74133

C. William Daniels, Jr., Esquire

Matthew R. Griffith, Esquire

Burr & Forman, LLP

PO Box 2287

Mobile, AL 36652-2287

James G. Dean, Esquire

Elliott Greenleaf & Dean

PNC Bank Adm. Building

201 Penn Avenue, Suite 202

Scranton, PA 18503

**OPINION**

G.A. West ("GAW") initiated this action against Transcontinental Gas Pipeline Company ("Transco") on August 6, 2016. On September 14, 2016, GAW filed an Amended Complaint containing five counts. Count I is a Breach of Contract Claim, Counts II and III and IV were (now dismissed) tort claims, and Count V is an action pursuant to 73 P.S. Section 501, et. seq. (Pennsylvania's Contractor and Subcontractor Payment Act ("CASPA"). Count I remains to be tried. The tort claims were dismissed pursuant to the "gist of the action" doctrine. Count V (CASPA) is the issue presently before this court, GAW's Pretrial Motion for Summary Judgment having been granted.

At the completion of the project, GAW submitted a claim for alleged extra work performed and the retainage on two separate but basically identical contracts. Transco has denied payment and is now citing/relying on the Affidavit and Release provisions of the contract. GAW made an alteration to the language of the required affidavits attached to the contract when it submitted its claim.

GAW argues that to sign the required affidavit would, in fact, constitute a waiver of its claims, and that its modification protects Transco without extinguishing the additional payments sought. Transco argues that until the required affidavit is signed, the terms of the contract are not met and the retainage and additional claims are not due and owing.

In June of 2018, GAW filed a Partial Motion for Summary Judgment on the CASPA claim which was Denied. Transco then filed a comparable motion which was also Denied. Pennsylvania law recognizes substantial performance as part of its contract

jurisprudence. Substantial performance is an issue of fact for the jury. [See: Standard Jury Instruction 19.330 (Civ)]. That was the basis of this Court's rulings.

Subsequently, GAW filed a second Partial Motion for Summary Judgment related to the CASPA claim. This submission was specific and did not rely on disputed fact. The submission was based on Transco's failure to comply with 73 P.S. Section 506(b) as required by Section 509(d). This was a different argument than previously asserted. It did not go to either the issue of substantial performance or a viable reason for withholding payment. The sole issue was the failure to notify of a deficiency within the statutorily required seven days, and notify that the deficiency would result in the withholding of the retainage.

***2** This was strictly a technical legal argument based on the clear language of the statute. The subsequent granting of summary judgment on the CASPA claim entitled GAW to the withheld retainage ($3,156,590.57), accrued interest and the issue presently before the court, attorney fees and costs.

## ATTORNEY FEES AND COSTS

The fees and costs sought by GAW are substantial ($3,900,000). The amount of work undertaken was equally substantial. GAW's counsel claim to have reviewed more than 365,000 separately identifiable documents produced by Transco, reviewed over 100,000 pages of internal documents, and taken over 25 depositions with 7,500 pages of testimony transcribed. This court observed counsel's diligence despite the obstacles presented by Transco, the complexity of the multiple issues, and acknowledges the importance and value of the claim. GAW counsel were persistent and skillful.

Counsel for Transco, however, argue that less than 5% of all discovery requests were devoted to CASPA. Additionally, GAW devoted only 54 pages of Briefing to CASPA and only 2% of the depositions were to that issue. Obviously, the winning argument was not the result of a significant amount of discovery, investigation, numerous depositions or time consuming research.

73 P.S. Section 512(b) states "the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded a reasonable attorney fee in an amount to be determined by the court…, together with expenses, (emphasis supplied). The yet untried contract claim and the three dismissed tort actions did not seek recovery of a payment under this act. The court will strictly construe the statutory language.

This Court also finds GAW is/was not a "substantially prevailing party on Counts I, II, III and IV. While the focus of GAW is on a common core of facts (the contract) this Court is bound by both the legal theory of recovery and the statutory requirement to prevail.

There is no requirement that a trial court conduct a line-by-line analysis of a legal invoice to determine its reasonableness (or its relevance to each particular Count of the Complaint). [See: Township at Millcreek v. Angela Cres Trust, 142 A.3d 948 (Pa. Cmmw. Ct. 2016)]. However, Transco has credibly demonstrated that only approximately 5% of the billable time was related to the CASPA claim. This amounts to roughly a total of 500 hours generated by various billing rates within the firm.

Pennsylvania follows the lodestar method in calculating recoverable attorneys' fees. That is, a reasonable hourly rate for each legal professional times the total number of hours reasonably expended. [See: Signora v. Liberty Travel Inc., 886 A.2d 284 (Pa. Super 2005)].

Obviously, the parties disagree as to what constitutes a reasonable rate. GAW provided the expert testimony of Chief Justice Emeritus Ron Castille as well as the incoming President of the Pennsylvania Bar Association, David Schwager. Attorney Schwager has practiced in this locale for over 30 years. This court, having previously noted the various legal factors to be considered finds the rates proposed by GAW were fair, reasonable and appropriate for this complex litigation.

After applying the rates argued by GAW to the hours objectively demonstrated by Transco, this Court finds recoverable legal fees of $182,442.

***3** Pennsylvania law allows the Court to enhance an attorney fee award under appropriate circumstances. [See: Signora v. Liberty Travel, Inc., supra]. The instant matter merits enhancement. As Justice Castille submitted in his expert report:

GAW filed its original Complaint in this litigation in Luzerne County, Pennsylvania. Despite the issue having been joined in the Luzerne County Court of Common Pleas, Transco subsequently sued GAW in Federal Court in Oklahoma. After that lawsuit was dismissed by the Federal Court, Transco then sued GAW in Oklahoma State Court in its attempt to enforce a forum selection clause rendered null and void by operation of CASPA. The Oklahoma State Court dismissed that lawsuit as well.

The remedial purpose of the CASPA statute and Transco's clear and continued abuse of the litigation process in the out-of-state filings justifies an enhancement of the recoverable legal fees of 25% or an additional $45,615.50 for a total of $228,057.50. (Alternatively, this Court finds this sum is justified pursuant to 42 Pa. C.S.A. Section 2503(7)(9)(10) for Transco's obdurate vexatious and bad faith conduct during the litigation of the CASPA claim.)

GAW has sought recovery of costs and expenses in the amount of approximately $430,000. Having previously found that 5% of the fees were related to the CASPA claim, this Court will award the same percentage to the claimed expenses, thus $21,500.

## INTEREST

CASPA permits the awarding of interest pursuant to two separate sections. 73 P.S. Section 505(b)(c) provides that "the contractor shall be entitled to submit a final invoice for payment in full upon completion of the agreed-upon work "and that 'except as otherwise agreed by the parties, payment interim and final invoices shall be due from the owner … 20 days after delivery of the invoice."

73 P.S. Section 505(d) states that if "final payment to a contractor is not paid within seven days of the due date established in subsection(c), the owner shall pay the contractor, beginning on the eighth day, interest at the rate of 1% per month or fraction of a month on the balance that is at the time due and owing."

Transco's project executive Brian O'Higgins, was deposed and admitted that the work had been accepted. O'Higgins further testified that only if GAW released its 15 million dollar claims for the extra work, would the retainage be paid. That bargaining/negotiating position triggers another section of CASPA which requires the payment of interest. 73 P.S. Section 512 states:

> (1) if arbitration or litigation is commenced to recover payment due under this act and it is determined that an owner, contractor or subcontractor has failed to comply with the payment terms of this act, the arbitrator or court shall award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was wrongfully withheld.

Where, as here, there is no dispute as to the validity of the retainage being owed, and the sole reason it was withheld was to obtain waiver of all other claims for payment on the project, the interest penalty of Section 512 is triggered. [See: Pietrini Corp. v. Agate Const. Co., Inc. 901 A.2d 1050 (Pa. Super 2006)]. CASPA is a remedial statute to be afforded liberal construction to effect its objectives and promote justice. [See: Zimmerman v. Harrisburg Fudd I, LP, 984 A.2d497 (Pa. Super 2009)].

***4** The record is clear that the withholding of the retainage lacked a good faith basis and was no more than a vexatious legal strategy to obtain leverage regarding the claims for additional work. Again, Brian O'Higgins:

> Q: So because G. A. West has claims totaling over $ 15 million, Williams wouldn't release the retainage on the projects; is that right?
>
> **A: Yes, because we don't believe we owe any of those claims.**

(Ex. 8 to GA West's Motion for Partial Summary Judgment, p. 12:19-23).

Q: Is it your testimony today that the only way in which Williams would ever be responsible for paying the retainage on 515 and 517 is if G. A. West released its claims that we're here about in this lawsuit, the 15-million-dollar plus claims for extra work? That's your testimony, right?

**A: Ever is a very strong word that you used there. I don't know if you meant to use that or not.**

Q: I absolutely did. I'd like for you to tell me any other circumstances under which you think Williams would be obligated to pay the retainage for work that has been done and for which Williams has been the recipient of $200 million in revenue for that work in the past two years.

**A: The way the contract is written is if they drop the claim, then we would pay the retainage.**

Q: Is there any other circumstance that you would pay - that Williams would pay the retainage, in your opinion?

**A: I'm not aware of any.**

(*Id.*, pp. 89:1-90:17.)

Q: Okay. Do you think that [GA West] should have to waive its claim in order to be paid for the retainage, which [are] monies due G. A. West for work it already did?

**A: That's in the contract in the forms that were provided with the contract they signed, so I would say yes.**

Q: But there's nothing in the contract that says even if Transco damages G. A. West that in order for it to be paid for work already completed, G. A. West has to waive its final claim damages -excuse me; its final claim for damages?

**A: What's the question?**

Q: Isn't it true that there's nothing in the contract, nowhere in the contract for station 517 or 515 that says, even if Transco damages G. A. West, G. A. West has to waive its claim for damages in order to recover its retainage.

**A: It doesn't say that, but it's implied with the documents that are signed in the contract. It's very clear.**

Q: So it's not clear on the face of the contract, but it's implied by the contract. That's your testimony?

**A: Yes.**

(*Id.*, pp. 274:22-275:25).

In summary, Plaintiff is to be awarded the following amounts:

| | |
|---|---|
| Retainage | $3,156,590.57 |
| Interest | $2,657,401.62 |
| Legal Fees | $ 182,442.00 |

| | |
|---|---|
| Enhancement | $ 45,615.50 |
| Costs | $ 21.500.00 |
| | $6,063,549.69 |

Accordingly, the attached Order.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2993774
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

MERRILL IRON & STEEL, INC., Plaintiff,
v.
BLAINE CONSTRUCTION CORPORATION, Zurich American Insurance Company and its Subsidiary Fidelity & Deposit Company of Maryland, Travelers Casualty and Surety Company of America, Allegheny Ludlum Corporation, on its own behalf and as merged into ALC Merger, LLC, n/k/a Allegheny Ludlum, LLC a/k/a ATI Allegheny Ludlum, HOH Engineers, Inc., and Century Steel Erectors Company, Defendants.
and
Blaine Construction Corporation, Counterclaimant and Cross Claimant,
v.
Merrill Iron & Steel, Inc., Allegheny Ludlum Steel Corporation, on its own behalf and as merged into ALC Merger, LLC, n/k/a Allegheny Ludlum, LLC a/k/a ATI Allegheny Ludlum, HOH Engineers, Inc., and Century Steel Erectors Company, Defendants by Counterclaim and Crossclaim,
and
Liberty Mutual Insurance Company, and Great American Insurance Company, Additional Defendants by Counterclaim and Crossclaim.

Civil Action No. 14–221.
|
Signed July 2, 2014.

**Attorneys and Law Firms**

O. Scott Barber, Zachary D. Jones, Angela R. Stephens, Stites & Harbison, PLLC, Louisville, KY, Patrick S. Casey, Casey & Chapman, PLLC, Wheeling, WV, for Plaintiff.

Donald M. Lund, Ryan O. Hemminger, Leech Tishman Fuscaldo & Lampl, LLC, George B. Foster, Samantha L. Brutout, Dingess Foster Luciana Davidson & Chleboski LLP, Joseph H. Bucci, Ericson P. Kimbel, Michael J. Joyce, Saul Ewing, LLP, Pittsburgh, PA, Gina M. Vitiello, Seth Price, Chamberlain Hrdlicka White Williams & Aughtry, Atlanta, GA, Angela R. Stephens, O. Scott Barber, Zachary D. Jones, Stites & Harbison, PLLC, Louisville, KY, Patrick S. Casey, Casey & Chapman, PLLC, Wheeling, WV, for Defendants/Counterclaimant and Cross Claimant.

***MEMORANDUM OPINION***

ROBERT C. MITCHELL, United States Magistrate Judge.

## I. INTRODUCTION

***1** Presently before the Court are three separate motions to dismiss for failure to state a claim and for lack of jurisdiction filed by Defendant Century Steel Erectors Company, Defendant HOH Engineers, Inc., and Defendant Allegheny Ludlum Steel Corporation. *See* Defs.' Mot. to Dismiss [ECF Nos. 33, 38, and 40]. For the following reasons, Defendants Century Steel Erectors Company and Allegheny Ludlum Steel Corporation's motions are granted and Defendant HOH Engineers, Inc.'s motion is granted in part and denied in part.[1]

## II. BACKGROUND

The present dispute involves payments allegedly owed to Plaintiff, Merrill Iron & Steel, Inc. ("Merrill") for products and services, namely structural steel and other miscellaneous metals, it provided to Defendant Blaine Construction Corporation in connection with the construction of Defendant, Allegheny Ludlum Steel Corporation's ("ATI") Hot Rolling Processing Facility in Brackenridge, Pennsylvania. *See* Compl. [ECF No. 1] at ¶¶ 1–3.

Defendant Allegheny Ludlum Steel Corporation ("ATI") is a Pennsylvania corporation involved in the business of marketing and producing specialty metal materials worldwide. *Id.* at ¶ 11. Plaintiff Merrill is a Wisconsin

corporation whose primary business activity is to fabricate and supply structural steel and miscellaneous metal products. *Id.* at ¶ 5. Defendant Blaine Construction Corporation ("Blaine") is a Tennessee corporation and provides general contracting, construction management and pre-engineered metal building services to commercial and industrial clients. *Id.* at ¶ 6. Defendant HOH Engineers, Inc., ("HOH") is an Illinois corporation and engineering-design firm serving the metal production industry. *Id.* at ¶ 12. Defendant Century Steel Erectors Company ("Century Steel") is a Pennsylvania limited partnership and provides steel erection services. *Id.* at ¶ 13.

On or about June 6, 2011, ATI contracted with Blaine to design and construct buildings for a Hot Strip Mill and a water treatment facility (the "Project") for ATI. *Id.* at ¶ 2. Blaine was the general contractor and/or design builder for the Project and subcontracted with the defendants to fulfill its obligations under its contract with ATI. *Id.* at ¶ 6. Blaine subcontracted with HOH to serve as the engineer for the Project and provide the design for the structural steel. *Id.* at ¶ 12. Additionally, Blaine subcontracted with Century Steel to erect the structural steel for the Project. *Id.* at ¶ 13.

On or about November 11, 2011, Plaintiff Merrill and Blaine entered into a Purchase Order for Merrill to furnish fabricated structural steel and miscellaneous metals necessary for the Project. *Id.* at ¶ 3. The Purchase Order incorporated by reference the contract between ATI and Blaine. *Id.* at ¶ 22. Merrill contends that it has delivered all of the structural steel and miscellaneous metals required under the Purchase Order, but has not received payment from Blaine for its delivered products. *Id.* at ¶¶ 23, 28. Additionally, because the Purchase Order was a unit price contract, the actual price varied depending upon the quantity of steel delivered by Merrill, and the actual amount of steel delivered exceeded the original estimate. *Id.* at ¶¶ 25–27.

***2** After the Purchase Order was executed, the construction plans were revised requiring Blaine to order more fabricated structural steel from Merrill at a cost of approximately $1,302,164.71 and provided additional structural steel and miscellaneous metals at an increased cost of approximately $367,790.51. *Id.* at ¶¶ 29–34, 37. Merrill claims that the total owed to it by Blaine, including increased bond premiums, is $6,403,889.26 and that Blaine has not "made any progress payments to Merrill since June 27, 2013." *Id.* at ¶ 44.

Merrill claims that in 2012, Blaine raised concerns relating to paint discoloration on the coated steel, gaps at some of the column seats and bending of some connection plates along several of the back-up tresses (collectively "alleged deficiencies") but continued to make payments in 2012 and 2013 as Blaine received and accepted delivery of the structural steel. *Id.* at ¶¶ 46–47. After Blaine received the structural steel in June 2013, it refused to make any further payments to Merrill and remitted its last payment to Merrill on June 27, 2013. *Id.* at ¶¶ 48–49.

As for the alleged paint discoloration of the structural steel, Blaine claimed that this was a sufficient basis for withholding the amounts due to Merrill. *Id.* at ¶ 52. Specifically, the project specification provided for a coating of Sherwin Williams 646 Fast Cure Epoxy, but Blaine, at the request of Merrill, approved and requested that ATI approve PPG Amercoat 240 epoxy as an alternative to the specified Sherwin Williams product, and ATI approved of said coating on November 9, 2011. *Id.* at ¶¶ 54–58. Plaintiff alleges that the paint discoloration will not affect the performance of the structural steel and Blaine has not provided Merrill with the cost of repair for the paint discoloration. *Id.* at ¶¶ 59–60. As for the gaps in the column seats on the structural steel and bending connection plates, Merrill alleges that it will not affect the performance of the steel, that Blaine has not identified what caused the gaps and bending, nor a cost of repair for such alleged deficiencies and Merrill contends that the gaps and bending are a result of HOH's design error, Blaine's mismanagement and/or Century Steel's faulty erection. *Id.* at ¶¶ 64–77.

Merrill filed suit in this Court on February 14, 2014.[2] Specific to the present motions, Merrill brings a declaratory judgment action against all defendants, a negligent misrepresentation claim against HOH Engineers, a right to indemnification against HOH Engineers and Century Steel, and an unjust enrichment claim against ATI

Century Steel filed a motion to dismiss the claims against it on April 4, 2014 [ECF No. 33], HOH filed a motion to dismiss the claims against it on April 17, 2014 [ECF No. 38] and ATI filed a motion to dismiss the claims against it on April 18, 2014. [ECF No. 40]. Merrill has responded to the various motions, and defendants have filed replies.[3]

***3** Century Steel, HOH and ATI all move to dismiss the declaratory judgment against them and argue that any such judgment is not ripe for adjudication because no sufficiently

concrete case or controversy exists between Merrill and the moving Defendants and should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Additionally, Century Steel and HOH Engineers seek to dismiss the indemnification claim against them as not ripe because Merrill has not suffered any reimbursable loss and lacks privity of contract with these defendants. Additionally, HOH Engineers moves to have the negligent misrepresentation claim dismissed as Merrill does not specify any factual averments made by HOH Engineers or allege any damages that were proximately caused from any alleged misrepresentation. Lastly, ATI moves to have the unjust enrichment claim dismissed against it as Merrill has not established that ATI was enriched nor has it been established that the enrichment was unjust.

The Court will address each argument separately.

## III. STANDARD OF REVIEW

A motion to dismiss pursuant to 12(b)(1) "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Electronics Inc. v. U.S.,* 220 F.3d 169, 176 (3d Cir.2000). If the defendant attacks the legal sufficiency of the claim, as here, it is considered a facial attack, and the court "must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id.* Alternatively, an attack based on the sufficiency of a jurisdictional fact is considered a factual challenge, and "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case." *Carpet Grp. Intern. v. Oriental Rug Importers,* 227 F.3d 62, 69 (3d Cir.2000).

### a. *Federal Rule of Civil Procedure 12(b)(6)*

To determine whether dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 697, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint and in making this determination, a court must read the complaint in the light most favorable to the plaintiff and all factual allegations must be considered true. *Estelle v. Gamble,* 429 U.S. 97, 99, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The court must also draw all reasonable inferences from all "well-pleaded" allegations contained in the complaint. *Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). In determining whether a plaintiff has met this standard, the reviewing court must ignore legal conclusions, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements [,]" ... "labels and conclusions[,]" and "naked assertions [that are] devoid of 'further factual enhancement.' " *Iqbal,* 556 U.S. at 677 (citations omitted). Thus, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir.2009).

***4** A court may take into consideration matters of public record, exhibits attached to the plaintiff's complaint and undisputedly authentic documents attached to a motion to dismiss without converting a motion to dismiss into one for summary judgment. *Delaware Nation v. Pennsylvania,* 446 F.3d 410, 413 n. 2 (3d Cir.2006); *Sentinel Trust Co. v. Universal Bonding Ins.,* 316 F.3d 213, 216 (3d Cir.2003). Therefore, the court may properly consider the documents Merrill attached to its complaint in addition to the undisputedly authentic documents attached by defendants to their motions to dismiss without converting defendants' motions into ones for summary judgment.

## IV. DISCUSSION

### 1. *Declaratory Judgment against Century Steel, HOH and ATI*

Merrill seeks declaratory relief for this Court to declare that all of the structural steel it supplied for the Project was fabricated and coated in accordance with the plans, specifications and approved alternatives and therefore any of the alleged deficiencies complained of by Blaine were the result of HOH's defective design, Century Steel's defective erection, ATI's mismanagement or another cause beyond Merrill's control due to the defendants' collective or individual fault, whichever the case may be. Compl. [ECF No. 1] at ¶ 101. While Merrill claims that under Pennsylvania law, a contractor who performs according to the detailed plans and specifications is not responsible for any alleged deficiencies in the structure, it cites to no authority for the proposition, nor does it expound upon this legal theory in its briefing or in the context of a declaratory judgment action. *Id.* at ¶ 104. Additionally, Merrill seeks a declaration that any of the alleged deficiencies will not affect the performance of the structural steel and for this Court to declare that it is owed the amounts due under the Merrill–Blaine contract. *Id.* at ¶ 105.

Defendants all respond that Merrill's declaratory judgment claim is not yet ripe, as no case or controversy exists. Defendants' argument ignores the fact that Merrill's theory for a declaratory judgment against them is not legally recognized and has been rejected by other courts as it runs counter to the purposes of the federal Declaratory Judgment Act. Because Merrill's claim is dismissed with prejudice on the basis that its claim is not legally cognizable, the ripeness issue will not be discussed.

Under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.,* "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Generally, the federal Declaratory Judgment Act offers "a pragmatic approach to the determination of legal relations and controversy between interested parties. It enables parties uncertain of their legal rights to seek a declaration of rights prior to injury." *Federal Procedure,* 10 Fed. Proc., L.Ed. § 23:2; *see also Travelers Ins. Co. v. Davis,* 490 F.2d 536, 543 (3d Cir.1974) (outlining purposes of the federal Declaratory Judgment Act). The Act does not create substantive rights for parties, but merely provides another procedure by which parties can obtain judicial relief. *Farmers Alliance Mut. Ins. Co. v. Jones,* 570 F.2d 1384, 1386 (10th Cir.1978). In this same vein, the Act does not allow a person to use a declaratory judgment action as a vehicle to create a cause of action for which it has no legal liability. *Federal Procedure,* 10 Fed. Proc. L.Ed. § 23:2.

***5** Here, Merrill attempts to "try issues or determine the validity of defenses in pending cases," which is prohibited under the Act. *Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165, 1168 (7th Cir.1969). Importantly, other courts have found that "it is not one of the purposes of the declaratory judgment act to enable a prospective negligence action defendant to obtain a declaration of non-liability ." *Sun Oil Co. v. Transcontinental Gas Pipe Line Corp.,* 108 F.Supp. 280, 282 (E.D.Pa. Nov.12, 1952) *aff'd* 203 F.2d 957 (3d Cir.1953). Additionally, "[i]t is inappropriate to use the declaratory judgment statute in what would otherwise be a run-of-the-mill negligence action." *Stradley, Ronon, Stevens & Young, LLP v. Sovereign Bank, N.A.,* 2013 WL 173022, at *7 (E.D.Pa. Jan.15, 2013) (refusing to apply a declaratory judgment action in a malpractice case) (citations omitted).

Here, Merrill preemptively filed a declaratory action against HOH, Century Steel and ATI to lay the blame for a potentially prospective action by Blaine against Merrill for the deficient structural steel supplied and fabricated by Merrill. Merrill would have this court declare that essentially HOH, Century Steel and/or ATI were negligent in its duties to design the project, erect the steel or manage the project, and that this was the proximate cause or injury to Blaine by no fault of its own. This legal theory sounds in negligence and is not tenable for declaratory relief. Merrill attempts to have this court adjudicate it not liable for the deficiencies in the steel to shield itself from potential future liability. Simply stated, Merrill seeks a declaration of non-liability and nothing more. Because it is well settled that Merrill's legal theory is improper, its declaratory judgment action against HOH, Century Steel and ATI is dismissed with prejudice.

2. *Indemnification against HOH and Century Steel*

Merrill brings a claim for common law indemnification against HOH and Century Steel in connection with the gaps at the column seats and the bending connection plates to the steel fabricated and supplied by Merrill and claims they are not due to Merrill's faulty fabrication, but rather a result of either HOH's design error and/or Century Steel's defective erection of the structural steel. Compl. [ECF No. 1] at ¶ 151. Merrill therefore claims it is entitled to indemnity over these parties for any liability it may be found to bear because they are the "sole, active, primary, or substantial contributing factor causing the nonpayment to Merrill." Compl. [ECF No. 1] at ¶ 151.

Both HOH and Century Steel argues that any claim for indemnification is premature and not ripe, because Merrill has not been required to pay any losses from the allegedly defective materials. Def. Century Steel's Br. in Supp. of Mot. to Dismiss [ECF No. 34] at 4; Def. HOH's Br. in Supp. of Mot. to Dismiss [ECF No. 39] at 7–8.

Merrill argues that it has already suffered a loss and this alone allows it to bring a cause of action for common law indemnification against HOH and Century Steel. Further, Merrill argues that "[t]he right to indemnity may arise absent a court ordering a plaintiff to pay a third party[,]" but cites to no authority standing for this proposition. In fact, the applicable case law states the opposite.

***6** The Pennsylvania Supreme Court has determined: "Indemnity is a common law remedy which shifts the entire loss from one who has been compelled, by reason

of some legal obligation, **to pay a judgment** occasioned by the initial negligence of another who should bear it." *Willet v. Pennsylvania Med. Catastrophe Loss Fund,* 549 Pa. 613, 702 A.2d 850, 854 (Pa.1997) (citations and quotation marks omitted) (emphasis added). A claim for common law indemnity requires that a judgment be entered prior to the claim being brought. *See also* *TDY Indus. v. Nat'l Freight Transp., Inc.,* 2009 WL 691947, at *12 n. 9 (W.D.Pa. March 12, 2009) ("Under Pennsylvania law, that right to bring a common law claim for indemnification arises only after the party seeking indemnification makes a payment of a judgment to a third party.").

Here, no judgment has been entered against Merrill for any claim regarding the structural steel that it fabricated and supplied. Therefore, Merrill's claims are premature. Accordingly, Merrill's common law claim for indemnification against HOH and Century Steel is dismissed without prejudice to re-assert should a judgment be entered against Merrill for the defective steel it fabricated.

3. *Negligent Misrepresentation against HOH*

Merrill brings a claim of negligent misrepresentation against HOH, and alleges that HOH's defective design of the Project constituted false information, HOH had a duty to exercise reasonable care and competence in designing and communicating that design, and failed to do so, that Merrill relied upon HOH's design to fabricate the structural steel, that HOH knew Merrill would rely upon its design for the Project and that as a result, Merrill has been damaged. Compl. [ECF No. 1] at ¶¶ 142–148.

Pennsylvania has expressly adopted the Restatement (Second) of Torts section 552, which states in pertinent part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Bilt–Rite Contrs., Inc. v. Architectural Studio,* 581 Pa. 454, 866 A.2d 270, 273, n. 1 (Pa.2005) (quoting Restatement (Second) of Torts § 552 (1965)). Therefore, under Pennsylvania law, a claim for negligent misrepresentation requires proof of the following: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon,* 556 Pa. 489, 729 A.2d 555, 561 (Pa.1999). Negligent and intentional misrepresentation differ "in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another." *Milliken v. Jacono,* 60 A.3d 133, 141 (Pa.Super.2012) (citations omitted).

***7** Here, HOH argues that this claim should be dismissed against it because: (1) Merrill has not identified any material fact that HOH misrepresented—and it only cursorily alleges that HOH's design was defective, and (2) Merrill has not properly alleged that any damages were proximately caused from HOH's alleged misrepresentation. Def. HOH's Br. in Supp. of Mot. to Dismiss [ECF No. 39] at 5. Therefore, the Court's discussion of this claim will be confined to these two discrete issues.

A factual misrepresentation "is 'material,' so as to provide a basis for a negligent misrepresentation claim, when it is of such character, that had it not been made, the transaction in question would not have been consummated." *In re Brownsville Property Corp., Inc.,* 2013 WL 4010308, at *12 (Bkrtcy.W.D.Pa. Aug.1, 2013) (citing *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1237 (Pa.Super.1992)). In *Bilt–Rite,* the Pennsylvania Supreme Court recognized a cause of action for negligent misrepresentation by finding an architect's defective designs constituted a misrepresentation of material fact. The high court held that "where information is negligently supplied by one in the business of supplying information, such as an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information[,]" the plaintiff had stated a claim for negligent misrepresentation. *Bilt–Rite,* 866 A.2d at 287.

Merrill argues that it has sufficiently alleged that HOH has misrepresented a material fact to it by supplying a defective design for the Project and this was relied upon by Merrill.

The Court agrees that Merrill has sufficiently pled the material misrepresentation of fact element to state a claim for negligent misrepresentation. Taking all of the allegations in

the complaint as true, as the Court must as this point, it can be reasonably inferred that HOH's defective design of the Project led to Merrill's possibly defective fabrication of the metal for the Project.

Additionally, Merrill has adequately alleged that its injury was proximately caused by HOH's material misrepresentation.

While there is a dearth of Pennsylvania case law explaining damages recoverable under a cause of action for negligent misrepresentation, one court has opined:

> In *Bobbin v. Sammarco,* 1995 WL 303632, at *3 (E.D.Pa. [May 18,] 1995) the court stated that the measure is "actual loss." Other courts have relied on [the] Restatement [ (Second) of] Torts, [section] 552B, entitled Damages for Negligent Misrepresentation, which provides:
>
> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
>
> a. the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
>
> ***8** b. pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
>
> (2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

*In re Brownsville Property Corp., Inc.,* 2013 WL 4010308, at *27 (quoting Restatement (Second) of Torts § 552B (1965)). Additionally, it is axiomatic that the general principals of tort law come into play in examining a negligent misrepresentation claim, as it is well established that "[a] cause of action in negligence requires allegations that establish the breach of a legally recognized duty or obligation that is causally connected to the damages suffered by the complainant." *Sharpe v. St. Luke's Hosp.,* 573 Pa. 90, 821 A.2d 1215, 1218 (Pa.2003) (citation omitted).

HOH argues that no proximate cause exists because Merrill has failed to allege a proximate cause between its contractual losses and HOH's alleged misrepresentation. The Court disagrees. Here, plaintiff has sufficiently pled that the alleged misrepresentations made by HOH, *i.e.,* the design defects, were the proximate cause of the loss incurred by Merrill. Merrill alleges that the gaps in the column seats and the bending of the connection plates were caused by HOH's defective design, and thus caused Blaine to withhold its payment under the contract between it and Blaine. Merrill has pled adequate facts to allow it to prove its case through evidentiary support. Should Merrill be correct in its assertion that HOH's design was defective and it caused the gaps in the column seats and bending of the connection plates which in turn caused Blaine to withhold its payments, HOH can be found liable for negligent misrepresentation. Accordingly, HOH's motion to dismiss Merrill's claim for negligent misrepresentation against HOH is denied.

4. *Unjust Enrichment against ATI*

Merrill claims that because it fabricated, coated and supplied the structural steel and other miscellaneous metals that were incorporated into the Project which benefitted ATI, and because Merrill has not been paid, an injustice would result if ATI "retain[s] the benefits of the labor and material Merrill provided without paying the full value thereof[.]" Compl. [ECF No. 1] at ¶¶ 156–157. Here, ATI argues that Merrill's claim for unjust enrichment fails because Merrill has not alleged any amount that ATI was benefitted nor has Merrill adequately alleged that any purported enrichment was unjust. Def. ATI's Br. in Supp. of Mot. to Dismiss [ECF No. 41] at 6.

"Unjust enrichment is a creature of equity that seeks to balance the interests of parties who have exchanged a benefit without agreeing on terms." *Goldsmith Assoc., Inc. v. Del Frisco's Rest. Grp.,* 2009 WL 3172752, at *4 (E.D.Pa. Oct.1, 2009) (citing *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa.Super.1999). Under Pennsylvania law, the elements to state a cause of action for unjust enrichment are as follows: "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Joyce v. Erie Ins. Exchange,* 74 A.3d 157, 169 (Pa.Super.Ct.2013) (quoting *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley,* 948 A.2d 828, 833 (Pa.Super.Ct.2008)). Whether a claim for unjust enrichment exists depends on the "unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Ibid.*

***9** Most importantly, the Pennsylvania Supreme Court has held that "a third party is not *unjustly* enriched when it receives a benefit from a contract between two other parties

where the party benefitted has not requested the benefit or misled the other parties .” *D.A. Hill v. Clevetrust,* 524 Pa. 425, 573 A.2d 1005, 1010 (Pa.1990) (emphasis in original). A plaintiff “cannot merely allege its own loss as a measure of recovery—*i.e.,* the value of labor and materials expended—but instead must demonstrate that [the defendant third party] has in fact been benefitted.” *Meehan v. Cheltenham Twp.,* 410 Pa. 446, 189 A.2d 593, 595 (Pa.1963). The Pennsylvania Supreme Court has used an illustration from the Restatement of Restitution, section 110 which explains whether the retention of a particular enrichment by a party is unjust. *See D.A. Hill,* 573 A.2d at 1009; *Meehan,* 189 A.2d at 596. “Section 110 deals with the situation where a third party benefits from a contract entered into between two other parties. It provides that, in the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party.” *Ibid* (quoting Restatement (First) of Restitution § 110 (1937).

This is exactly what Merrill's legal theory of recovery against ATI entails: that the failure of Blaine, the contracting party, to pay Merrill under the contract somehow leads to the unjust enrichment of ATI, a third party subcontractor with no direct contractual relationship with Merrill. Such a cause of action is not recognized under Pennsylvania law absent some claim that ATI misled the parties to perform or fail to perform under the contract. Merrill does not allege that ATI retained any benefit and cannot bring a claim for unjust enrichment against ATI. Even assuming Merrill could show that ATI retained a benefit, *i.e.,* that the contract for services between Merrill and Blaine for the Project, Merrill cannot show that it was unjust to do so. Accordingly, Merrill's claim for unjust enrichment against ATI is dismissed with prejudice.

5. *Punitive damages against HOH*

The only claim that survives defendants' motions to dismiss is a claim for negligent misrepresentation against HOH. Therefore, the Court will only discuss whether a claim for punitive damages as to the negligent misrepresentation claim should be dismissed.

Under Pennsylvania law, punitive damages are proper only where “the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.” *Hutchison v. Luddy,* 582 Pa. 114, 870 A.2d 766, 770 (Pa.2005). Punitive damages “may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.” *Id.* (citations omitted). “The same facts that plausibly allege that” a defendant materially misrepresented a fact for a negligent misrepresentation claim “establish[es] the recklessness require[ment] for a claim of punitive damages.” *Howe v. LC Philly, LLC,* 2011 WL 1465446, at *6 (E.D.Pa. April 15, 2011). Therefore, if a defendant is found to be reckless under a negligent misrepresentation theory of liability, that same standard applies in determining whether the defendant acted recklessly for purposes of awarding punitive damages. Taking all facts alleged in the complaint as true and drawing all reasonable inferences in Merrill's favor, it has adequately pled at this stage a claim for punitive damages on its negligent misrepresentation claim. Therefore, HOH's motion to dismiss an award of punitive damages for a negligent misrepresentation claim is denied at this time.

## V. CONCLUSION

***10** Based on the foregoing, Defendants' motions to dismiss are granted in part and denied in part. Specifically, Defendant Century Steel Erector's Company motion to dismiss [ECF No. 33] is granted, Defendant HOH Engineers, Inc.'s motion to dismiss [ECF No. 38] is granted in part and denied in part as to Merrill's claim for negligent misrepresentation and an award of punitive damages as to that claim, and Defendant Allegheny Ludlum Steel Corporation's motion to dismiss [ECF No. 40] is granted. An appropriate Order follows.

## ***ORDER***

AND NOW, this 2nd day of July, 2014, after consideration of Defendant Century Steel Erectors Company's motion to dismiss [ECF No. 33] and brief in support [ECF No. 34]; Plaintiff Merrill Iron & Steel Inc.'s response [ECF No. 53]; Defendant Century Steel's replies [ECF Nos. 68, 69]; Defendant HOH Engineers, Inc.'s motion to dismiss [ECF No. 38] and brief in support [ECF No. 39]; Plaintiff Merrill's response [ECF No. 66]; Defendant Allegheny Ludlum Steel Corporation's motion to dismiss [ECF No. 40] and brief in support [ECF No. 41]; Plaintiff Merrill's response [ECF No. 71]; and Defendant Allegheny Ludlum Steel Corporation's reply [ECF No. 81], **IT IS HEREBY ORDERED** that:

Defendant Century Steel Erector's Company motion to dismiss [ECF No. 33] is **GRANTED;**

Defendant HOH Engineers, Inc.'s motion to dismiss [ECF No. 38] is **GRANTED IN PART** and **DENIED IN PART** as to

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Merrill's claim for negligent misrepresentation and an award of punitive damages as to that claim; and

Defendant Allegheny Ludlum Steel Corporation's motion to dismiss [ECF No. 40] is **GRANTED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2993774

Footnotes

1 All of the parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636, therefore this Court has the ability to decide dispositive motions and to eventually enter final judgment in this matter.

2 In addition to the Defendants named in this opinion, Plaintiff also brings a declaratory judgment, breach of contract claim, and Pennsylvania Contractor and Subcontractor Payment Act ("CASPA") violations against Blaine, and a claim for joint and several liability of Blaine's Surety. Rather than filing a motion to dismiss, Blaine, and its Sureties, Zurich American Insurance Company and Travelers Casualty and Surety Company of America filed Answers to the Complaint. *See* Def. Blaine's Ans. [ECF No. 43]; Defs.' Zurich and Travelers Ans. [ECF No. 42].

3 Additionally, Blaine filed responses to its co-defendants motions and opposes their motions to dismiss. Blaine's argument echo those submitted by Merrill, therefore their briefing will not be included in this discussion, as it is duplicative.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3549281
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

CONNELLY CONSTRUCTION CORPORATION, Plaintiff,
v.
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA et al., Defendants.

CIVIL ACTION No. 16-555
|
Filed 07/24/2018

**Attorneys and Law Firms**

Lisa M. Wampler, Cohen Seglias Pallas Greenhall & Furman, PC, Pittsburgh, PA, Roy S. Cohen, Catherine Nguyen, John A. Greenhall, Cohen Seglias Pallas Greenhall & Furman PC, Philadelphia, PA, for Plaintiff.

Noah H. Charlson, Charlson Braber McCabe & Denmark, Peter F. Marvin, Marvin & Henkin, Philadelphia, PA, for Defendants.

**MEMORANDUM**

Gene E.K. Pratter, United States District Judge

***1** Walsh Heery Joint Venture (WHJV) was a general contractor retained by Pennsylvania's Department of General Services for construction work on new prison facility in Montgomery County. WHJV hired subcontractor Connelly Construction Corporation to perform masonry work on the facility. After its work on the project concluded, Connelly sued WHJV, claiming that it suffered excess costs on labor and material due to WHJV's mismanagement. WHJV has brought two counterclaims.

Until now, the litigation has focused on whether Connelly waived its claims during the project by periodically executing releases and change orders. After a mini-bench trial, the Court concluded that Connelly had waived most of its claims against WHJV. *See* Doc. Nos. 77 & 84. Now, the parties have turned their attention to the remaining claims in the case with a bouquet of four motions. The remaining claims are:

**1. Connelly's Claim for Retainage:** Because the Commonwealth has withheld a portion of its final payment to WHJV, WHJV has withheld a portion of its payment to Connelly. Connelly brought a claim to recover these "retainage" funds from WHJV, and WHJV has moved for summary judgment.

**2. WHJV's Counterclaim for Liquidated Damages:** Because the Commonwealth may seek to assess liquidated damages against WHJV for any delay to the overall project, WHJV brought a counterclaim for Connelly's partial responsibility for the delay. There are cross-motions on this claim: Connelly has moved for summary judgment, while WHJV has moved to dismiss the (unripe) claim without prejudice.

The Court denies WHJV's motion for summary judgment on Connelly's claim for retainage. As to the counterclaim for liquidated damages, the Court grants WHJV's motion for leave to dismiss without prejudice and moots Connelly's motion for summary judgment.[1]

**Standard of Review**

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

***2** The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the

moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**Discussion**

First, the Court denies WHJV's motion for summary judgment on Connelly's claim for retainage. Second, the Court dismisses WHJV's counterclaim for liquidated damages without prejudice.

**I. Connelly's Claim for Retainage**

The Commonwealth has withheld a portion of its final payments to WHJV allegedly because of delays to the project. WHJV, in turn, has withheld over $200,000 in payments to Connelly. Connelly has asserted a claim for this "retainage," and WHJV has moved for summary judgment on the claim. The crux of the dispute is whether WHJV is currently obligated to release this (or any) money to Connelly.

WHJV argues that the "pay-if-paid" clause in its subcontract with Connelly provides that the retainage is to be released only after WHJV has been paid by the Commonwealth. Because the Commonwealth has not paid WHJV, the argument goes, WHJV is not obligated to pay the retainage to Connelly. In response, Connelly argues that the "prevention doctrine" bars WHJV from relying on the pay-if-paid clause. The Court agrees: because WHJV's own conduct has delayed the project and WHJV has taken no documented steps to secure payment—meaning that the Commonwealth's non-payment is WHJV's own fault—WHJV is barred from using the pay-if-paid clause as a shield against Connelly's claim for retainage.

***A. Facts***

Completion of the construction project has been delayed for over two years. By this point, a reasonable jury could conclude that WHJV bears some responsibility for the delay. In particular, two letters from the Commonwealth's Department of General Services to WHJV executives in August 2015 highlight several potentially problematic issues with WHJV's work on the project.[2] As a result, the Commonwealth had "serious concerns regarding both late completion and unacceptable performance of the project work." Viewing the evidence in the light most favorable to Connelly, then, WHJV appears to be at least partly responsible for the project delay.

***3** The project delay has triggered a retainage provision in the contract between WHJV and the Commonwealth. The contract provides that the Commonwealth's Department of General Services may withhold a portion of its payments to WHJV until the close of the project: "All money retained by DGS may be withheld from [WHJV] until Final Inspection and Closeout Inspection issues have been resolved." Contract of Dep't of Gen. Servs. & WHJV, General Conditions, ¶ 13.7(B).

Because WHJV, as the general contractor, has not been paid in full by the Commonwealth, WHJV has not paid its subcontractor, Connelly, in full. Pursuant to the subcontract between WHJV and Connelly, WHJV may withhold payments from Connelly in proportion to Connelly's responsibility for payments to WHJV withheld by the Commonwealth: "[WHJV] may retain from each progress payment sums otherwise due [to Connelly] until final payment. The amount of retention shall be the amount retained from [WHJV's] payment from [the Commonwealth] for [Connelly's] work." Subcontract ¶ 3.3. The subcontract also includes a pay-if-paid clause: "if, and only if, [the Commonwealth] pays [WHJV], which is an express condition precedent to [WHJV's] duty to pay [Connelly], progress payments shall be due to [Connelly]." *Id.* ¶ 3.6. As the terminology suggests, on the face of the contract WHJV's duty to pay Connelly is not triggered until the Commonwealth pays WHJV.

***B. Discussion***

The plain terms of the pay-if-paid clause make payment from the Commonwealth to WHJV an "express condition precedent" of WHJV's duty to pay Connelly. As the Third Circuit Court of Appeals has explained, parties to a construction contract may use a pay-if-paid clause "to shift the risk of the owner's nonpayment under the subcontract from the contractor to the subcontractor." *Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 184 (3d Cir. 2011) (quoting *Fixture Specialists, Inc. v. Global Const., LLC*, No. 07-CV-5614, 2009 WL 904031, at *4 (D.N.J. Mar. 30, 2009) ). Indeed, the WHJV-Connelly subcontract made this risk-shifting explicit: "[Connelly] assumes toward [WHJV] all of the obligations, risks and responsibilities that [WHJV] ... has assumed toward the [Commonwealth]." Subcontract ¶ 1.2.

Connelly does not dispute that its subcontract includes a pay-if-paid clause. Instead, Connelly argues that, notwithstanding the clause, the prevention doctrine bars WHJV from relying on the clause in this situation.

"Pennsylvania law recognizes that pay-if-paid clauses present a condition precedent to payment." *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 730 F. Supp. 2d 401, 421 (E.D. Pa. 2010). The law imposes on parties to such a clause "an implied duty not to frustrate conditions precedent to their performance." *Id.* As the Supreme Court of Pennsylvania once put the matter, "if a promisor is himself the cause of the failure of performance ... of a condition upon which his own liability depends, he cannot take advantage of the failure." *Howley v. Scranton Life Ins. Co.*, 53 A.2d 613, 616 (Pa. 1947).

The parties disagree about when the prevention doctrine is triggered. Connelly argues that even an <u>inadvertent</u> failure by WHJV to bring about the condition precedent bars WHJV from relying on the pay-if-paid clause. WHJV, by contrast, argues that only a <u>deliberate</u> failure causing a delay to the project prevents it from relying on the clause. Resolving this dispute will determine the fate of WHJV's motion for summary judgment. Viewed in the light most favorable to Connelly, the evidence shows that WHJV's <u>inadvertence</u> is partly to blame for the delay in the construction project, but the record does not suggest that WHJV is <u>deliberately</u> trying not to finish the project.

***4** The Court concludes the prevention doctrine may be triggered by mere inadvertence in certain circumstances. Because WHJV prevented the occurrence of the condition precedent—no matter whether WHJV did so deliberately—WHJV cannot here rely on the pay-if-paid clause. Metaphors abound to describe the complete control WHJV has over the conclusion of the project (and, by extension, over the downstream payment to Connelly): WHJV holds all the cards; it is the captain of its own ship; the ball is in its court; the face-off with the Commonwealth is its responsibility; what is to prevent WHJV from taking a dive. "As a general rule, when one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure." *Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 634 (3d Cir. 1998). Without this rule, Connelly would be a hostage to WHJV's sloth.

Case law supports the conclusion that WHJV may not rely on the pay-if-paid clause if it is to blame for the non-satisfaction of the condition precedent—here, payment from the Commonwealth to WHJV. In its briefing, WHJV did not cite any case in which a court approved the protection of a pay-if-paid clause in the face of "merely" inadvertent conduct like WHJV's. Instead, every case discussed by WHJV reached the opposite conclusion WHJV urges: each court excused the non-satisfaction of the condition precedent and, hence, directed payment to the downstream party. *See In re Gen. DataComm Indus., Inc.*, 407 F.3d 616, 621 (3d Cir. 2005) (excusing condition precedent of employee retirement when promisor employer prevented retirement by firing employees); *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 725 (4th Cir. 2000) (excusing condition precedent in pay-if-paid between contractor and lenders when promisor contractor concealed costly design changes that extended duration of the project); *Apalucci*, 145 F.3d at 634 (excusing condition precedent of an "actual trial" when promisor insurer "[sat] by while a default judgment was entered"); *Rainier v. Champion Container Co.*, 294 F.2d 96, 103 (3d Cir. 1961) (excusing condition precedent of approval of asset sale by corporate board when promisor corporate president never submitted sale to board for approval); *Quinn Constr.*, 730 F. Supp. 2d at 421 (excusing condition precedent in pay-if-paid clause when promisor contractor agreed that owner would never have to pay for pertinent work); *Wissahickon Realty Corp. v. Boyle*, 122 A.2d 720, 722 (Pa. 1956) (excusing condition precedent of grant of liquor license when promisor restauranteur dropped her license application).[3]

At oral argument, counsel for WHJV could cite no case drawing the deliberate/inadvertent distinction that WHJV urges here. Mindful that this construction dispute is governed by state law, the Court declines to break new ground by drawing such a distinction now. Therefore, the Court

concludes that inadvertently preventing the satisfaction of the condition precedent, when that condition persists over time as it has here, is enough to trigger the prevention doctrine.

Other authorities bolster the conclusion that invocation of the prevention doctrine does not distinguish between deliberate and inadvertent conduct. For instance, the *Restatement (Second) of Contracts* summarizes the doctrine without reference to the promisor's culpability: "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." Restatement (Second) of Contracts § 245 (1981). The commentary on the rule explains that the promisor's "duty of good faith and fair dealing ... may require some cooperation on his part" to satisfy a condition precedent. *Id.* cmt. a. This cooperation could mean that the promisor must "refrain[ ] from conduct that will prevent or hinder the occurrence of that condition" or must "tak[e] affirmative steps to cause its occurrence." *Id.*

***5** The *Restatement* even provides an illustrative example that makes no reference to the "deliberateness" of the promisor thwarting the satisfaction of a condition precedent:

> *A* contracts with *B* to manufacture and deliver 100,000 plastic containers for a price of $100,000. The colors of the containers are to be selected by *B* from among those specified in the contract. *B* delays in making his selection for an unreasonable time, holding up their manufacture and causing *A* loss. *B*'s delay is a breach. His duty of good faith and fair dealing includes a duty to make his selection within a reasonable time.

Restatement (Second) of Contracts § 235 cmt. b illus. 3 (1981). *B* simply delayed his selection—for all we know, he did so inadvertently. Likewise, even if WHJV's delay of the project was merely inadvertent, WHJV has still prevented a condition precedent to its duty to pay Connelly the retainage.

Professor Williston's treatise further supports the notion that the prevention doctrine applies to an inadvertent as well as a deliberate failure to satisfy a condition precedent. The treatise puts the rule this way: "If a promisor prevents or hinders the occurrence or fulfillment of a condition to the duty of performance, the condition is excused." 13 Richard A. Lord, Williston on Contracts § 39:4 (4th ed. 1990). Williston's reason for the rule is that "a party should not be able to take advantage of its own wrongful act." *Id.* § 39:6. "[I]t is not necessary that there be a specific malevolent intent." *Id.* § 39:10. It can, in fact, be "wrongful" to do nothing.

Neither of WHJV's two remaining arguments is persuasive.

First, WHJV maintains that a "mere inadvertence" rule would eviscerate pay-if-paid clauses. After all, WHJV argues (somewhat curiously), a delayed project completion date is almost always traceable to some action or inaction by the general contractor.

But if WHJV holds all the cards when it comes to finishing the project, it overplays its hand here. Payment from the owner to the general contractor—the condition precedent—could be delayed for many reasons other than the inadvertence of the general contractor. For instance, bad weather could stall a project and delay the final payment from the owner. Or the owner may simply go belly-up. In situations like these, the pay-if-paid clause would not be nullified. Instead, it would continue to serve its intended function: shifting the risk of owner non-payment from the general contractor to the subcontractor.

Second, WHJV points out that its incentives are aligned with Connelly's: both parties want the project to be finished as soon as possible. Only then will the Commonwealth pay WHJV for all of its work. Moreover, until then, WHJV faces $35,000 of liquidated damages assessed by the Commonwealth for every day of delay. Under these circumstances, why would WHJV drag its feet on finishing the project, just to avoid triggering its duty to pay Connelly a "paltry" $200,000?

This argument misses the point. Yes, WHJV has every incentive to finish the project. As a factual matter, this incentive-based argument would suggest that any delay attributable to WHJV is probably inadvertent, not deliberate. But this *factual* point says nothing about whether the *legal* standard for triggering the prevention doctrine is inadvertence or deliberateness. WHJV's motion for summary judgment on Connelly's claim for retainage is denied.

## II. WHJV's Counterclaim for Liquidated Damages

***6** When this case began, WHJV asserted a counterclaim against Connelly for its share of liquidated damages that WHJV expected would be claimed by the Commonwealth for the delayed project. Now, Connelly has moved for summary judgment on the counterclaim, arguing that WHJV has offered no evidence—expert or otherwise—that Connelly delayed the overall project.

WHJV concedes that it has no evidence or predicate to support its counterclaim. Instead, because it has yet to be

found liable for liquidated damages to the Commonwealth, WHJV argues that its counterclaim is not ripe. Accordingly, it has filed a motion for leave to dismiss the counterclaim without prejudice. For the reasons laid out below, the Court dismisses the counterclaim without prejudice, mooting Connelly's motion for summary judgment.

***A. Rule 41 Voluntary Dismissal—Standard***

Under Federal Rule of Civil Procedure 41, once a party has answered a claim, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2); *see also* Fed. R. Civ. P. 41(c) (applying this rule to defendants' requests to dismiss counterclaims as well).

Requests for voluntary dismissal are granted "liberally." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990). The nonmoving party bears the burden of showing substantial prejudice, *see* *Equal Opportunity Employment Comm'n v. Bethlehem Steel Corp.*, 727 F. Supp. 952, 954 (E.D. Pa. 1990), which must be something "other than the mere prospect of a second lawsuit," *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d at 863 (quotations omitted).

Courts evaluating a Rule 41 motion focus on a set of overlapping factors, such as:

1) The moving party's diligence in requesting a voluntary dismissal.

2) The progress of the current litigation.

3) The nonmoving party's "efforts and expense" so far in the case, including whether a dispositive motion was filed on the claim.

4) The potential for duplicative expense in a second, future litigation.

*E.g.*, *In re Zoloft (Sertralinehydrochloride) Prod. Liab. Litig.*, 176 F. Supp. 3d 483, 499 (E.D. Pa. 2016) (quoting *Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994) ); *Maleski v. DP Realty Tr.*, 162 F.R.D. 496, 498 (E.D. Pa. 1995).

***B. Rule 41 Voluntary Dismissal—Application***

Balancing the factors, the Court dismisses the counterclaim without prejudice.

*1. WHJV has been diligent in requesting a dismissal.*—From the beginning of the case, WHJV telegraphed the conditional nature of its counterclaim. The counterclaim itself stated that Connelly would be liable for liquidated damages only "[t]o the extent that ... WHJV is ultimately found to be liable for liquidated damages." Counterclaim ¶ 4. Early in the litigation, WHJV sought to bifurcate the case and seek resolution of the waiver and release issues first. *See* Doc. No. 25. During the first round of summary judgment motions, WHJV stated that, if Connelly's claims failed, "WHJV would be prepared to dismiss its claim against Connelly without prejudice." Doc. No. 38, at 2 n.1. One month later, in a pretrial memorandum, WHJV represented that its discussions with the Commonwealth over "[t]he reasons for the delay" could "impact aspects of the WHJV's counterclaim." Doc. No. 40, at 2 n.1. This year, WHJV again stated that it was "prepared to dismiss its delay claim against Connelly without prejudice." Doc. No. 80, at 3–4. Finally, this Rule 41 motion comes less than a month after the Court's final ruling on the release and change order issues. *See* Doc. Nos. 84 & 90. Throughout the case, WHJV has been conscientious and diligent about potentially dismissing the counterclaim.

***7** *2. The progress of the current litigation favors dismissal.*—Very little effort has been spent to address the counterclaim in discovery. Neither party's expert analyzed the overall delay of the project or Connelly's supposed share of the blame for the overall delay. Much discovery on such an issue remains to be taken—most notably, depositions of Commonwealth representatives and reports from construction scheduling experts. The parties' very limited headway on the counterclaim militates in favor of a dismissal without prejudice.

*3. Connelly's efforts so far on the counterclaim are scant.*—Although Connelly has filed a motion for summary judgment on the counterclaim, its discovery efforts on the issue have been relatively minimal. As proof of its efforts to investigate the counterclaim, Connelly cites small portions of two depositions of WHJV representatives. In one, the representative was asked "what items were delaying the project that were caused by Connelly" and could not answer the question. *See* McGinty Dep. at 134:14–18. In the other, the colloquy took less than a page of text:

> A: I am aware that throughout some of our analysis process, our analysis had come up to show that there were delays on this project that were, in our mind, the direct result of Connelly.
>
> Q: And was any analysis done showing how many days were caused by Connelly's delay on the project?

> A: I am not aware.
>
> Q: And are you aware whether or not the Connelly delays impacted the critical path of the project?
>
> A: I have heard conversations held relative to the overall project that there are some delays attributable to Connelly that affected the end date of the project.

Swain Dep. at 84:11–85:4. Aside from these two excerpts—amid a sea of deposition testimony—it does not appear that Connelly investigated the counterclaim. Despite Connelly's best efforts to cast the counterclaim as a sword of Damocles dangling perilously over the case, Connelly's behavior in discovery indicates otherwise.

Instead, discovery has focused almost exclusively on the monthly releases and change orders. Connelly's expert did not analyze the overall delay of the project or Connelly's share of the responsibility for the overall delay. To the extent that discovery focused on scheduling delays, the focus was on delays to *Connelly*'s schedule, not the project's *overall* schedule. Therefore, this factor militates in favor of dismissal. *Cf. Maleski*, 162 F.R.D. at 498 ("Here, the action is in its preliminary stages—the pleadings are not complete and little discovery has been conducted."); *Young v. Johnson & Johnson Corp.*, No. 05-CV-2393, 2005 WL 2886218, at *4 (E.D. Pa. Nov. 2, 2005) ("[D]efendants' discovery efforts to date have been relatively minimal."); *Kenney v. Celotex Corp.*, No. 85-CV-0454, 1986 WL 177, at *2 (E.D. Pa. Apr. 8, 1986) ("Little, if any, discovery has been taken and the parties are by no means near to approaching trial.").

*4. Any discovery that has already been taken on the counterclaim can be used in a second, future litigation.*—A second case would not create duplicative discovery. *Cf. J.K. ex rel. Kpakah v. CSX Transp.*, No. 14-CV-729, 2015 WL 3948096, at *3 (E.D. Pa. June 29, 2015) ("[M]uch of defendants' work to date will not be wasted. The evidence obtained in discovery in this case remains relevant and can be utilized in the newly-filed ... action."); *Young*, 2005 WL 2886218, at *3 ("The evidence obtained in discovery remains relevant and undoubtedly will be utilized in the [subsequent] litigation.").

### *C. Attorney's Fees and Costs*

***8** Given that WHJV's counterclaim is dismissed without prejudice, Connelly makes an alternative request: that WHJV pay for the costs Connelly incurred defending against the counterclaim.

In a Rule 41 motion, "the decision whether or not to impose costs and attorney's fees upon the [moving party] is within the discretion of the court." *Citizens Sav. Ass'n v. Franciscus*, 120 F.R.D. 22, 24 (M.D. Pa. 1988) (citing *Puerto Rico Maritime Shipping Auth. v. Leith*, 668 F.2d 46, 51 (1st Cir. 1981) ). Fee-shifting is not only "very common," *Shulley v. Mileur*, 115 F.R.D. 50, 52 (M.D. Pa. 1987) (citing *Pittsburgh Jaycees v. United States Jaycees*, 89 F.R.D. 454 (W.D. Pa. 1981) ), but also "often necessary" to protect the nonmoving party, *Citizens Sav. Ass'n*, 120 F.R.D. at 24 (citing *Puerto Rico Maritime*, 668 F.2d at 51). The purpose of fee-shifting "is to compensate the [nonmoving party] for having incurred the expense of trial preparation without the benefit of a final determination of the controversy." *Id.* (quoting *Shulley*, 115 F.R.D. at 52).

The Court agrees that fee-shifting of some appropriate measure may be warranted and concludes that an evidentiary hearing is the best way to determine the fee amount. Therefore, if the parties are unable to resolve the fee dispute on their own, the Court orders Connelly to submit any continued request (with documentation) for attorney's fees on the counterclaim no later than August 31, 2018.

## Conclusion

For the foregoing reasons, the Court (1) dismisses as moot Connelly's motion for partial summary judgment as to Change Order 7; (2) denies WHJV's motion for summary judgment on Connelly's claim for retainage; (3) grants as unopposed Connelly's motion for summary judgment as to WHJV's counterclaim for concrete slab discoloration; and (4) grants WHJV's motion to dismiss its counterclaim for liquidated damages without prejudice, thereby mooting Connelly's motion for summary judgment as to the counterclaim for liquidated damages.

An appropriate order follows.

## All Citations

Not Reported in Fed. Supp., 2018 WL 3549281

Footnotes

1 Two other claims were resolved during the briefing on these motions. First, Connelly had moved for partial summary judgment to recover payment for its work under the final change order in the project, Change Order No. 7. At oral argument, the parties reported that this claim had been settled. The Court therefore dismisses Connelly's partial motion for summary judgment (Doc. No. 88) as moot. Second, during construction, the prison's concrete floor had been discolored and needed to be repaired. WHJV initially brought a counterclaim for Connelly's share of responsibility for the discoloration, and Connelly moved for summary judgment. Now, because WHJV does not oppose the motion, WHJV's counterclaim for slab discoloration is dismissed with prejudice.

2 The letters present a litany of problems with WHJV's work on the project. “[N]umerous subcontractors and suppliers are increasingly complaining about non-payment for base contract work;” WHJV “has apparently struggled to submit accurate monthly invoices;” the project had “numerous non-conformance and installation deficiency issues;” the Commonwealth had flagged pending issues “for over a year, yet many of these items remain unaddressed and unresolved;” “WHJV continues to provide insufficient manpower to complete base contract work, let alone provide the additional manpower it will take to address and correct the deficiency issues;” and “WHJV continues to appear oblivious to the fact that the project encompasses design and construction of a sophisticated maximum security prison.” *See* Doc. No. 91, Ex. B.

3 To be sure, promisors in some of these cases took deliberate steps to thwart the condition precedent. *See, e.g.*, *Wissahickon Realty*, 122 A.2d at 722; *Quinn Constr.*, 730 F. Supp. 2d at 420; *In re Gen. DataComm Indus.*, 407 F.3d at 621. Other promisors, however, prevented the condition precedent by omission, and the cases do not specify whether the omission was inadvertent. *See, e.g.*, *Apalucci*, 145 F.3d at 634; *Rainier*, 294 F.2d at 103.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 7373717
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

# ALLEGHENY CONSTRUCTION GROUP INC., Plaintiff
v.
# WALSH HEERY JOINT VENTURE, Defendant.

CIVIL ACTION NO. 18-4899
|
December 30, 2019
|
Filed 12/31/2019

**Attorneys and Law Firms**

Roy S. Cohen, Cohen Seglias Pallas & Greenhall, Philadelphia, PA, for Plaintiff.

Judy S. Moon, Noah H. Charlson, Charlson Braber McCabe & Denmark, Philadelphia, PA, for Defendant.

## MEMORANDUM

Joyner, District Judge

***1** Presently before the Court are Defendant's Motion for Summary Judgment, (Def. Motion for Summary Judgment, Doc. No. 12) and Plaintiff's Motion for Partial Summary Judgment, (Pl. Motion for Partial Summary Judgment, Doc. No. 13). For the reasons that follow, the Motions will be granted in part and denied in part.

## Factual Background

Plaintiff Allegheny Construction Group, Inc. ("ACG") brings claims against Walsh Heery Joint Venture ("WHJV"). (Pl. Complaint, Doc. No. 1.) Plaintiff alleges breach of contract and violation of Pennsylvania's Prompt Pay Act ("PPA") 62 Pa.C.S.A. § 3901, et seq. and brings claims, in the alternative, of unjust enrichment and quantum meruit. (Doc. No. 1.) Defendant moves for summary judgment on all claims, (Doc. No. 12), and Plaintiff moves for summary judgment on its claims for payment of the retainage, the backcharges pertaining to the laydown yard and site clean-up, and relief under the PPA, (Doc. No. 13). Plaintiff seeks damages of at least $995,427.83, (Doc. No. 1 ¶18), remedies under the PPA, (Doc. No. 13-1 at 18), and relief through unjust enrichment, (Doc. No. 1 ¶33), and quantum meruit, (id. ¶36).

The following facts are undisputed: The Commonwealth Department of General Services ("DGS") hired Defendant to complete a construction project ("Project"). (See id. ¶¶5-6; Def. Statement of Undisputed Facts, Doc. No. 12-5 ¶1.) Defendant then entered into a subcontract with Plaintiff for a portion of the Project. (Doc. No. 1 ¶7; Doc. No. 12-5 ¶3.) The subcontract provides that Defendant may withhold from Plaintiff a three-percent retainage for Plaintiff's completed work until the Project is substantially complete. (Doc. No. 13-1 at 3; Doc. No. 12-5 ¶¶2-3.) Additionally, the subcontract contains a "pay-if-paid" clause providing that Defendant need not fully compensate Plaintiff until DGS pays Defendant. (Doc. No. 13-1 at 3; Doc. No. 12-5 ¶¶2-3.) The Project was delayed, (Doc. No. 13-1 at 2; Doc. No. 12-5 ¶6), and Defendant has not paid the retainage to Plaintiff, (Doc. No. 13-1 at 4; Doc. No. 15-5 ¶9).

Plaintiff claims that, according to DGS, Defendant is at least partially responsible for the delay. (Doc. No. 13-1 at 2.) Plaintiff contends that, because Plaintiff has satisfactorily completed its work under the subcontract and because Defendant, not Plaintiff, caused the delay, Defendant has breached the subcontract and the PPA by refusing to pay the retainage to Plaintiff. (Id. at 17.)

Defendant avers that, because DGS has not yet paid Defendant, (Doc. No. 13-1 at 3; Doc. No. 15-5 ¶8), and because Defendant did not cause the delay, (Doc. No. 15-5 ¶7), Defendant is rightfully withholding the retainage from Plaintiff. (Doc. No. 15-1 at 2.)

Lastly, the parties dispute the proper retainage amount. (Doc. No. 13-1 at 4, 19-22; Doc. No. 15-1 at 14-15.)

## Analysis

### Jurisdiction

Subject matter jurisdiction in this case is proper under 28 U.S.C. § 1332(a)(1), as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000. § 1332(a)(1). Because Defendant has litigated the

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

merits of its claim without contesting personal jurisdiction, we may exercise personal jurisdiction over Defendant. See Richard v. U.S. Airways, Inc., 2011 WL 248446, at *1 (E.D. Pa. Jan. 26, 2011).

Legal Standard

***2** To obtain summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputes about "material" facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "genuine" dispute exists if the non-movant establishes evidence "such that a reasonable jury could return a verdict" in their favor. Id.

Once the movant meets its initial burden, the nonmoving party must then "go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) (internal citations omitted) (emphasis omitted).

"The court must review the record 'taken as a whole.' " Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000) (quoting Matsushita, 475 U.S. at 587). At summary judgment, we must view the evidence and draw all inferences "in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587 (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). See also Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001).

Still, the non-movant must show more than "[t]he mere existence of a scintilla of evidence in support of ... [the non-movant's] position" to defeat a motion for summary judgment. Anderson, 477 U.S. at 252. To survive summary judgment, the specific facts set forth by the non-movant must require resolution "only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. The non-movant "may not rest upon the mere allegations or denials of the ... pleading; its response ... must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted).

Count I - Breach of Contract

**I. Pay-if-Paid Clause**

**a. Collateral Estoppel**

In a prior case involving similar facts and the same Defendant as here, a subcontractor plaintiff sued Defendant for failing to pay a retainage. Connelly Constr. Corp. v. Travelers Cas. & Sur. Co. of Am., 2018 WL 3549281, at *1 (E.D. Pa. July 24, 2018). Defendant argued that Defendant was not obligated to pay the subcontractor plaintiff because DGS had not yet paid Defendant. Id. at *3. The Court held that the prevention doctrine precluded Defendant from relying on a paid-if-paid clause because Defendant's performance was at least partially responsible for DGS' decision to withhold payment. Id. at *4.

Here, Plaintiff argues that collateral estoppel precludes Defendant from relying on the prevention doctrine in this case.

**b. Prevention Doctrine**

Though a pay-if-paid clause creates a condition precedent to payment, a party that frustrated occurrence of the underlying payment may not rely on a pay-if-paid clause to avoid its payment obligation. See id. at *3; Quinn Constr., Inc. v. Skanska USA Bldg., Inc., 730 F. Supp. 2d 401, 421 (E.D. Pa. 2010).

Though deliberate frustration certainly bars reliance on a pay-if-paid clause, inadvertent acts can sometimes constitute frustration precluding reliance on the clause. Connelly, 2018 WL 3549281, at *4 ("[T]he Court concludes that inadvertently preventing the satisfaction of the condition precedent ... is enough to trigger the prevention doctrine."); Quinn, 730 F. Supp. 2d at 421. See also Apalucci v. Agora Syndicate, Inc., 145 F.3d 630, 634 (3d Cir. 1998).

***3** In correspondence from DGS to Defendant, DGS highlighted concerns about Defendant's performance and indicated that Defendant's deficiencies contributed to delaying the Project. (Doc. No. 13, Ex. B, December 22, 2016 DGS Letter; Doc. No. 13, Ex. C, January 18, 2017 DGS Letter.) The record sufficiently establishes that Defendant was at least partially responsible for the Project delay. (Doc. No. 13, Exs. B, C; id., Ex. D, McGinty Dep. Tr. 25:18-26:3, 36:6-13.) See also Connelly, 2018 WL 3549281, at *2. Thus, the prevention doctrine bars Defendant from relying on the pay-if-paid clause in this case.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Therefore, we need not address whether collateral estoppel precludes Defendant from relying on the pay-if-paid clause in this proceeding.

**II. Laydown Yard Backcharge**

The parties agree that the contested laydown yard backcharge is for the cost of remediating the laydown yard. (Doc. No. 13-1; Doc. No. 15-1 at 5.) The parties also agree that Plaintiff did not perform the laydown yard work. (Doc. No. 13-1 at 20-21; Doc. No. 15-1 at 5.) The parties do not assert that Plaintiff was ultimately responsible for performing the laydown yard remediation. (See Doc. No. 15-1 at 14.) Instead, it appears that the size of the project increased and that DGS accepted the Project without requiring completion of the laydown yard remediation and that, therefore, Plaintiff was relieved of its obligation to complete the laydown yard work. (Doc. No. 13-1 at 20; Doc. No. 15-1 at 5.) Plaintiff and Defendant agree that the retainage should not include payment for the undone laydown yard work. (Doc. No. 13-1 at 20-21; Doc. No. 15-1 at 5.)

However, the parties disagree on whether Defendant has already compensated Plaintiff or otherwise accounted for the uncompleted laydown yard remediation and, thus, whether Defendant should adjust the retainage to reflect remuneration for the laydown yard subproject. (Doc. No. 13-1 at 21; Doc. No. 15-1 at 5.) Plaintiff asserts that Defendant, in calculating the retainage payment, should not reduce the retainage to factor in a laydown yard payment because, Plaintiff avers, Defendant has not compensated Plaintiff for the laydown yard remediation. (Doc. No. 13-1 at 21.) In calculating the retainage, Defendant claims a credit, or deduction, measured by what Defendant would have paid Plaintiff had Plaintiff completed the laydown yard remediation. (Doc. No. 15-1 at 5.) Specifically, Defendant argues that, to avoid paying Plaintiff for work that Plaintiff did not perform, Defendant "is deducting from any funds due to Allegheny a credit for the work," (id.), and that Plaintiff "owes a credit for the work that was not performed," (id. at 14).

We find that there is a material dispute of fact as to whether Defendant has already compensated Plaintiff for the uncompleted layback yard remediation. (Doc. No. 13-1 at 21; Doc. No. 15-1 at 5.) Thus, because factual issues preclude determining whether the retainage payment should factor in the layback yard subproject, we deny both Defendant's and Plaintiff's summary judgment motions as to the laydown yard backcharge.

**III. Clean-Up Backcharge**

The subcontract requires subcontractors to keep the worksite clean and authorizes Defendant to assess clean-up costs if a subcontractor fails to begin cleaning the site within twenty-four hours after Defendant provides written notice to the subcontractor that the subcontractor is out of compliance with the clean-up provision. (Doc. No. 13, Ex. A, Art. 6.4, Subcontract.)

Though Defendant eventually charged Plaintiff for clean-up costs, (Doc. No. 13, Ex. O, February 11, 2015 Letter from Defendant), it is unclear whether Defendant properly notified Plaintiff of Plaintiff's purported noncompliance before assessing charges. (Doc. No. 13-1 at 21-22; Doc. No. 15-1 at 6; Doc. No. 13, Ex. O.)

***4** We find that there is a material dispute of fact over whether Defendant provided notice to Plaintiff specifically before assessing the clean-up backcharge. (Doc. No. 13-1 at 22; Doc. No. 15-1 at 6; Doc. No. 13, Ex. O.) Thus, we deny the summary judgment motions as to the clean-up backcharge.

**IV. Breach of Contract Elements**

Under Pennsylvania law, the elements for a breach of contract action are: (1) " 'the existence of a contract ...; (2) a breach of duty imposed by the contract; and (3) resultant damages.' " Kenneth Hantman, Inc. v. Whiting-Turner Contracting Co., 2008 WL 4072591, at *6 (E.D. Pa. Sept. 2, 2008); Church v. Tentarelli, 953 A.2d 804, 808 (Pa. Super. 2008).

Here, it is undisputed that there is a subcontract. (Doc. No. 1 ¶7; Doc. No. 13, Ex. A; Doc. No. 12-5 ¶3.) Additionally, the subcontract imposed on Defendant a duty to pay the retainage to Plaintiff, and Defendant has failed to pay the retainage for Plaintiff's performance. (See Doc. No. 13-1 at 4; Doc. No. 15-5 ¶9.) Thus, Defendant has breached its duty under the subcontract as to Plaintiff's completed work. Because we find material disputed issues as to the backcharges, as discussed above, we decline to decide at the summary judgment stage whether Defendant has breached its payment duty surrounding the disputed backcharges.

As to damages, though the parties disagree on the amount of backcharge owed, (Doc. No. 13-1 at 21-22; Doc. No. 15-1 at 5, 6), the parties agree that Defendant has not paid the retainage, (Doc. No. 13-1 at 4; Doc. No. 15-5 ¶9).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Thus, setting aside the disputed backcharges, Defendant has breached the subcontract as to the retainage for Plaintiff's completed work. Accordingly, we deny Defendant's Motion for Summary Judgment on Count I. We grant Plaintiff's Motion for Partial Summary Judgment on the breach of contract claim but deny Plaintiff's Motion as to the disputed backcharges.

Count II - Violation of the PPA 62 Pa. C.S.A § 3931, et seq.

**I. Whether Defendant Violated the PPA**

As is relevant here, the PPA applies to construction contracts and subcontracts for projects by Pennsylvania governmental agencies, Glass Artistry Architectural Glass & Metal, LLC v. W. Sur. Co., 2010 WL 331701, at *8 (E.D. Pa. Jan. 27, 2010), such as DGS.

The PPA requires a contractor to pay a subcontractor upon performance by the subcontractor. See § 3931(b); § 3933; Glass, 2010 WL 331701, at *8. Courts may find that a defendant violated the PPA as to some, but not all, of a contested payment. See Glass, 2010 WL 331701, at *11 (finding that the contractor violated the PPA as to some, but not all, of the payment allegedly due to the subcontractor).

Here, it is undisputed that Defendant has not fully compensated Plaintiff for performance of the subcontract. (Doc. No. 13-1 at 3-4; Doc. No. 12-5 ¶9.) Thus, regarding the work aside from the backcharges, we find no disputes of material facts as to PPA liability. Accordingly, we hold that Defendant has violated the PPA. Because there are material disputes of fact as to the backcharges, we decline to determine at the summary judgment stage whether Defendant has violated the PPA regarding the disputed backcharges. See Glass, 2010 WL 331701, at *11.

**II. Interest, Penalties, and Attorney Fees Under the PPA**

Under the PPA, the Court may grant interest, penalties, and attorney fees. See § 3933(d); § 3935; Glass, 2010 WL 331701, at *8-9; Trinity Contracting, Inc. v. Mun. Sewage Auth. of Twp. of Sewickley, 2015 WL 8776568, at *4 (Pa. Commw. Ct. Dec. 15, 2015). We grant a hearing to determine whether interest, penalties, and attorney fees are appropriate in this action.

***5** According, we grant Plaintiff's Motion as to liability under the PPA and deny Defendant's Motion as to PPA liability. We deny both summary judgment motions as to interest, penalties, and attorney fees under the PPA.

Count III - Unjust Enrichment

Under Pennsylvania law, a Court may not find unjust enrichment when an express contract governs the parties' relationship. See Meksin v. Glassman, 2019 WL 2183809, at *4 (Pa. Super. Ct. May 21, 2019) (" '[I]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract....' ") (alteration in original).

Here, it is undisputed that the subcontract covers the parties' relationship. (Doc. No. 12-5 ¶3; Doc. No. 13-1 at 3; Doc. No. 13, Ex. A.) Thus, we deny Plaintiff's Motion and grant Defendant's Motion as to Count III.

Count IV - Quantum Meruit

Under Pennsylvania law, quantum meruit is unavailable when a contract establishes the value of the services provided under the contract. First Gen. Const. Corp. v. Kasco Const. Co., 2011 WL 2038542, at *2 (E.D. Pa. May 24, 2011) ("[W]here an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract; and where the contract fixes the value of the services involved, there can be no recovery under a quantum meruit theory.") (internal quotations omitted).

Here, the subcontract contains numerous payment provisions that govern the value of services provided under the subcontract. (Doc. No. 13, Ex. A, Art. 3.) Thus, Plaintiff cannot recover under a quantum meruit theory. As to Count VI, we deny Plaintiff's Motion for Partial Summary Judgment and grant Defendant's Motion for Summary Judgment.

**Conclusion**

We deny Defendant's Motion for Summary Judgment on Count I and Count II and grant said Motion as to Counts III and VI. We deny Plaintiff's Motion for Partial Summary Judgment as to Count I on the disputed backcharges but otherwise grant Plaintiff's Motion as to Count I. We grant Plaintiff's Motion for Partial Summary Judgment as to Count

II on PPA liability. We deny Plaintiff's Motion for Partial Summary Judgment as to Counts III and VI. We grant a hearing to determine the appropriate amount of damages and whether, under the PPA, interest, penalties, and attorney fees are proper. An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 7373717

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 2038542
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

# FIRST GENERAL CONSTRUCTION CORP., INC.
v.
KASCO CONSTRUCTION CO., INC.

Civil Action No. 10–2655.
|
May 24, 2011.

**Attorneys and Law Firms**

Daniel E. Fierstein, John A. Greenhall, Cohen Seglias Pallas Greenhall & Furman PC, Philadelphia, PA, for First General Construction Corp., Inc.

Leonard A. Windish, Leonard A. Windish, PC, Philadelphia, PA, for Kasco Construction Co., Inc.

*MEMORANDUM*

DALZELL, District Judge.

***1** Plaintiff First General Construction Corp., Inc. ("FGCC"), here sues Kasco Construction Co., Inc. ("Kasco") for breach of contract (Count I), *quantum meruit* (Count II), unjust enrichment (Count III), and failure to promptly pay subcontractor/breach of statutory obligations under the New Jersey Prompt Payment Act ("NJPPA") (Count IV).

FGCC filed its complaint on June 3, 2010 and Kasco answered and counterclaimed. The parties agreed to go to arbitration, but before the arbitration could take place Kasco filed this motion for summary judgment and asked us to stay the arbitration pending our disposition of its motion.

Kasco moves for summary judgment on all counts of the complaint. For the reasons we discuss in detail below, we will grant defendant's motion and direct a prompt arbitration on Kasco's counterclaims.[1]

## I. *Factual Background*

Kasco contracted with Vornado Realty Trust ("Vornado") to act as Vornado's general contractor in connection with the expansion of the Marlton Shopping Center located at Routes 70 & 73 in Marlton, New Jersey (the "Project"). Kasco's Motion for Summary Judgment ("MSJ"), Ex. A ¶ 3; Ex. C. On January 8, 2008,[2] FGCC entered into a sub-contract with Kasco to perform all of the concrete work on the Project (the "Contract"). MSJ, Ex. C. Pursuant to the Contract, Kasco agreed to pay FGCC $840,000 for the work. *Id.*

During the course of the Project, Frank Coogan, Kasco's Project Manager, approved and denied various Change Proposal Requests ("CPRs") FGCC submitted for changes in the scope of its work and the corresponding cost impacts to the Contract. *Id.,* Ex. A ¶ 7. Kasco claims that the total amount of the CPRs increased the value of FGCC's work by $85,247.57. *Id.* ¶ 10. FGCC claims that, although the terms of the Contract provided that changes relating to extra work could only be made in writing, those terms were waived when Kasco orally approved FGCC to do certain extra work. Pl. Resp. at 6. FGCC claims that it performed various extra tasks outside the scope of the Contract at the verbal direction of Paul Gallagher, Kasco's Project Superintendent. *Id.* In November of 2008, FGCC submitted claims for the extra work that it alleges it completed months earlier. Kasco alleges that these claims were beyond the scope of the Contract and the CPRs. MSJ, Ex. A ¶ 14. FGCC claims that Kasco owes it an additional $244,775.12 for the work. Compl. ¶ 15.

Kasco countersued, averring that FGCC failed to submit invoices for any alleged "extra work" that deprived Kasco of the ability to get paid for that extra work from the Project's owner. Kasco Counterclaim ¶ 8. Kasco claims that FGCC did not perform some of the work that it said it would perform and that this failure forced Kasco to incur further expenses on the Project. *Id.* ¶¶ 10–13.

## II. *Analysis*[3]

Kasco moves for summary judgment against FGCC on all counts of FGCC's complaint. Kasco argues that (1) Pennsylvania law governs all of FGCC's claims, (2) the releases FGCC executed bar most of its claims and reduce the amount of damages to $69,583.23, (3) FGCC's failure to obtain Kasco's written authorization for FGCC's alleged extra work bars its claims, and those claims are barred by FGCC's failure to comply with the Contract's notice provisions and its failure to submit back-up information for its claims, (4) FGCC's claims of *quantum meruit* and unjust enrichment

are barred by the existence of a written contract, and (5) the NJPPA bars FGCC's claim for breach of the statutory obligation under the statute's own terms.

**A. *Pennsylvania Law***

***2** Kasco argues that Pennsylvania law governs all of FGCC's claims. A District Court exercising diversity jurisdiction must of course apply the choice of law rules of the forum state to determine which state's laws govern the substantive issues of the case. *Klaxon Co. v. Stentor Elevator Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Shields v. Consol. Rail Corp.,* 810 F.2d 397, 399 (3d Cir.1987). Pursuant to Pennsylvania law, we will follow the choice of law provision the parties agreed to in the Contract. *Gay v. CreditInform,* 511 F.3d 369, 389 (3d Cir.2007) (holding that Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them).

Here, the parties agreed that the Contract "shall be deemed to be entered into in the Commonwealth of Pennsylvania, and the interpretation thereof shall be governed by the laws of the Commonwealth of Pennsylvania without regard to its conflict of laws provisions." MSJ, Ex. C. at 3. FGCC concedes that Pennsylvania law governs the interpretation of the Contract, but argues that the NJPPA, N.J.S.A. 2A:30A–1, *et seq.,* applies to Kasco's alleged failure to pay FGCC for its extra work claims. Pl. Resp. at 11. Kasco contends that the NJPPA cannot apply because (1) FGCC brought this action in Pennsylvania, not in New Jersey, and (2) it is undisputed that Kasco has not received payment for FGCC's alleged extra work from the Project's owner, Vornado.

The NJPPA provides that "[i]n any civil action brought to collect payments pursuant to this section, the action shall be conducted inside of this State...." N.J.S.A. § 2A:30A–2f. FGCC argues that because the Contract's choice of law provision dictates that "[a]ny dispute under this Contract ... must be brought in this state or federal courts having jurisdiction in the Commonwealth of Pennsylvania," MSJ, Ex. C at 3, the Contract is in conflict with the statute and therefore the Contract must "yield" to the statute. That is incorrect. When FGCC agreed to this provision of the Contract, it waived its right to bring an NJPPA claim. The terms of the NJPPA are unequivocal. Because FGCC filed this suit in Pennsylvania, as it agreed to do in the Contract, its claim for relief under the NJPPA must fail as a matter of law. Thus, we will grant Kasco's motion for summary judgment on FGCC's fourth claim, and interpret the Contract according to Pennsylvania law as the parties had agreed in the Contract's choice of law provision.

**B. *Unjust Enrichment and Quantum Meruit***

We next address Kasco's challenges to FGCC's unjust enrichment and *quantum meruit* claims. Kasco argues that the existence of a written contract between the parties bars these claims.

Under Pennsylvania law, "where an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract; and where the contract fixes the value of the services involved, there can be no recovery under a quantum meruit theory." *Constar, Inc. v. Nat'l Distrib. Centers, Inc.,* 101 F.Supp.2d 319, 324 (E.D.Pa.2000) (internal quotation marks omitted) (summarizing Pennsylvania law).

***3** FGCC argues that where extra work was approved verbally, performed, and then accepted, a party may recover under a *quantum meruit,* construction-specific theory, which is an exception to the general rule that the existence of an express contract precludes recovery under alternative theories. Pl. Resp. at 27. FGCC cites *U.S. to Use of Viglione v. Klefstad Engineering Co.,* 324 F.Supp. 972, 975 (W.D.Pa.1971), and *Universal Builders, Inc. v. Moon Motor Lodge, Inc.,* 430 Pa. 550, 244 A.2d 10 (Pa.1968), in support of its argument.

*Viglione* involved a cause of action under the Miller Act and did not contain alternative counts of breach of contract, quantum meruit or unjust enrichment. The contractor in *Viglione* sent a surveyor to measure quantities of excavated material so its subcontractor could bill the contractor for the actual quantity of material excavated. 324 F.Supp. at 974. The surveyor's records were destroyed before they were given to the subcontractor to bill the contractor. *Id.* The Court held that the destruction of the surveyor's records should not defeat plaintiff's right to recover, and thus this conduct waived the contract's requirement that there be documentation of the amount of excavated material. *Id.* at 975. FGCC does not claim that its documents were destroyed, but rather that the agreement was oral. Thus, *Viglione* is distinguishable.

In *Universal Builders,* upon which the *Viglione* court relied, the Pennsylvania Supreme Court refused to enforce a contract provision allowing extra work to be completed pursuant only to a written, signed change order because the owner had (1) requested the extra work, (2) promised to pay for

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

it, and then (3) watched it being performed, knowing that the extra work was not authorized in writing. 244 A.2d at 15–16. *Universal Builders* is directly on point. Thus, we must determine whether FGCC has raised a genuine issue of material fact with regard to whether Frank Coogan, the only person Kasco authorized to approve any extra work, orally authorized such work, promised to pay for that work, and then was aware that the work had been done.

Kasco does not dispute that Paul Gallagher, the Project superintendent who was on site, knew that FGCC was performing extra work. Kasco Repl. at 20. But Kasco argues that neither Gallagher nor Coogan knew at the time that FGCC considered the extra work it was doing to be outside the scope of the Contract, nor that FGCC would seek extra compensation for that work. With regard to the rejected CPRs, Coogan testified:

> There is nothing in our daily log of that date indicating it. We never were given a ticket by First General, a time and material ticket saying that they performed the work. No one ever kept time on it. Months and months and months later I was submitted a bill for work that supposedly happened five months before. There is no way to verify that it ever happened, other than this piece of document that Gino produced.

***4** Def. Repl., Ex. 1 (“Coogan Dep.”) at 96:21–97:9. Kasco argues that FGCC presented no evidence that anyone ever offered to pay for the disputed extra work at the time it was being done. Def. Repl. at 18. Indeed, FGCC presents evidence that it generally received verbal directives from Gallagher to complete work outside the scope of its contract with Kasco, and that FGCC occasionally received oral directives from Coogan. Pl. Resp. at 27; *Id.,* Ex. G (Deposition of Gino DiBattista, FGCC's President (“DiBattista Dep.”)) at 29:17–20, 30:9–13 (“[t]he standard procedure was verbal communication and verbal directives by ... Paul Gallagher ... there was significant directives given directly to people by Frank Coogan.”); Ex. H (Deposition of Paul Gallagher (“Gallagher Dep.”)) at 24:17–20 (agreeing that he had issued verbal directives to FGCC to perform work outside the scope of their Contract). But FGCC has presented no evidence that it either received verbal directives from Coogan—the only person authorized to approve such work—to complete the extra work in dispute here, or that Coogan orally agreed to *pay* for the extra work in dispute.

FGCC has not proffered any evidence from which a reasonable factfinder could conclude that Coogan (1) requested the extra work, (2) promised to pay for it, and then (3) watched it being performed, knowing that the extra work was not authorized in writing. Thus, FGCC's *quantum meruit* and unjust enrichment claims must fail as a matter of law, and we will grant Kasco's motion for summary judgment on those claims.

**C. *Breach of Contract***

We turn now to Kasco's motion for summary judgment on FGCC's breach of contract claim. Kasco argues that (1) the releases FGCC executed bar most of FGCC's claims and reduce the amount of damages said to be $69,583.23 based on the language in the releases themselves, and that partial releases and release agreements in general are given full effect under Pennsylvania law, and estoppel bars FGCC's claims, and (2) FGCC's claims are barred by its failure to obtain Kasco's written authorization for the alleged extra work, to comply with the Contract's notice provisions, and to provide backup information for its claims.

**1. *The Releases***

As noted, Kasco contends that the releases FGCC executed bar most of FGCC's claims and reduce the amount of damages based on the language in the releases themselves. Kasco claims that partial releases and release agreements in general are given full effect under Pennsylvania law.

FGCC counters that the releases are unenforceable. FGCC also contends that Kasco waived the requirement that FGCC obtain written authorization for CPRs, and that Kasco waived the Contract's notice and backup requirements when it orally approved extra work.

Under Pennsylvania law, a release is itself a contract.[4] *Kenneth Hantman, Inc. v. Whiting–Turner Contracting Co.,* No. 07–1574, 2008 WL 4072591, *6 (E.D.Pa. Sept.2, 2008) (summarizing Pennsylvania law). As such, the effect of a release is determined by the ordinary meaning of its language. *Taylor v. Solberg,* 566 Pa. 150, 778 A.2d 664, 667 (Pa.2001). If the terms of the release are clear and unambiguous, a court should look no further than the release for interpretation, even if the language is broad and general. *Id.* at 667–68.

***5** DiBattista executed a series of releases over the course of the Project, the last of which was effective through August 31, 2008. MSJ, Ex. H. The releases DiBattista signed provide that the “Subcontractor does hereby irrevocably waive and release the Contractor ... and Vornado, Inc. (the *“Owner”* ) ... from and against any and all claims and liens....” *Id.*

DiBattista also admitted that he agreed to submit partial releases in order to receive payment under the Contract. *Id.,* Ex. B at 103:4–104:2. Notably, the Contract includes a term that provides, "[u]pon request, the Subcontractor will submit properly executed releases of liens during the progress of the work and before final payment is made." MSJ, Ex. C at 3.

FGCC claims that the releases are unenforceable because they lack consideration. But as Judge Schiller noted in *Hantman,* "[t]he consideration for the releases is the same as the consideration for [the] Subcontract. Accordingly, no additional or independent consideration is necessary because the parties were careful to include the releases as a term of the contract." *Hantman,* 2008 WL 4072591 at *7.

In addition, even if the releases were considered separate from the Contract, under Pennsylvania law a written release will not be rendered unenforceable for lack of consideration if the writing also contains an additional express statement that the signer intends to be legally bound. *Id.* (citing 33 PA Cons.Stat. Ann. § 6 (2008)). Just as in *Hantman,* FGCC's releases were signed before a notary. The releases also include the statement, "[t]he person signing on behalf of the Subcontractor represents and warrants that he is duly authorized and empowered to sign and execute this waiver on behalf of the Subcontractor. In witness whereof, the Subcontractor has caused this instrument to be executed in its corporate name as of [the date of execution]." MSJ, Ex. H.

FGCC argues that because the Contract only provides for a release of liens, not a release of liens *and* claims, the release only applies to liens. Pl. Resp. at 13–15. But the Contract refers to the releases, and the releases refer to liens *and* claims. We therefore find this argument unavailing. Even viewing the facts in the light most favorable to FGCC, a reasonable factfinder could not conclude that the releases are unenforceable nor that FGCC did not intend to be legally bound by them. Because we hold as a matter of law that the releases are enforceable, we need not consider Kasco's promissory estoppel argument. Thus, FGCC cannot collect on any claims that accrued before August 31, 2008.

**2. *Waiver***

Kasco next argues that FGCC's claims are barred by FGCC's failure to (1) obtain Kasco's written authorization for the alleged extra work, (2) comply with the Contract's notice provisions, and (3) provide backup information for its claims. FGCC contends that Kasco, by its course of conduct with FGCC throughout the Project, waived the requirement that it obtain signed, written authorization for change order work.

***6** At least one court in this district has acknowledged that contracts requiring written approval may be strictly enforced. *Allied Fire & Safety Equip. Co., Inc. v. Dick Enterprises, Inc.,* 972 F.Supp. 922, 929 (E.D.Pa.1997) (Joyner, J.). But under Pennsylvania law, unless a contract is for a sale of goods, "[a]n agreement that prohibits non-written modification may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing." *Somerset Community Hosp. v. Mitchell & Assoc., Inc.,* 454 Pa.Super. 188, 685 A.2d 141, 146 (Pa.Super.Ct.1996); *see also* *Universal Builders,* 244 A.2d at 15. *Universal Builders* noted that courts have frequently held that owners must pay for extra work done at owners' oral direction. *Universal Builders,* 244 A.2d at 15. "An oral contract modifying a prior written contract, however, must be proved by clear, precise and convincing evidence." *Somerset,* 685 A.2d at 146.

In *Universal Builders,* the Pennsylvania Supreme Court held that the Chancellor had correctly found that the defendant was liable and had to pay for the extra work in spite of the lack of a written change order because the evidence showed that an agent of the defendant had requested many changes, was informed that they would involve extra cost, and promised to pay for them. *Universal Builders,* 244 A.2d at 15. Thus, we must determine whether an agent of Kasco requested the extra work, was informed that the extra work would involve extra cost, and then promised to pay for it.

FGCC presents evidence that Gallagher told it to perform extra work and Kasco does not dispute this point. But Kasco disputes that it approved this work outside of the process defined in the Contract. Def. Repl. at 17. Kasco admits that sometimes work would begin on a submitted CPR before it had received a change order from Vornado. Coogan testified, "[s]ometimes [FGCC would begin work before we received a change order from the owner] if we had verbal approval from the owner's representative." Def. Repl., Ex. 1 at 65:4–6. Coogan testified that he could not recall an instance where he gave an oral order to proceed with extra work without first signing off on a CPR. *Id.* at 65:16–66:1, 244 A.2d 10. Thus, Kasco contends that FGCC had always submitted a CPR before Kasco gave a verbal order to perform the work.

But DiBattista testified that when changes in the scope of FGCC's work obligations under the Contract had to be made,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

he would have "numerous conversations with Paul Gallagher requesting acknowledgment that Kasco understood that this was a change condition with increased cost. And in every instance, he affirmed my request stating that everybody knew. And once the cost could be gathered, you know, we would submit." Pl. Resp., Ex. G at 34:14–21. Thus, FGCC has presented evidence that Gallagher, an agent of Kasco, had requested changes, and that Gallagher was in turn informed that they would involve extra cost. FGCC has also presented evidence that Kasco promised to pay for the requested changes before FGCC started the work. DiBattista testified that "[w]e gave them a written cost. They either gave us a verbal and followed up with a signed approval or we never received the signed approval." *Id.* at 35:22–36:1, 244 A.2d 10. Viewing the facts in the light most favorable to the non-moving party, we find that there is a genuine issue of material fact with regard to whether the parties orally modified the Contract.

***7** Respecting notice, the Contract requires that claims be made "in writing to Contractor's offices within ten (10) calendar days of the occurrence of such claim." MSJ, Ex. C at 6. Pennsylvania law takes a more lenient approach to construing notice provisions in construction contracts whereby the spirit of the provision, rather than the strict terms, dictates whether a contractor seeking compensation for a claim or claims complied with the contract's notice provisions. *James Corp. v. North Allegheny School Dist.,* 938 A.2d 474, 486 (Commw.Ct.2007). But in *James Corp.,* the Commonwealth Court noted that the notice provision may be modified by actual notice only if the defendant suffered no prejudice by the plaintiff's failure to submit a written claim. *Id.* at 486–87.

Here, FGCC claims that Kasco was not prejudiced by its failure to submit written notice because Kasco accepted final payment from Vornado with the knowledge that FGCC maintained outstanding claims against Kasco. Pl. Resp. at 23. FGCC also argues that Kasco never executed a final release in favor of Vornado. *Id.* Therefore, FGCC argues, Kasco cannot now claim that it was prejudiced by FGCC's less formal satisfaction of the Contract's notice provision. *Id.* Kasco claims that it was prejudiced because it could not verify the alleged extra work nor timely submit the extra work claims to Vornado for payment. Def. Repl. at 20.

Although Kasco was understandably annoyed about FGCC's failure to promptly submit its work claims, Kasco has failed to submit any evidence showing that it was prejudiced by FGCC's failure to submit its claims promptly. In a May 1, 2009 email from Coogan to DiBattista, after Kasco had asked FGCC to submit any additional claims within a week (which FGCC failed to do) and after Kasco had received final payment from Vornado, Coogan wrote,

> We made it very clear that we were expecting final payment from Vornado in about a week and it would be very difficult to go back to them on any issues that may result from your claim. Since we have now been paid in full I am not inclined to jepordaize [*sic* ] our relationship with Vornado by trying to go back and re-open the job when you did not hold up your end of the bargain.

Pl. Resp., Ex. N at 2. FGCC argues that this does not constitute a final release and therefore no prejudice befell Kasco. *Id.* at 23. Kasco responds that Coogan testified that Kasco had received "final payment on the job" and therefore Kasco executed a final release. Def. Repl. at 8; Ex. 1 at 151:9–10. But Coogan also testified that he had never seen a form of final release on this Project that Kasco executed, and that he did not know if one was ever executed. *Id.,* Ex. E at 43:10–13. Thus, viewing the facts in the light most favorable to FGCC, we find that there is a genuine issue of material fact as to whether FGCC's failure to comply with the Contract's notice provisions prejudiced Kasco.

Finally, with regard to the Contract's backup information provision, the Contract requires that change order requests "include back-up information referencing plan numbers with dates, detail numbers, specification sections and include quantity take-offs and a breakdown of labor and material costs." MSJ, Ex. C at 6. The Contract also requires that "[a]ny work provided on a 'Time and Material' (T & M) basis shall be evidenced by work tickets presented daily to Contractor's field supervisor for acknowledgment. No invoices will be processed without daily-signed tickets." *Id.* Kasco argues that FGCC failed to comply with this provision. MSJ at 25. FGCC responds that the parties, through their conduct, modified the Contract's backup information provision, and even if they did not, FGCC provided backup documentation to its claims that complied with the terms of the Contract. Pl. Resp. at 24.

***8** In *Allied Fire,* Judge Joyner upheld the provision in the construction contract requiring the submission of backup documentation for change orders. *Allied Fire,* 972 F.Supp. at 929. Judge Joyner further noted that the purpose of a provision requiring backup information is to ensure that the contractor has all the relevant information it needs to assess the subcontractor's entitlement to additional funds. *Id.* Judge Joyner declined to rule on whether the backup information

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

provision was enforceable. There, a genuine dispute of material fact remained as to whether the subcontractor had failed to submit the backup information because it had not received certain requested documents from the contractor (*i.e.,* it was the contractor's fault).

Here, FGCC presents evidence that it supplied the same backup information for certain claims that Kasco paid as it did for the claims that Kasco now disputes—namely, a single page memorializing the date the work was performed, a description of the work and the amount for the proposed change, and a second page with an itemized breakdown of the labor and materials needed (or to be supplied) to perform the work. Pl. Resp., Ex. K. FGCC argues that Kasco paid it for change order work that included the type of backup that Kasco now argues is unacceptable under the terms of the Contract. *Id.* at 25.

Kasco responds that although Coogan authorized certain change orders without written documentation, this did not constitute a waiver because he was able to verify the claims with Gallagher and approve what was submitted or negotiate a revised amount with DiBattista. Def. Repl. at 20–21.

We agree with Judge Joyner's assessment in *Allied Fire* that the purpose of the backup documentation is to ensure that the contractor has all the relevant information it needs to assess the subcontractor's entitlement to additional funds. With regard to the disputed CPRs, Kasco asserts that it cannot at this late date verify that FGCC actually did the work for which it claims damages.

FGCC counters that it did comply with the Contract when it submitted its CPRs. FGCC contends that the CPRs contain (1) the date, (2) a description of the work, and, in some cases, the Kasco agent who directed the work, (3) the price of the extra work, and (4) a breakdown of the labor and materials necessary to perform the extra work. Pl. Resp., Ex. K. Kasco presents evidence, in the form of Coogan's deposition testimony, that (1) there was nothing in Kasco's daily log about the work, (2) FGCC never gave Kasco a time and material ticket saying that it performed the work, and (3) no one ever kept time on the work. Def. Repl. at 21; Ex. 1 at 96:18–97:11. FGCC does not present any evidence of daily work tickets; indeed, it admits that it has none and submitted only the CPRs.

Without an independent method of verifying that the work was completed, Kasco cannot assess whether FGCC is entitled to additional funds. Thus, with no additional evidence that the work was done besides the CPRs FGCC submitted five months after it allegedly completed the work, we hold that FGCC did not comply with the Contract's backup information provision. Nor can we on this record conclude that the Contract was modified as a matter of law because Kasco presents evidence that, in instances where FGCC did not submit a daily T & M ticket, Gallagher was on hand to verify independently that the work was done. Thus, on this record we hold as a matter of law that Kasco is entitled to summary judgment on FGCC's breach of contract claim.

### III. *Conclusion*

***9** We stayed the parties' scheduled arbitration at their request so that we could dispose of Kasco's motion for summary judgment as to plaintiff's claims. For the reasons just stated, we will grant Kasco's motion for summary judgment on all the counts of plaintiff's complaint and order the Arbitration Clerk to schedule this case for a prompt arbitration on Kasco's counterclaims.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 2038542

Footnotes

1 We have diversity jurisdiction as plaintiff is a New Jersey corporation based in that state, and defendant is incorporated in Pennsylvania and based in the Commonwealth. As will be seen, the amount in controversy exceeds the jurisdictional threshold.

2 FGCC disputes this date, but whether the parties signed the Contract on January 8, 2008, or some date shortly after February 6, 2008 (as FGCC contends), is not material to this matter.

3 Summary judgment is appropriate “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). Whenever a factual issue arises which cannot be

resolved without a credibility determination, the Court must credit the non-moving party's evidence over that presented by the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.' " *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)). The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus. ., Inc. v. Local 825,* 982 F.2d 884, 890 (3d Cir.1992); *Fireman's Ins. Co. of Newark v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). It is not enough to discredit the moving party's evidence, the non-moving party is also required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby,* 477 U.S. at 257. A proper motion for summary judgment will not be defeated by merely colorable evidence or evidence that is not significantly probative. *See Liberty Lobby,* 477 U.S. at 249–50. "[T]he burden on the moving party may be discharged by 'showing'... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

4 This has been the general American rule for quite some time. *See, e.g.,* Joel and Ethan Coen, *True Grit* (Paramount, 2010) ("STONEHILL: "I will pay two hundred dollars to your father's estate when I have in my hand a letter from your lawyer absolving me of all liability from the beginning of the world to date." ... MATTIE: "I cannot accept that. There can be no settlement after I leave this office. It will go to law." STONEHILL: "This is my last offer. Two hundred and fifty dollars. For that I get the release previously discussed and I keep your father's saddle. I am also writing off a feed and stabling charge. The gray horse is not yours to sell. You are an unnatural child.").

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.